**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

STATE OF MARYLAND,                     *

        *Plaintiff*,               *

v.                                                        Case No.: 1:18-cv-02849-ELH

                                         *

UNITED STATES OF AMERICA, *et al.*,

                                         *

        *Defendant*.

        *  *  *  *  *  *  *  *  *  *  *  *  *

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**PRELIMINARY INJUNCTION OR MOTION TO SUBSTITUTE**

# TABLE OF CONTENTS

Page

FACTUAL BACKGROUND ....................................................................................................... 1

CONSTITUTIONAL AND STATUTORY BACKGROUND ....................................................... 3

ARGUMENT ............................................................................................................................. 7

I.      ROD ROSENSTEIN IS THE ACTING ATTORNEY GENERAL. ........................................................8

      A.     By Statute, the Deputy Attorney General Is the Acting Attorney General............... 8

      B.     The Department of Justice's Contrary Statutory Interpretation Lacks Merit. ........ 13

      C.     The Constitution Requires That the Acting Attorney General be a Senate-Confirmed Official............................................................................................. 22

II.     PLAINTIFF WILL SUFFER IRREPARABLE HARM IF WHITAKER ILLEGITIMATELY EXERCISES AUTHORITY AS ACTING ATTORNEY GENERAL. ...............................................28

III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST OVERWHELMINGLY FAVOR AN IMMEDIATE INJUNCTION TO PREVENT AN END-RUN AROUND 28 U.S.C. § 508 AND THE CONSTITUTION. .......................................................................................................31

CONCLUSION .......................................................................................................................... 33

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION OR MOTION TO SUBSTITUTE

Plaintiff Maryland respectfully requests a preliminary injunction preventing Defendants from responding to the Complaint, ECF 1, and moving forward in this litigation with Matthew G. Whitaker appearing in an official capacity as the Acting Attorney General.  Rod Rosenstein, not Mr. Whitaker, is the Acting Attorney General as a matter of law, with the attendant responsibility to enforce federal law and oversee this litigation in particular.  For the reasons stated below, plaintiff is likely to succeed on the merits, will suffer irreparable harm without an injunction, and the balance of equities and public interest entirely favor an injunction preventing Whitaker from exercising the authority of the Office of Attorney General.

As set forth in the accompanying motion, if this Court deems that this matter would more appropriately be handled as a motion to substitute under Federal Rule of Civil Procedure 25(d), Maryland requests that the Court substitute (as the successor to defendant former Attorney General Jefferson B. Sessions III) Deputy Attorney General Rod J. Rosenstein, in his official capacity as the Acting Attorney General.  As explained below, Matthew Whitaker cannot, under the Constitution or by statute, be appointed to the position of Acting Attorney General.  Fed. R. Civ. P. 25(d) (requiring the Court to automatically substitute "[t]he officer's successor" when a "public officer who is a party in an official capacity . . . resigns").

## FACTUAL BACKGROUND

1.      Plaintiff Maryland filed this suit against, among others, the United States and then-Attorney General Sessions in his official capacity.  The lawsuit seeks a determination that various provisions of the Affordable Care Act (ACA) are lawful and an Order directing that the government (and in particular the Attorney General, identified by name) enforce the statute as

written.  *See generally* Complaint, ECF 1.  The precise identity of the Attorney General has several implications for the case.

The Attorney General, as the Nation's chief law enforcement officer, is charged with enforcing federal law, including the ACA.  Attorney General Sessions personally determined that, in his opinion, the ACA's minimum coverage requirement will become unconstitutional in 2019 and that, as a consequence, the Department of Justice will not defend it or the ACA's guaranteed issue and community rating provisions—including pre-existing condition protections—which Sessions deemed inseverable from the minimum coverage requirement.  *See* Letter from Jefferson B. Sessions III to The Honorable Paul Ryan (June. 7, 2018), *available at* https://www.justice.gov/file/1069806/download (last accessed Nov. 12, 2018).  By statute, the Attorney General was required to certify that determination personally to Congress.  28 U.S.C. § 530D.  That certification by Attorney General Sessions was in turn a primary impetus for this lawsuit.  Complaint, ECF 1, at 6 ¶ 10.  A different Attorney General could reverse that determination and withdraw the certification to Congress, which would provide plaintiff much of the relief that it seeks.

The identity of the Attorney General has important administrative implications for the case as well.  Plaintiff seeks an order directed to the Attorney General.  By rule, a successor official is automatically substituted for a government official who resigns.  Fed. R. Civ. P. 25(d).  But the Court must know who to substitute, so that any interim orders and ultimate judgment issue to the correct official.  The rule provides that "the court may order substitution at any time."  *Id.*

2.     Jeff Sessions resigned as Attorney General on November 7, 2018.  That day, President Trump published a tweet stating that the Attorney General's Chief of Staff, Matthew Whitaker, would assume the role of Acting Attorney General.  *See* Donald J. Trump

(@realDonaldTrump), Twitter (Nov. 7, 2018, 11:44AM), https://bit.ly/2STEopE.  The Acting

Attorney General assumes all duties and functions of the Attorney General.  28 U.S.C. § 508.  Mr.

Whitaker has publicly expressed "his opposition to . . . the Affordable Care Act."  Adam Goldman

et al., *Matthew Whitaker:  An Attack Dog with Ambition Beyond Protecting Trump*, N.Y. Times

(Nov 9, 2018).

Plaintiff disputes the President's authority to name Whitaker the Acting Attorney General.

In plaintiff's view, under both the governing statutes and the Constitution, the Acting Attorney

General is Deputy Attorney General Rod Rosenstein.

## CONSTITUTIONAL AND STATUTORY BACKGROUND

1.      The Constitution's Appointments Clause provides in relevant part that the President

"shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers

of the United States, whose Appointments are not herein otherwise provided for, and which shall

be established by law:  but the Congress may by Law vest the Appointment of such inferior

Officers, as they think proper, in the President . . . ."  U.S. Const. art. II, § 2, cl. 2.  The

Appointments Clause thus divides officials into so-called "principal" and "inferior" officers; the

former categorically must be confirmed by the Senate, while the latter may be appointed directly

by the President if Congress authorizes the method of appointment.  The Attorney General, as the

head of the Department of Justice and the Nation's chief law enforcement officer, is indisputably

a principal officer.

2.      Congress has adopted specific statutes governing the succession of a limited

number of highly sensitive offices, including the Attorney General, the Secretary of Defense, the

Chairman of the Joint Chiefs of Staff, the Director of National Intelligence, and the Director of the

Central Intelligence Agency ("CIA").  With respect to each, Congress has required the creation of

a second-in-command who must be subject to Senate confirmation.  That person may serve in the

3

acting role of his or her superior in the case of a vacancy or disability in the superior's office, with no limitation on time.  The distinctive feature of these statutes is that they do not grant the President the authority to evade that regime by appointing a different successor when a Senate-confirmed Deputy is in office.  *See* 28 U.S.C. § 508(a) (Deputy Attorney General); 10 U.S.C. § 132(b) (Deputy Secretary of Defense); 10 U.S.C. § 154(d) (Vice Chairman of Joint Chiefs of Staff); 50 U.S.C. § 3026(a) (Principal Deputy Director of National Intelligence); 50 U.S.C. § 3037(b)(2) (Deputy Director of CIA).

By contrast, for other, less significant positions, Congress has taken a very different approach. It has specified a Senate-confirmed successor but allowed the President to override that default rule. *See infra* at 6-8.  And for more than 1,200 other Senate-confirmed positions, Congress has adopted a general default rule that the officer's "first assistant" will assume the acting role, again subject to presidential override.  5 U.S.C. § 3345(a).

This motion involves the special case of the office of the Attorney General.  In a series of statutes dating back 150 years, Congress has addressed the succession of officers generally and the Attorney General specifically.  Congress adopted the Vacancies Act of 1868 to govern generally the succession of Executive Branch offices, and in parallel with that legislation separately adopted the Attorney General Succession Act to specify the acting head of that office in particular.  Without exception, the statutes have required that the Department of Justice's second-in-command serve as Acting Attorney General, never allowing the President to override that rule.

The first Vacancies Act generally provided that, in the event of a vacancy of a Senate-confirmed office, the official's "first assistant" would presumptively assume that role, but the President could name another Senate-confirmed official to the position for a short period of time.

4

15 Stat. 168 (1868).  There was no exception for the Attorney General, because Congress had not created the Department of Justice or designated the Attorney General's second-in-command.

Two years later, it did.  In 1870, Congress created the Department of Justice and established the Senate-confirmed office of the Solicitor General, who must be learned in the law and who was the second-in-command to the Attorney General.  The statute contained the first Attorney General Succession Act, which conspicuously adopted a rule that stood in stark contrast to the just-enacted generic Vacancies Act:  it specified that the Solicitor General would serve indefinitely as Acting Attorney General and did not grant the President any authority to override that succession.  *See* Act of July 20, 1870, ch. 150, § 2, 16 Stat. 162, 162.

In 1953, Congress revised the Attorney General Succession Act to provide that in the case of vacancy the Attorney General's duties and functions would be performed by the newly established, Senate-confirmed office of Deputy Attorney General.  *See* Reorganization Plan No. 4 of 1953, 67 Stat. 636 (1953).  It further provided that in the absence of a confirmed Deputy Attorney General, the duties and functions would be performed by the Senate-confirmed Solicitor General and Assistant Attorneys General.  *Id.*

In 1966, as part of a general reorganization of federal personnel law, the Vacancies Act and Attorney General Succession Act were codified at 5 U.S.C. §§ 3345-3349 and 28 U.S.C. § 508, respectively.  The Vacancies Act continued to deem the absent official's "first assistant" the default acting officer, 5 U.S.C. § 3345 (1966), while the Attorney General Succession Act both specified that the Deputy Attorney General would succeed the Attorney General and also provided that "for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant to the Attorney General," 28 U.S.C. § 508 (1966).  Although the Vacancies Act continued to authorize the President to appoint Senate-confirmed officials as alternative successors for most executive

5

agencies, this provision expressly did not apply to the Office of the Attorney General. 5 U.S.C. § 3347 (1966).

In 1977, Congress revised the Attorney General Succession Act to insert the Associate Attorney General as the immediate successor to the Deputy Attorney General. *See* Pub. L. 95-139, § 2, Oct. 19, 1977, 91 Stat. 1171. Congress has now left that order of succession unchanged for more than forty years.

In 1998, Congress replaced the Vacancies Act with the Vacancies Reform Act. The Vacancies Reform Act contrasts with the Attorney General Succession Act in three ways: (1) it permits the President to name non-Senate confirmed officials to acting positions, 5 U.S.C. § 3345(a)(3); (2) it imposes time limitations on the service of acting officials, *id*. § 3346; and (3) it provides no further order of succession if the "first assistant" is unavailable, but rather requires that "the office shall remain vacant," *id*. § 3348(b)(1), "unless" the President makes an appointment under one of the other two methods specified, *id*. § 3347(a).

As noted, Congress has adopted a few very specific statutes generally directed to sensitive offices (including the Attorney General Succession Act) that govern the succession of specific Executive Branch offices without authorizing a presidential appointment. The Vacancies Reform Act provides that it is generally the "exclusive means for temporarily authorizing an acting official" in almost every executive agency (more than 1,200 Senate-confirmed positions in total), but it further specifies that this provision does not apply in any case in which some other statute "designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a)(1)(B).

    3.     The Attorney General Succession Act currently provides:

        (a) In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office,

and for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant to the Attorney General.

(b) When by reason of absence, disability, or vacancy in office, neither the Attorney General nor the Deputy Attorney General is available to exercise the duties of the office of Attorney General, the Associate Attorney General shall act as Attorney General. The Attorney General may designate the Solicitor General and the Assistant Attorneys General, in further order of succession, to act as Attorney General.

28 U.S.C. § 508.

The Vacancies Reform Act provides in relevant part, with exceptions not relevant here:

(a) If [a Senate-confirmed] officer of an Executive Agency . . . dies, resigns, or is otherwise unable to perform the functions and duties of the office—

(1) The first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346;

(2) notwithstanding paragraph (1), the President . . . may direct a [Senate-confirmed official] to perform the functions or duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346; or

(3) notwithstanding paragraph (1), the President . . . may direct an [established, GS-15 or higher] officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity, subject to the time limitations of section 3346 . . . .

5 U.S.C. § 3345; *see also id.* § 3346 (generally limiting the service of an acting official to 210 days from the vacancy).

## ARGUMENT

The Court should grant plaintiff's request for preliminary injunctive relief because plaintiff "is likely to succeed" in establishing that Whitaker's purported appointment as Acting Attorney General is contrary to both statute and the Constitution; because plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief" if it is forced to litigate against a defendant who does not have the authority to make litigation and policy decisions on behalf of the

government; and because the "balance of equities" and "public interest" overwhelmingly favor enjoining Whitaker from unlawfully exercising the authority of the Nation's chief law enforcement officer. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## I.      ROD ROSENSTEIN IS THE ACTING ATTORNEY GENERAL.

By statute, when there is no Attorney General, the Deputy Attorney General "may exercise all the duties of that office." 28 U.S.C. § 508(a).   The Constitution provides that—absent an exigency not present here—the responsibilities of a principal officer such as the Attorney General can be fulfilled only by a Senate-confirmed official whose own duties include serving in the acting capacity.   U.S. Const. art. II, § 2.   As a matter of law, Deputy Attorney General Rod Rosenstein is therefore the Acting Attorney General.

### A.      By Statute, the Deputy Attorney General Is the Acting Attorney General.

1.      In the Attorney General Succession Act, Congress specified the succession of the Attorney General.   "In the case of a vacancy in the office of the Attorney General . . . the Deputy Attorney General may exercise all the duties of that office . . . ."  28 U.S.C. § 508(a).  If the Deputy Attorney General is unavailable, the Associate Attorney General and then (if specified by the Attorney General) other Senate-confirmed Department of Justice officials automatically succeed to the role of Acting Attorney General.   *Id.* § 508(b).   The Attorney General Succession Act—in contrast to the general vacancies statutes with which it has co-existed for 150 years—grants the President no authority to override that congressional directive to appoint someone other hand-picked successor who has not been subject to the oversight of Senate confirmation for that position.

The reasons for this regime are obvious and illustrated by the facts of this case.   The Attorney General exercises vast authority over, for example, criminal and national security matters.   28 U.S.C. §§ 511-19.   The role calls for the highest levels of integrity and personal

judgment, prerequisites safeguarded by the Constitution's command that principal officers be subject to the oversight and check provided by Senate confirmation, *see NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017), as a means "to curb Executive abuses of the appointment power" and "'to promote a judicious choice of [persons] for filling the offices of the union,'" *Edmond v. United States*, 520 U.S. 651, 659 (1997) (quoting *The Federalist No. 76*, at 386-87) (Alexander Hamilton) (M. Beloff ed., 1987) (alteration in original).

Congress made a judgment beginning in the 1800s, from which it has never deviated, that other senior Department of Justice officials who might succeed to the role of Acting Attorney General must themselves be subject to Senate confirmation.  Understandably, Congress was not satisfied that the same type of low-level Senate-confirmed official in any executive department or a GS-15 level employee in the Department of Justice who could temporarily act on behalf of an ordinary official—in more than 1,200 positions—was thereby *ipso facto* qualified to take on the profoundly weighty role of the Attorney General of the United States.  So too, the Secretary of Defense, Chairman of the Joint Chiefs of Staff, Director of the CIA, and similar offices.

Indeed, the Attorney General plays a particularly vital role with respect to the separation of powers.  Except in cases of recusal, the Attorney General has the power to control an investigation of the President himself.  28 C.F.R. Part 600.  Absent the Attorney General Succession Act, the President could fire the Attorney General (or demand his resignation), then appoint a hand-picked junior Senate-confirmed officer from an entirely different agency, or a carefully selected senior employee who he was confident would terminate or otherwise severely limit the investigation.  Indeed, the President could appoint and then remove a series of hand-picked individuals as Acting Attorney General until one finally acceded to the President's

demands, with the Senate left powerless to intercede.  The Attorney General Succession Act makes that impossible; without it, the possibility seems far from theoretical.

The Attorney General Succession Act also ensures that the President cannot allow an appointment to lapse, thereby leaving the vital position of Attorney General empty.  The President would have to remove at least a half-dozen Senate-confirmed senior Department of Justice officials before the line of automatic succession was exhausted.  By contrast, under the general provisions of the Vacancies Reform Act, the President may force a vacancy by either terminating any interim appointee or allowing the time limit on the appointment to expire.  5 U.S.C. § 3348(b).

2.      The Vacancies Reform Act does not supersede the more-specific Attorney General Succession Act and permit the President to appoint a non-Senate confirmed Department of Justice employee (or Senate-confirmed official from an entirely different agency) as the Acting Attorney General of the United States.

Although the Vacancies Reform Act often provides "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of" any Senate-confirmed officer in every executive agency (other than the Government Accountability Office), 5 U.S.C. § 3347(a), it is ineffective in any case in which some other "statutory provision expressly . . . designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  *Id*. § 3347(a)(1)(B).

Because the Attorney General Succession Act falls within this express exception, the natural reading of the statutes is that the Attorney General Succession Act applies here and the Vacancies Reform Act does not.  But in any event, the same result follows from the principle that when two statutes conflict the more specific provision controls.  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) ("It is a commonplace of statutory construction that the

specific governs the general.") (citation omitted).  The conflict here is plain and an essential and unavoidable feature of this case.  The succession of the Attorney General *cannot* simultaneously be governed by both the Attorney General Succession Act and the Vacancies Reform Act.  The Attorney General Succession Act categorically deems the Deputy Attorney General the Acting Attorney General, to be succeeded by other Senate-confirmed Department of Justice officials, none of which are subject to any time limit.  In stark contrast, if the Vacancies Reform Act were to apply, it would deem the Deputy Attorney General the Acting Attorney General only by default and subject to a Presidential override at his discretion, subject to a strict time limit, and with no possibility of automatic succession by other Department of Justice officials.

The unavoidable conclusion is that only one of those rules can apply.  This case is the perfect illustration.  Under the Attorney General Succession Act, Rod Rosenstein is the Acting Attorney General.  There is no option or ambiguity.  Under the Vacancies Reform Act, based on the President's tweet, Michael Whitaker is the Acting Attorney General.  Again, there is no option or ambiguity.  Only one of those can be true.

The Attorney General Succession Act is the more specific provision.  It is directed to one particular office, whereas the Vacancies Reform Act applies to more than 1,000 positions.  The Attorney General Succession Act also identifies precisely the Senate-confirmed officials who will serve in an acting role, whereas the Vacancies Reform Act permits the President to appoint any established agency employee who is at least a GS-15, as well as Senate-confirmed officers from other agencies whose functions have nothing at all to do with those of the Attorney General (for example, the Department of Veterans Affairs), and who were not confirmed with the slightest thought by the Senate that the President might pluck them from that position to serve as the Nation's chief law enforcement official.

Indeed, deeming the Vacancies Reform Act controlling here would render the Attorney General Succession Act and the congressional judgments it embodies a nullity as a practical matter. Statutes are, of course, read to avoid that result.  The very point of the Attorney General Succession Act is to ensure that the Nation's highest law enforcement official is a Senate-confirmed officer within the chain of command of the Department of Justice—one whom the Senate has already considered with the possibility of such performance of the Attorney General's functions in mind— and to forbid the President from appointing a hand-picked employee to that role.  Put another way, the Attorney General Succession Act represents a congressional judgment to *reject* the President's discretion to make *ad hoc* appointments in favor of a specified line of succession that the Senate has vetted in advance.

As we understand it, the Department of Justice reads the statutes very differently, as if the conflict can be avoided by permitting the President the complete discretion to choose succession under either the Attorney General Succession Act or the Vacancies Reform Act.  *See* 31 Op. O.L.C. 208 (2017).  But that interpretation produces exactly the same result as ignoring the Attorney General Succession Act altogether:  it permits the President, at his discretion, to bypass carefully crafted limitations on who can hold the office of the Attorney General.

The implications of the Department of Justice's position are breathtaking because the consequences are not limited to the office of the Attorney General.  As noted, indistinguishable statutory schemes govern the succession of other positions vital to the national interest—offices that Congress could not have imagined would be helmed by staff members or officers of completely unrelated agencies.  These include the Secretary of Defense, Vice Chairman of the Joint Chiefs of Staff, the Director of National Intelligence, and the Director of the CIA. *See supra* at 4. On the Department of Justice's reading, the President is free to disregard Congress's

12

determination that the successor to those positions should be a Deputy for that specific office previously vetted through the process of Senate confirmation. Accepting that view would require this Court to conclude that Congress adopted all of these special statutes governing the succession of those offices for essentially no purpose at all, and instead intended that the President could install any GS-15 employee, just as he could with any other office. That is not a plausible reading of the statutory scheme, much less the best reading.

      **B.**      **The Department of Justice's Contrary Statutory Interpretation Lacks Merit.**

              **1.**      **The Vacancies Reform Act's Exclusivity Provision Does Not Support the Department of Justice's Interpretation.**

      a.      President Trump appointed Michael Whitaker as Acting Attorney General in the face of the direct and unambiguous command of the Attorney General Succession Act. But if Congress had actually intended the Attorney General Succession Act to permit the President to override the designation of the Deputy Attorney General as the Acting Attorney General, it would have done so expressly. Critically, it did precisely that in multiple other statutes. Several identify a default successor but, in stark contrast to the Attorney General Succession Act, authorize the President to make a different appointment as an alternative. *See* 38 U.S.C. § 304 (President may override succession by Deputy Secretary of Veterans Affairs); 40 U.S.C. § 302 (Deputy Administrator of General Services); 42 U.S.C. § 902(b)(4) (Deputy Commissioner of Social Security). In other statutes, Congress used the mechanism of providing for succession by directly incorporating the Vacancies Reform Act. *E.g.*, 7 U.S.C. §§ 2210-11 (Deputy Secretary of Agriculture). But since the day it created the Department of Justice in 1870, Congress has never permitted a President to override the order of succession of Senate-confirmed officials as Acting Attorney General.

Alternatively, if Congress wanted to achieve the result that the Department of Justice now reads into the Vacancies Reform Act, it would have written that statute differently.  Of note, the Senate bill that was proposed when Congress was considering the Vacancies Reform Act would have supplanted statutes such as the Attorney General Succession Act by requiring that they contain an express exemption from Section 3345.  *See* S. 2176, 105th Cong. (1998).  But Congress did not pass that bill.

Moreover, in the version of the Vacancies Reform Act that it actually enacted, Congress demonstrated that it knew how to create a truly "non-exclusive," parallel appointment regime.  Section 3345(a)(1) makes the "first assistant" the default acting official.  But then the statute provides that "notwithstanding paragraph (1)" the President can select another official.

If Congress had intended to write the Vacancies Reform Act in a manner that would similarly override the mandatory succession rules of the Attorney General Succession Act and other similar statutes, it would have said so.  It would have specified in Section 3345(a) that the President's appointment authority applies "notwithstanding 28 U.S.C. § 508" or (more broadly) "notwithstanding any provision that designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  But it did nothing of the sort.

b.      The Department of Justice has a particularly twisted reading of the Vacancies Reform Act that tries to turn the statute's "exclusivity" provision, 5 U.S.C. § 3347, on its head.  It argues that in a case where the "exclusivity" provision is rendered inoperative by an office-specific succession statute (such as the Attorney General Succession Act), the Vacancies Reform Act still *does* apply because it operates as a "non-exclusive" means of determining succession.  On this view, in the ordinary case, the President is restricted to using only the mechanisms of the Vacancies Reform Act.  But when Congress has gone to the trouble of subjecting an office to an on-point

14

mandatory succession regime that conspicuously does not permit presidential appointment, then the Department of Justice contends the President gets *more* options:  he may use *either* the Vacancies Reform Act *or* the specific statute.

This would be a radical departure from an uninterrupted 150-year tradition specific to the Office of the Attorney General.  But there is no indication in the statutory or legislative history that Congress intended that, or even that a single isolated member did.  It also would have massive implications for several other vitally important offices.  Consequently, in the extremely unlikely event that Congress intended that result, it would have said so clearly, and not through an oblique negative inference from the word "exclusive."  "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."  *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

Indeed, the text of the Vacancies Reform Act provides no support for the Department of Justice's reading.  The government accepts that the statute's exclusivity provision does not apply here in light of the Attorney General Succession Act.  It then can point to nothing in the statutory text specifying that the Vacancies Reform Act's general provisions would apply specifically to the resignation of the Attorney General.  Instead, as discussed at length above, there is a conflict between the Vacancies Reform Act and the Attorney General Succession Act:  they produce utterly irreconcilable results.  That conflict must be resolved using ordinary principles of statutory construction.  As discussed, the Attorney General Succession Act is the far more specific provision, and it therefore controls. *See supra* at 12-13.[1]

---

[1] There is one potential factual scenario—not presented by this case—in which the Vacancies Reform Act and the Attorney General Succession Act could work together.  The Attorney General Succession Act specifies that certain Senate-confirmed Department of Justice officials succeed to the role of Acting Attorney General.  But the Attorney General Succession Act

The Department of Justice's contrary position has no support under any accepted means of statutory construction.  On its view, a conflict between two facially applicable provisions enacted by Congress is just an invitation to presidential whim because it is properly resolved by the President picking whichever he likes in any given moment in time.  But the courts cannot evade their obligation to interpret the law and determine which statute Congress actually intended to apply by punting the issue to the President to select whichever he chooses.

Of note, on the Department of Justice's reading, it would implausibly be impossible to tell what constraints apply to the Acting Attorney General.  Take the following straightforward hypothetical:  the Attorney General resigns and is succeeded by the Deputy Attorney General.  Is that appointment subject to time limitations?  If the Deputy Attorney General then resigns, does the Associate Attorney General become Acting Attorney General or is the office vacant?  The answers depend on whether the Deputy Attorney General automatically assumed the acting role under Section 508(a) or instead Section 3345(a)(1).  But because the President has not "selected" anything in that scenario of automatic succession, there is no way to know.  Congress could not have intended to create such an indeterminate situation.

Congress instead added the exclusivity provision to the Vacancies Reform Act to serve a very different purpose.  It specifies that the Act does not apply when a different statute specifies a

---

does not address who assumes that acting role if the list it provides is exhausted because no Senate-confirmed official is in any of the enumerated roles.  28 U.S.C. § 508(b).  This scenario will sometimes occur during transitions between presidential administrations, when all of the incumbent officials resign or are removed.  In that limited circumstance, the Vacancies Reform Act could provide a mechanism to select the Acting Attorney General, because such a selection would not conflict with the requirements of the Attorney General Succession Act.

The President has issued an Executive Order doing just that.  Executive Order 13,762 identifies the order of succession for the Attorney General.  It first expressly follows the mandatory order of succession under Section 508.  It then provides that if the officials specified by that statute are unavailable, "the President retains discretion, to the extent permitted by law, to depart from this order in designating an acting Attorney General."  Exec. Order No. 13,762 (Jan. 13, 2017).

specific successor for a particular office, but it *does* apply when a statute merely permits a particular officer to delegate responsibilities to a subordinate.  *See* 5 U.S.C. § 3347(b) (Vacancies Reform Act is not exclusive if statute designates a specific successor but is exclusive if the statute merely allows an officer "to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive Agency").  The provision was a specific response to a particular misreading by the Department of Justice of the predecessor Vacancies Act.

The Department of Justice had maintained that the Vacancies Act was inapplicable to *any* Senate-confirmed position in the Department of Justice, not merely the Attorney General specifically.  As discussed, at the time, the Vacancies Act was expressly inapplicable to "the office of Attorney General."  5 U.S.C. § 3347 (1998).  The Attorney General, in turn, delegated various authority to individual Assistant Attorneys General.  28 U.S.C. §§ 509, 510.  The Department of Justice argued that this combination of provisions exempted all those Assistant positions from the Vacancies Act.  *See* Brannon P. Denning, *Article II, the Vacancies Act and the Appointment of "Acting" Executive Branch Officials*, 76 Wash. U. L.Q. 1039 (1998) (detailing Senators' objections to Clinton Administration's position that Bill Lee's appointment as Assistant Attorney General for Civil Rights was governed only by Section 508 and not subject to the Vacancy Act's time limits, and stating that "the statutes cry out for amendment").  The role of the "exclusivity" provision of the Vacancies Reform Act is to forbid that maneuver by expressly deeming such a delegation within an agency irrelevant to succession.

The Department of Justice's position also is not supported by the fact that Congress replaced the Vacancy Act's specific exemption for the Attorney General with the Vacancies Reform Act's broader exemption that includes not only the Attorney General Succession Act but also other statutes with specific succession rules.  The change merely eliminates any negative

17

inference that the Vacancies Reform Act preserved only the specific succession regime for the Attorney General and overrode similar provisions in other statutes that govern succession for offices such as the Secretary of Defense.

Finally, plaintiff recognizes that a single sentence in a single congressional report could be read to support the Department of Justice's interpretation.  The Senate Report on the Senate's bill states that the bill retains a variety of succession statutes, including the Attorney General Succession Act.  S. Rep. No. 105-250, at 15-17 (1998).  But then the Report states, without elaboration, "[i]n any event, even with respect to the specific provisions in which temporary officers may serve under the specific statutes this bill retains, the Vacancies Act would continue to provide an alternative procedure for temporarily occupying the office."  *Id*. at 17.

The straightforward response is that Congress did not adopt the Senate bill to which the Report refers, which was drafted very differently from the legislation that was ultimately enacted. Under the Senate bill, Section 3347 would have provided that the Vacancies Reform Act was controlling unless "another statutory provision expressly provides that the [sic] such provision supersedes sections 3345 and 3346."  S. 2176 § 2 (proposed Section 3347(a)(1)).  The actually enacted Vacancies Reform Act says nothing of the sort.

Moreover, the quoted sentence in the Senate Report is inapplicable here in any event.  The Vacancies Reform Act does not even arguably "continue to provide" an alternative procedure that was available under the Vacancies Act.  The latter statute expressly exempted the Attorney General and therefore was not an alternative scheme with respect to that office.

### 2. The Text of the Attorney General Succession Act Does Not Support the Department of Justice's Reading.

Nothing in the text of the Attorney General Succession Act supports the Department of Justice's view that the President may override the statutory rule and appoint an Acting Attorney

General.  Indeed, it would be extremely surprising if the text produced that result, given that it would negate the statute's very purpose.

a.      The Attorney General Succession Act deems the Deputy Attorney General the "first assistant" for purposes of 5 U.S.C. § 3345.  *See* 28 U.S.C. § 508(a).  But not even the Department of Justice contends that this provision subjects the Office of the Attorney General to the Vacancies Reform Act.  If it did, then the Deputy Attorney General could *never* serve beyond the Vacancies Reform Act's time limits (*see* 5 U.S.C. § 3346) and no officer could automatically succeed the Deputy Attorney General, rendering Section 508(b) meaningless (*see id.* § 3348(b)).

Congress instead adopted the "first assistant" language in an early version of the Attorney General Succession Act to conform that statute with the predecessor Vacancies Act.  The latter statute specified that the "first assistant" was the successor to an absent officer and that the President's authority to override that default rule was not applicable to the Attorney General.  5 U.S.C. §§ 3345, 3347 (1998).  As noted, the Vacancies Reform Act replaces that specific exemption with a broader—but no less applicable—provision stating that the Vacancies Reform Act is not exclusive when any statute designates a specific successor.  *See* 5 U.S.C. § 3347(a)(1).  In enacting the Vacancies Reform Act, Congress simply neglected to delete the no-longer-necessary reference to the Deputy Attorney General as the "first assistant."

b.      The Attorney General Succession Act provides that the Deputy Attorney General "may" serve as Acting Attorney General.  *See* 28 U.S.C. § 508(a).  But there is no reading of this provision under which the Vacancies Reform Act overrides the Attorney General Succession Act's provisions.  The Attorney General Succession Act does not say, for example, that "the President may provide" that the Deputy Attorney General succeeds the Attorney General.  Instead, the language of Section 508(a) refers specifically to the authority of the Deputy Attorney General

19

him/herself.  The permissive "may" merely accounts for the prospect that there might not be a Senate-confirmed Deputy Attorney General available to assume the role of Acting Attorney General.  In that event, the Associate Attorney General or another Senate-confirmed official "shall" assume that role.

But even if "may" were read differently, that reading would not support the Department of Justice's position.  Rather, it would permit the subject of the sentence—the Deputy Attorney General—to decline the succession:  the Deputy Attorney General would have the option to serve as Acting Attorney General but would not be required to do so.  *See Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*, 609 F.3d 338, 342 (4th Cir. 2010) (defining "may" as providing authorization without obligation).  With the Deputy Attorney General unavailable to serve that role, the Attorney General Succession Act would then require that the Associate Attorney General "shall" be the Acting Attorney General.  28 U.S.C. § 508(b).

### 3.     Precedent Does Not Support the Department of Justice's Interpretation.

Two decisions have stated that particular federal succession statutes do not preclude presidential appointments under the Vacancies Reform Act.  Neither ruling supports the appointment at issue here.

a.     In *English v. Trump*, 279 F. Supp. 3d 307, 319-29 (D.D.C. 2018), the district court held that the President could invoke the Vacancies Reform Act to appoint an Acting Director of the Consumer Financial Protection Board ("CFPB").  In that case, the Director of the CFPB named an individual as his Deputy, then immediately resigned.  *Id.* at 313-16.  The Deputy argued that she became Acting Deputy under a provision of the Dodd-Frank Act stating that the Deputy shall "serve as acting Director in the absence or unavailability of the Director."  12 U.S.C. § 5491(b)(5).

Moreover, she argued that her succession to that role precluded the President from naming a different Acting Director. *English*, 279 F. Supp. 3d at 317.

The district court rejected that argument. Several elements of its reasoning distinguish this case. First and foremost, the court stressed that the Dodd-Frank provision applies only to the Director's "absence or unavailability," not a resignation. *Id.* at 322-23. The court explained that if Congress had intended to displace the Vacancies Reform Act, it could have made the statute expressly applicable to a resignation. *Id.* Of note, it specifically identified the Attorney General Succession Act as such a displacing statute. *Id.*

Further, the court placed significant weight on the fact that Dodd-Frank specifically incorporates pre-existing federal statutory law, which includes the Vacancies Reform Act. *Id.* at 322-27. The Attorney General Succession Act contains no such provision.

Finally, the court reasoned that the plaintiff's position would impinge on the Constitution's appointments power, because the Director of the CFPB—not the President—selects the Deputy Director. *Id.* at 327-28. By contrast, the President selects all of the Department of Justice officials who are in the Attorney General Succession Act's order of succession. It is instead the Department of Justice's position here that contravenes the Appointments Clause by evading Congress's authority to confirm the Attorney General as a principal officer. *See infra* Part I.C.1.

b.      In *Hooks v. Kitsap Tenant Support Services*, 816 F.3d 550 (9th Cir. 2016), the court of appeals stated that the President could invoke the Vacancies Reform Act to appoint an Acting General Counsel for the National Labor Relations Board ("NLRB"). The National Labor Relations Act ("NLRA") permits the President to name a temporary NLRB General Counsel who may serve for forty days. 29 U.S.C. § 153(d). By contrast, the Vacancies Reform Act has a lengthier time limitation. 5 U.S.C. § 3346.

21

All the parties to the case agreed that the appointment at issue was too lengthy to be authorized by the NLRA.  816 F.3d at 555.  The Ninth Circuit held that the appointment was also invalid under the Vacancies Reform Act.  *Id.* at 557-64.

In brief dictum, the court of appeals also stated that the Vacancies Reform Act was an alternative means of appointing an Acting General Counsel.  It cited the sentence in the Senate Report for the bill that was not enacted, *see supra* at 20-21, for the proposition that the Vacancies Reform Act is not an "exclusive" remedy with respect to offices that are subject to succession-specific statutes.  816 F.3d at 556.

The *Hooks* dictum is not persuasive (as it relied on a report for a bill that was not passed) and, in any event, it is inapplicable here.  The Ninth Circuit did not address any of the arguments against reading the Vacancies Reform Act to override a statute such as the Attorney General Succession Act.  Nor did it need to.  Because both the NLRA and the Vacancies Reform Act call for the President to appoint an interim official, they involve a much less stark conflict than arises here.  The Attorney General Succession Act specifies a particular successor to the Attorney General and does not permit a presidential appointment.  Moreover, *Hooks* did not present any issue under the Appointments Clause, as the General Counsel of the NLRB is better viewed as an inferior officer who is not constitutionally required to be confirmed by the Senate.

### C.      The Constitution Requires That the Acting Attorney General be a Senate-Confirmed Official.

As set forth above, the statutory framework, as informed by the history of statutory amendments, permits only one reading:  The Attorney General Succession Act, 28 U.S.C. § 508, controls the vacancy created by former Attorney General Sessions' resignation, and cannot be overridden by President Trump under the Vacancies Reform Act, 5 U.S.C. § 3345(a)(3).  Even were that not the case, however, the President's appointment of Mr. Whitaker as Acting Attorney

General violates the Constitution.  First, as long as the offices of Deputy Attorney General and others explicitly in the line of succession are occupied by individuals nominated and confirmed pursuant to the Appointments Clause of Article II, the President cannot appoint anyone else as Acting Attorney General absent exigencies not present here.  Second, and relatedly, even if 5 U.S.C. § 3345(a)(3) and 28 U.S.C. § 508 could plausibly be read to allow the President to choose to invoke only the former (although they cannot be), plaintiff's reading is, at the very least, "fairly possible."  That construction must be adopted because it is the only one that avoids serious constitutional concerns.

### 1.   The Appointments Clause Requires That the Acting Attorney General Be Senate-Confirmed.

The Appointments Clause in Article II of the Constitution distinguishes between two classes of executive branch "officers"—principal officers and inferior officers—and specifies how each may be appointed.  *See United States v. Germaine*, 99 U.S. 508, 509, 511 (1879).  Principal officers are those who have no superior other than the President, *i.e.*, they report to no one else. *See Edmond*, 520 U.S. at 662-63.  Except during a Senate recess, principal officers must be nominated by the President and appointed "with the Advice and Consent of the Senate."  U.S. Const. art. II, § 2, cl. 2.  There can be no dispute that the Attorney General is a principal officer.

To be sure, when the Office of Attorney General is vacant due to death, resignation, etc., others may temporarily assume the position.  But the range of constitutionally permissible acting officials is limited to individuals who meet the baseline Appointments Clause requirements.  Those requirements can be met in one of two ways.

First, an individual may temporarily act as the Attorney General if he or she has been confirmed, with the advice and consent of the Senate, to an office where such possible performance of the Attorney General's functions was, in effect, foreseeable, and thus was part of the duties of

23

the office (such as Deputy Attorney General) to which the person was confirmed with the Senate's consent. *Cf. Weiss v. United States*, 510 U.S. 163, 173-75 (1994) (Appointments Clause not violated when officer assumes duties "germane" to those of office already confirmed to with advice and consent).

In this case, when the Senate confirmed Deputy Attorney General Rosenstein—and everyone else explicitly designated in the line of succession under the Attorney General Succession Act—it did so with the background understanding that those individuals might have to fill a vacancy in the Office of Attorney General pursuant to 28 U.S.C. § 508. Thus, the Senate has already advised and consented that Rosenstein and the succession designees that come thereafter are qualified to perform the functions of that principal office. Solicitor General Noel Francisco and Assistant Attorney General Steven Engel fit the bill, among several others—all of whom were confirmed with the advice and consent of a Senate fully aware that they might have to assume the office of Attorney General and could therefore temporarily exercise the authority of that post without having to be re-appointed and re-confirmed.

The Senate has not made a similar determination regarding suitability to serve as Acting Attorney General for others who have been confirmed after advice and consent, such as the Secretaries of Education or Agriculture, because the succession statute does not similarly place those officers in line to assume the Attorney General's duties. Put differently, when weighing in on other posts requiring the Senate's advice and consent, it was not on the Senate's radar that those others might fill in for the Attorney General during a vacancy, so the Senate never actually passed on whether they were qualified to exercise the authority of that office.

The Senate certainly has not made that evaluation with respect to Mr. Whitaker, who holds his chief-of-staff position without any input from the Senate at all. Whitaker's appointment marks

24

the first time since 1870, when Congress reworked Title 5 of the U.S. Code and enacted the first Attorney General Succession Act, that a President has attempted to designate an Acting Attorney General who was not then serving in *any* office to which he or she was appointed by and with the advice and consent of the Senate. *See* Michael Ramsey & Andrew Hyman, *Is the Federal Vacancies Reform Act Constitutional?* (Nov. 10, 2018), http://bit.ly/2PnosOn. Indeed, if this gambit succeeds, it will be the first time that the Acting Attorney General is anyone other than a sitting Senate-confirmed Department of Justice officer. *See* Marty Lederman, *A Quick Primer on the Legality of Appointing Matthew Whitaker as "Acting" Attorney General, and Whitaker's Power to Influence the Russia Investigation*, Just Security (Nov. 8, 2018), bit.ly/2z5b47z.

Second, the Supreme Court held in *United States v. Eaton*, 169 U.S. 331 (1898), that a temporary appointment to perform the functions of a principal office, even by an individual who has not been Senate-confirmed, is permissible in cases of true "exigency" for "a *limited time*, . . . under *special* and *temporary conditions*." *Id*. at 343 (emphasis added). That is so because, in such a case, the temporary officer is "inferior." *Id.*; *see also Edmond*, 520 U.S. at 661. A contrary holding, the Court explained, "would render void any and every delegation of power to an inferior to perform under any circumstances or exigency the duties of a superior officer, and the discharge of administrative duties would be seriously hindered." 169 U.S. at 343. The Supreme Court recognized that the 1898 appointment in *Eaton* was reasonable under the exigent circumstances there, where no one who met the Appointments Clause requirements could possibly temporarily fill the vacancy of a consular post on the other side of the world in what is now Thailand—a vacancy unexpectedly created when the consul became gravely ill and it would take time for a proper vice consul to arrive. *Id.* at 340.

There is no such "emergency" in this case—not even close.  Here, the "vacancy" is one for which the President himself is responsible:  he asked then-Attorney General Sessions to resign (and no doubt would have fired him, had Sessions refused).  Congress has moreover expressly provided an obvious constitutionally compliant method for placing the Deputy Attorney General in an acting role.  28 U.S.C. § 508(a).  That is moreover the method that has been employed since the 1800s.  There is no emergency at all here that justifies such a stark deviation from the method that both political branches have settled upon for well over a century—a method that ensures the Attorney General's functions will be performed by an officer who has already been approved by the Senate with that very possibility in mind.  *See SW Gen.,* 137 S. Ct. at 949 & n.1 (Thomas, J., concurring) (suggesting that the *Eaton* exception must be confined to truly exigent, and time-limited, circumstances).

*Eaton*'s characterization of the acting official in that case as "inferior" and not subject to prior Senate confirmation does not validate Whitaker's appointment for other reasons, too.  Importantly, *Eaton* concerned officers who would exercise foreign policy authority completely external to the United States, a realm in which the President is uniquely empowered by the Constitution.  *See United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) (President is "sole organ of the nation in its external relations, and its sole representative with foreign nations"); *see also Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2090 (2015) ("President alone" has power "to make the specific decision of what foreign power he will recognize as legitimate, both for the Nation as a whole and for the purpose of making his own position clear within the context of recognition").  In sum, *Eaton* involved whether the widow of an individual temporarily appointed as vice consul, an inferior office, could receive payment for her deceased husband's performance while he occupied the post.  *See* 169 U.S. at 343.

26

The powers exercised by the Attorney General, on the other hand, are almost entirely internal-facing:  executing the laws passed by Congress.  The Senate thus has a much greater constitutional interest and stake in having a say in who that person is—even on a temporary basis—than it does for a foreign officer.  *See Zivotofsky*, 135 S. Ct. at 2090 ("[I]t is still the Legislative Branch, not the Executive Branch, that makes the law.").  The authority exercised by the Attorney General affects citizens and non-citizens alike, including determinations as to who gets deported, who might go to jail, and even who will face the federal death penalty.  *Eaton* does not permit the President to bypass Article II for an appointment of the most powerful law enforcement officer in the Nation.

### 2. The Canon of Constitutional Avoidance Compels the Conclusion That the Deputy Attorney General Automatically Succeeds the Attorney General.

Under the canon of constitutional avoidance, the foregoing analysis provides an additional reason to adopt plaintiff's interpretation of the Attorney General Succession Act and Vacancies Reform Act, *supra* Part I.A-B, which is the only plausible reading of the statutes that avoids serious constitutional questions.  "[I]t is a cardinal principle" of statutory interpretation that when an interpretation of a statute raises "a serious doubt" as to its constitutionality, "this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided," and adopt that interpretation instead.  *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) (same); *Jones v. United States*, 526 U.S. 227, 239 (1999) (explaining that this principle is "beyond debate") (quotation marks omitted).

To benefit from the constitutional avoidance canon, plaintiff need not show definitively that defendants' reading of the Attorney General Succession Act and Vacancies Reform Act would violate the Constitution.  *See Clark v. Martinez*, 543 U.S. 371, 381 (2005) (explaining that "[t]he

canon is not a method of adjudicating constitutional questions by other means," but is instead to allow "courts to avoid the decision of constitutional questions"). Instead, it is enough to show that defendants' interpretation would raise "serious" constitutional questions, problems, or doubts, *I.N.S. v. St. Cyr*, 533 U.S. 289, 300 (2001); *United States v. Hamilton*, 699 F.3d 356, 367-68 (4th Cir. 2012), and that plaintiff's reading is "plausible" or "fairly possible," *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 239 (2010) (quotation marks omitted); *Bartlett v. Strickland*, 556 U.S. 1, 21 (2009); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

Here, both requirements are met. Defendants' interpretation of the Vacancies Reform Act and Attorney General Succession Act raises serious constitutional problems under the Appointments Clause, as explained in Part I.C.1, *supra*. Plaintiff's interpretation of these statutes avoids those doubts and is at least "fairly possible," as explained in Part I.A-B, *supra*. The canon of constitutional avoidance thus compels the Court to side with plaintiff.

It is troubling, to say the least, that the President is attempting to fill a "vacancy" he created himself with a "temporary" appointment that might last for many months or years. It is especially troubling that the temporary appointee has not been confirmed by the Senate for his underlying position; the President might reasonably be seen as appointing a loyalist in a way that deliberately circumvents the Senate's constitutional advice-and-consent role; and the President did so by bypassing the Attorney General Succession Act, an on-point federal statute. This Court should find that the Constitution cannot be so easily circumvented.

## II.    PLAINTIFF WILL SUFFER IRREPARABLE HARM IF WHITAKER ILLEGITIMATELY EXERCISES AUTHORITY AS ACTING ATTORNEY GENERAL.

As to the second criterion for preliminary relief, plaintiff will suffer irreparably if forced to litigate against the wrong party.

First and most obviously, if plaintiff's position on the merits of this motion is correct, then everything Whitaker does in this case as Acting Attorney General is *ultra vires*. *See Noel Canning v. NLRB*, 705 F.3d 490, 493 (D.C. Cir. 2013), *aff'd*, 134 S. Ct. 2550 (2014) (because President did not legitimately appoint members to NLRB, Board did not have quorum and thus lacked authority to bind the parties). He simply cannot dictate the Department of Justice's policy and position on any issue in the case, nor oversee others who would articulate that position to this Court, because he does not have the legal authority to do so. Nevertheless, Whitaker is currently supervising the Department of Justice in this litigation. That fact harms all of the parties to this litigation, including plaintiff, because it calls into question every position taken by defendants as the case moves forward. There is no effective redress for this harm other than naming the correct successor to the Attorney General as soon as possible—especially in light of the fact that defendants' response to the complaint is due soon.

Second, plaintiff needs to know whom it is litigating against and negotiating with to achieve a favorable outcome. This case involves high-profile public policy issues that received the Attorney General's personal attention in the past and are likely to do so as the case moves forward. Now that Sessions has resigned, the new Attorney General could decide to change the United States' position, in whole or in part, in ways that either advance or threaten plaintiff's interests (and potentially even render this entire controversy moot). For example, he could withdraw Mr. Sessions' certification to Congress and choose to defend and enforce the ACA. Thus, it matters tremendously who sits in that chair. Having the incorrect successor in the role undermines the entire litigation process. That harm is already occurring and gets worse every day that Whitaker remains in control of the litigation.

Third, the appointment of Whitaker, in particular, is likely to result in irreparable harm to plaintiff's interests in this case.  After the Supreme Court upheld the constitutionality of the minimum coverage requirement (a position taken by the Department of Justice at the time), Whitaker went on record to argue that the case was wrongly decided.  *See* Charlie Savage, *Acting Attorney General Matthew G. Whitaker Once Criticized Supreme Court's Power*, N.Y. Times (Nov. 8, 2018) (quoting Whitaker describing Supreme Court cases that he thought were wrongly decided, including *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), "all New Deal cases that were expansive of the federal government," and "all the way up to the Affordable Care Act and the individual mandate").  Whitaker has also previously asserted that Americans need "freedom from Obamacare, a regulation that is crushing small businesses—a statute that is taking away your freedom to keep your doctor, freedom to keep your plan, and your freedom to choose the coverage that you want."  C. Ryan Barber & Ellis Kim, *Meet Matt Whitaker, the Acting Attorney General and Mueller Critic*, Nat'l L.J. (Nov. 7, 2018), http://bit.ly/2JZqA9i.  Indeed, he went so far as to urge state governments to "nullify Obamacare" by refusing to follow federal law.  Elliot Hannon, *Trump's Acting Attorney General of the Country Suggested He "Believes" in States' Right to Nullify Federal Laws*, Slate (Nov. 10, 2018), http://bit.ly/2zEgRA8.  These excerpts suggest that Whitaker is unlikely to be persuadable regarding any contrary position.  If allowed to make policy for the government and dictate its position in this case, Whitaker is highly likely to take an extreme view regarding the ACA—for example, the view of the challenger states in Texas that the entire statute must fall.  At a minimum, he is likely to maintain the extreme view already articulated by Sessions that key protections for people with pre-existing medical conditions should be struck down.

### III.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST OVERWHELMINGLY FAVOR AN IMMEDIATE INJUNCTION TO PREVENT AN END-RUN AROUND 28 U.S.C. § 508 AND THE CONSTITUTION.

When "the government is the opposing party," balancing the equities and considering whether an injunction is in the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts "pay particular regard for the public consequences" of entering, or declining to enter, an injunction. *See Winter*, 555 U.S. at 20 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). In this case, the balance is one-sided: the public consequences of failing to enter plaintiff's requested injunction are dire, and the government faces no cognizable harm if an injunction is entered.

The public interest in an injunction is obvious. Assuming the correctness of plaintiff's position on the merits, Whitaker's appointment violates a federal statute, 28 U.S.C. § 508, and also the Appointments Clause of the Constitution. These are bedrock legal rules regarding the organization of our government. Their violation is sufficient, on its own, to tip the balance in favor of an injunction. *Cf. Landry v. FDIC*, 204 F.3d 1125, 1131 (D.C. Cir. 2000) (Appointments Clause is "*structural safeguard* . . . establishing high walls and clear distinctions," and reversal for violation of the clause does not require "a clear causal link to a party's harm").

The concern is only heightened here because Whitaker is not being asked to serve as some minor functionary in an obscure back office. Instead, he will exercise the full power of the Attorney General of the United States, *i.e.*, the power to make irreversible decisions regarding federal litigation, policy, and oversight that touch on matters of life and death for many citizens and non-citizens alike, in addition to the specific irreparable harms plaintiff faces, as set forth above. The public has a strong interest in ensuring that the individual making these important decisions is acting pursuant to lawful authority.

Moreover, as explained above, Whitaker has expressed idiosyncratic views that are inconsistent with longstanding Department of Justice policy.  In addition to his views about the ACA, about the validity of judicial review (including the correctness of *Marbury*), and about whether States can and should "nullify" federal law—all described above—Whitaker has explained that what matters to him is whether judges have "a biblical view of justice"; he would be "very concerned" if a judicial nominee were "secular."  Rekha Basu, *Matthew Whitaker's Troubling Opinion:  Judges Need a Biblical View*, Des Moines Register (Nov. 7, 2018), http://bit.ly/2T6cmrl.  Whitaker has thus far also taken over supervision of Robert Mueller, the special counsel, even though Whitaker has already pre-determined that "there was no collusion with the Russians and the Trump campaign."  Maxwell Tani, Will Sommer & Betsy Woodruff, *Matthew Whitaker, Mueller's New Boss, Said There Was "No Collusion" with Russia*, The Daily Beast (Nov. 8, 2018), https://thebea.st/2JSehLH.  This suggests that Whitaker is highly likely to implement substantial changes as Acting Attorney General, further heightening the public interest in an injunction.  Indeed, since his recent appointment last week, Whitaker has already announced an Interim Final Rule declaring that those aliens who cross the border outside an official port of entry will be ineligible for asylum.  *See Acting Attorney General Whitaker Statement on Presidential Proclamation*, U.S. Dep't of Justice (Nov. 9, 2018), http://bit.ly/2qEAO5M; *DOJ and DHS Issue New Asylum Rule*, U.S. Dep't of Justice (Nov. 8, 2018), http://bit.ly/2qFZsDb.

On the other hand, the injunction that plaintiff seeks would not injure defendants.  The immediate effect would be to substitute Rod Rosenstein for Whitaker as Acting Attorney General.  Rosenstein is the current Deputy Attorney General, having been nominated by the President and confirmed with advice and consent of the Senate pursuant to Article II.  This was done knowing full well that Congress had already spoken as to the line of succession when it comes to Attorney

General vacancies—and provided that Rosenstein is next to succeed Sessions.  *See supra* Part I (likelihood of success on the merits).  Thus, the change should not be disruptive (and to the extent it is, the disruption is legally required).

Moreover, nothing in plaintiff's proposed order would jeopardize the President's ability to remove Rosenstein if the President thinks he is wrong for the job, nor the President's authority to nominate someone else (including Whitaker) as Attorney General, subject to the advice and consent of the Senate.  What the President cannot do, however, is bypass the constitutional and statutory requirements for appointing someone to that office.  The stakes of this case bring into stark relief the special import of the Constitution's mandate that such confirmation be conditioned on the Senate's approval.  The balance of equities and interests of the public weigh strongly in favor of granting an immediate injunction to prevent an end-run around these requirements.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for either a preliminary injunction or substitution of Deputy Attorney General Rosenstein as the Acting Attorney General in this matter should be granted.

November 13, 2018

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Julia Doyle Bernhardt
_____
JULIA DOYLE BERNHARDT (BAR NO. 25300)
jbernhardt@oag.state.md.us
STEVEN M. SULLIVAN (BAR NO. 24930)
ssullivan@oag.state.md.us
SARAH W. RICE (BAR NO. 29113)
srice@oag.state.md.us
KIMBERLY S. CAMMARATA (BAR NO. 11997)
kcammarata@oag.state.md.us
Assistant Attorneys General
200 Saint Paul Place

33

Baltimore, Maryland 21202
(410) 576-6325 (direct)
(410) 576-6955 (fax)

THOMAS C. GOLDSTEIN (BAR NO. 13618)
TGoldstein@goldsteinrussell.com
KEVIN K. RUSSELL, *admission pending*
KRussell@goldsteinrussell.com
SARAH E. HARRINGTON, *admission pending*
SHarrington@goldsteinrussell.com
TEJINDER SINGH (BAR NO. 17888)
TSingh@goldsteinrussell.com
DANIEL WOOFTER (BAR NO. 20474)
dhwoofter@goldsteinrussell.com
Goldstein & Russell, P.C.
7475 Wisconsin Ave., Suite 850
Bethesda, Maryland 20814
(202) 362-0637 (direct)
(800) 574-2033 (fax)