No. 18-496

IN THE

# Supreme Court of the United States

BARRY MICHAELS,

*Petitioner*,

*v.*

JEFFERSON B. SESSIONS III,
ATTORNEY GENERAL OF THE UNITED STATES,
AND THOMAS E. BRANDON, AS DEPUTY DIRECTOR,
HEAD OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

*Respondents.*

On Petition for a Writ of Certiorari to the
United States Court of Appeals for the Ninth Circuit

## MOTION TO SUBSTITUTE

Michael E. Zapin
  *Counsel of Record*
20283 State Rd. 7
Suite 400
Boca Raton, FL 33498
(561) 367-1444
*michaelezapin@gmail.com*

Thomas C. Goldstein
Tejinder Singh
Charles H. Davis
Daniel H. Woofter
Erica Oleszczuk Evans
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Ave.
Suite 850
Bethesda, MD 20814
(202) 362-0636
*tg@goldsteinrussell.com*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ii

MOTION TO SUBSTITUTE ........................................................................................ 1

BACKGROUND ............................................................................................................ 4

SUMMARY OF THE ARGUMENT .............................................................................. 8

ARGUMENT .................................................................................................................. 8

I.   The Governing Statutes Are Unambiguous. ........................................................ 8

II.  The Government's Contrary Argument Is Unpersuasive.................................. 12

III. The Appointments Clause Requires That The Acting Attorney General Be
     Senate-Confirmed, Absent Exigencies Not Present Here. .................................. 21

CONCLUSION............................................................................................................. 26

# TABLE OF AUTHORITIES

## Cases

*Branch v. Smith*,
538 U.S. 254 (2003) ............................................................................................. 15

*Crowell v. Benson*,
285 U.S. 22 (1932) ............................................................................................... 21

*Edmond v. United States*,
520 U.S. 651 (1997) ......................................................................................... 4, 10

*I.N.S. v. St. Cyr*,
533 U.S. 289 (2001) ............................................................................................. 21

*Lucia v. SEC*,
138 S. Ct. 2044 (2018) ........................................................................................ 22

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
559 U.S. 229 (2010) ............................................................................................. 21

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
571 U.S. 161 (2014) ............................................................................................. 14

*NLRB v. SW Gen., Inc.*,
137 S. Ct. 929 (2017) ..................................................................................... 10, 22

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) ............................................................................................. 13

*Rehberg v. Paulk*,
566 U.S. 356 (2012) ............................................................................................. 20

*Tanner v. United States*,
483 U.S. 107 (1987) ............................................................................................. 18

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*,
508 U.S. 439 (1993) ............................................................................................... 7

*United States v. Curtiss-Wright Exp. Corp.*,
299 U.S. 304 (1936) ............................................................................................. 25

*United States v. Eaton*,
169 U.S. 331 (1898) ....................................................................... 22, 23, 24, 25

*United States v. Germaine*,
99 U.S. 508 (1879) .......................................................................................... 4, 21

*Weiss v. United States*,
510 U.S. 163 (1994) ............................................................................................. 22

*Whitfield v. United States*,
543 U.S. 209 (2005) ............................................................................................. 14

*Whitman v. Am. Trucking Ass'n*,
    531 U.S. 457 (2001) ........................................................................ 17

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ........................................................................ 21

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
    135 S. Ct. 2076 (2015) .................................................................... 25

## Constitutional Provisions

U.S. Const. art. II ...................................................................... 1, 21, 25

U.S. Const. art. II, § 2, cl. 2 .................................................... *passim*

U.S. Const. art. II, § 3 .......................................................................... 14

## Statutes

Act of July 20, 1870, ch. 150, 16 Stat. 162 ...................................... 4

Act of July 23, 1868, ch. 227, 15 Stat. 168 ...................................... 6

Act of June 20, 1874, ch. 333, 18 Stat. 113 ...................................... 7

Federal Vacancies Reform Act of 1998, Pub. L. No. 105-277, div. C, tit. I, § 151,
    112 Stat. 2681-611 ............................................................................ 6

Pub. L. No. 100-398, 102 Stat. 988 (1988) ...................................... 6

Pub. L. No. 89-554, 80 Stat. 378 (1966) .......................................... 6

Pub. L. No. 95-139, 91 Stat. 1171 (1977) ........................................ 5

Reorganization Plan No. 4 of 1953, Pub. L. No. 83-288, 67 Stat. 626 .................... 5, 7

Rev. Stat. § 179 (1st ed. 1875) ........................................................ 7

2 U.S.C. § 136-1 ............................................................................ 18

2 U.S.C. § 1801 .............................................................................. 18

5 U.S.C. § 3345(a) ......................................................................... 15

5 U.S.C. § 3345(a)(2)-(3) ................................................................. 6

5 U.S.C. § 3346 .......................................................................... 6, 19

5 U.S.C. § 3347(a) ........................................................................... 9

5 U.S.C. § 3347(a)(1) ....................................................................... 7

5 U.S.C. § 3347(a)(1)(B) .............................................................. 9, 11

5 U.S.C. § 3347(b) ......................................................................... 11

5 U.S.C. § 3348(b) ......................................................................... 11

5 U.S.C. § 3348(d)(2) ....................................................................... 2

5 U.S.C. §§ 3345-49d ......................................................................................... 7

7 U.S.C. §§ 2210-11 .......................................................................................... 15

10 U.S.C. § 132(b) ............................................................................................... 5

10 U.S.C. § 154(d) ............................................................................................... 5

12 U.S.C. § 1723(a) ........................................................................................... 18

28 U.S.C. § 508 .............................................................................................. 5, 25

28 U.S.C. § 508(a) ..................................................................................... 1, 8, 17

28 U.S.C. § 508(b) ....................................................................................... 8, 12

28 U.S.C. §§ 510-19 ............................................................................................ 2

28 U.S.C. §§ 511-19 .......................................................................................... 10

29 U.S.C. § 553 ................................................................................................. 18

38 U.S.C. § 304 ................................................................................................... 6

40 U.S.C. § 302 ................................................................................................... 6

42 U.S.C. § 902(b)(4) ......................................................................................... 6

50 U.S.C. § 1804 ................................................................................................. 2

50 U.S.C. § 3026(a) ............................................................................................ 5

50 U.S.C. § 3037(b)(2) ....................................................................................... 5

## Regulations

8 C.F.R. §§ 1003.9-1003.10 ............................................................................... 2

28 C.F.R. pt. 600 .......................................................................................... 2, 10

## Rules

Sup. Ct. R. 21(c)(2) ............................................................................................ 3

Sup. Ct. R. 33.1 .................................................................................................. 3

Sup. Ct. R. 35 ..................................................................................................... 1

## Other Authorities

*Acting Attorneys General,* 8 Op. O.L.C. 39 (Mar. 30, 1984) ...................... 20

*Black's Law Dictionary* (10th ed. 2014) .......................................................... 9

Maeve P. Carey, Cong. Research Serv., R41872, *Presidential Appointments, the Senate's Confirmation Process, and Changes Made in the 112th Congress* (Oct. 9, 2012) ............................................................................................. 6

Walter Dellinger & Marty Lederman, *Initial Reactions to OLC's Opinion on the Whitaker Designation as "Acting" Attorney General* (Nov. 15, 2018), http://bit.ly/2zX6wzz ........................................................................................ 24

Exec. Order No. 13,762 (Jan. 13, 2017) ...................................................... 13

*The Federalist No. 76* (Alexander Hamilton) (M. Beloff ed., 1987) ........................... 10

FedScope Federal Human Resources Data, Employment Cubes (Mar. 2018), https://www.fedscope.opm.gov/employment.asp ....................................................... 18

Marty Lederman, *A Quick Primer on the Legality of Appointing Matthew Whitaker as "Acting" Attorney General, and Whitaker's Power to Influence the Russia Investigation*, Just Security (Nov. 8, 2018), bit.ly/2z5b47z ................. 23

*Memorandum for Emmet T. Flood, Counsel to the President, Re: Designating an Acting Attorney General*, __ Op. O.L.C. ___ (Nov. 14, 2018), https://assets.documentcloud.org/documents/5113265/OLC-Acting-AG-memo.pdf ..... 19

*Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73 (2007) .............................................................................. 22

Morton Rosenberg, Congressional Research Service, *Validity of Designation of Bill Lann Lee As Acting Assistant Attorney General For Civil Rights* (Jan. 14, 1998) ..................................................................................................... 11

S. 2176, 105th Cong. (1998) .................................................................... 8, 19

S. Rep. No. 105-250 (1998) ....................................................................... 19

## MOTION TO SUBSTITUTE

Petitioner respectfully moves this Court to substitute Rod J. Rosenstein in his official capacity as Acting Attorney General for Jefferson B. Sessions III, who resigned on November 7, 2018.  The President that day purported to designate Matthew G. Whitaker as Acting Attorney General.  But Movant submits that, in fact, Mr. Rosenstein — as the Senate-confirmed Deputy Attorney General — automatically succeeded to the role of Acting Attorney General under 28 U.S.C. § 508(a).  Further, the appointment of Mr. Whitaker violated Article II of the Constitution.

This Court's Rules provide that successors to government officials are automatically substituted.  *See* Sup. Ct. R. 35.  But that practice is premised on the ability of this Court to identify the correct successor, so that any judgment or Order of the Court is directed to the correct individual.  Controversies are rare.  This is the extraordinary case in which the identity of the successor is both contested and has important implications for the administration of justice nationally.  This Motion seeks to resolve the dispute.

From the outset, Movant freely acknowledges that no characteristic of this case distinguishes it from any other in which Mr. Sessions was a named party. But the fact that the same issue has already arisen in multiple cases and has the potential to arise in thousands more is a feature, not a bug, of this promptly filed motion. There is a significant national interest in avoiding the prospect that every district and immigration judge in the nation could, in relatively short order, be presented with the controversy over which person to substitute as Acting Attorney General.

Often, that will not be a ministerial question, as the Attorney General has nu-
merous personal responsibilities under federal law.  Every day, Mr. Whitaker would
presently be expected to take a number of significant official acts, including appoint-
ing immigration judges, authorizing national security warrants, determining not to
enforce federal statutes on the ground that they are unconstitutional, approving or
withdrawing regulations, and overseeing the investigation of Special Counsel Robert
Mueller.  *See*, *e.g.*, 28 U.S.C. §§ 510-19; 50 U.S.C. § 1804; 8 C.F.R. §§ 1003.9-1003.10;
28 C.F.R. pt. 600.

If this Court declines to resolve this question immediately and instead deter-
mines several months in the future that Mr. Whitaker's appointment was always in-
valid, then "unwinding" all of those personal orders would be a fraught and disruptive
exercise that could embroil the federal courts in innumerable collateral disputes.  *Cf.*
5 U.S.C. § 3348(d)(2) (actions of officials not qualified under Vacancies Act "may not
be ratified" later).  Deciding this Motion promptly avoids those significant difficulties.
Even if this Court now determines that the President in fact validly appointed Mr.
Whitaker as Acting Attorney General, that ruling would equally benefit the admin-
istration of justice by removing the cloud of uncertainty over the appointment and by
resolving the burgeoning number of challenges to it that are otherwise likely to be
filed in the lower courts.

For similar reasons, the exigencies of the circumstances are such that Movant
does not believe it would be more appropriate to allow this question to be resolved in
the first instance in some other matter in the lower courts, subject to subsequent

review in the courts of appeals and then this Court. So far as we are aware, the most advanced challenge to Mr. Whitaker's appointment will be argued in federal district court on December 19, 2019. *See* Scheduling Order, *Maryland v. United States*, No. 18-cv-2849 (D. Md. Nov. 13, 2018). The judge in that case has not indicated when the parties can expect a ruling. Any eventual appeal would presumably not reach this Court for several additional months.

Importantly, it is not likely that the percolation of this question in the lower courts would substantially benefit this Court's eventual ruling. The Motion presents a pure question of law; no relevant record is being assembled in the lower courts. The legal position of the Government and its supporting rationale have already been articulated in multiple opinions of the Office of Legal Counsel. *See* Appendix A (collecting those opinions). The contrary position is well developed and is set forth by this Motion. Leaving the question to be decided in the first instance by district courts and the courts of appeals would as a practical matter amount to nothing more than different judges "taking sides" while waiting for the issue to reach this Court.

Given the significance of the question and the complexity of the legal dispute, this Court may deem it appropriate to set the Motion for plenary briefing and argument. Movant is prepared to file a substantive brief on any schedule the Court deems appropriate.[1]

---

[1] Movant consulted the Solicitor General on the question of an appropriate schedule, but that Office was not then prepared to offer its views beyond a presumption that it would respond within ten days. To the extent that the Court would benefit from a proposal, Movant suggests the following. The Court should direct that the Motion promptly be resubmitted pursuant to Supreme Court Rule 33.1. *See* Sup. Ct. R. 21(c)(2) (Court may direct Motions be filed under Rule 33.1). Further briefs should be

## BACKGROUND

The Constitution's Appointments Clause provides in relevant part that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President . . . ." U.S. Const. art. II, § 2, cl. 2.  The Appointments Clause thus divides officials into so-called "principal" and "inferior" officers; the Senate categorically must confirm the former but it may authorize the President to appoint the latter directly. *See Edmond v. United States*, 520 U.S. 651, 660-63 (1997); *United States v. Germaine*, 99 U.S. 508, 509-11 (1879).  The Attorney General, as the head of the Department of Justice and the Nation's chief law enforcement officer, is indisputably a principal officer.

For as long as there has been a Department of Justice, Congress has mandated that only a Senate-confirmed official may serve as Acting Attorney General.  In 1870, the statute that created the Department established the Solicitor General as the Attorney General's second in command.  It specified that if the Attorney General was unavailable, the Solicitor General would serve in an acting capacity.  Act of July 20, 1870, ch. 150, § 2, 16 Stat. 162, 162.  In 1953, Congress created the position of Deputy

---

submitted subject to the page limits applicable to Briefs on the Merits under Rule 33.1, on the following schedule: November 26, Opposition of the United States and *Amicus* Briefs in Support of Either Party; December 3, Reply in Support of the Motion.

Attorney General, specifying it as the successor to the Attorney General, to be followed by the Solicitor General and the Assistant Attorneys General in order of succession as prescribed by the Attorney General. *See* Reorganization Plan No. 4 of 1953, Pub. L. No. 83-288, 67 Stat. 626, 636.  In 1977, Congress created the position of Associate Attorney General and inserted it below the Deputy Attorney General in the order of succession. Pub. L. No. 95-139, 91 Stat. 1171, 1171 (1977).

Those provisions were mandatory.  The President could not designate anyone else.  Also, none limited how long the acting official could serve.  For ease of reference, we refer to these provisions as the "Attorney General Succession Act."  The operative version is codified at 28 U.S.C. § 508.  *See* Appendix B (reproducing the current and predecessor provisions).

Congress has passed similar statutes governing the acting succession of other vital government officers, including the Secretary of Defense, the Chairman of the Joint Chiefs of Staff, the Director of National Intelligence, and the Director of the Central Intelligence Agency (CIA). *See* 10 U.S.C. § 132(b) (Deputy Secretary of Defense); 10 U.S.C. § 154(d) (Vice Chairman of Joint Chiefs of Staff); 50 U.S.C. § 3026(a) (Principal Deputy Director of National Intelligence); 50 U.S.C. § 3037(b)(2) (Deputy Director of CIA).  With respect to each, in the absence of the Senate-confirmed officer, a Senate-confirmed deputy must serve in the acting role.  As with the Attorney General Succession Act, the President cannot unilaterally appoint an alternative official, and there is no time limit on how long the deputy may serve in an acting role.  *See* Appendix C (collecting these examples).

Those statutes contrast with others that govern particular offices. For several, Congress has designated a default successor but granted the President the power to pick someone else. *E.g.*, 38 U.S.C. § 304 (President may override succession by Deputy Secretary of Veterans Affairs); 40 U.S.C. § 302 (Deputy Administrator of General Services); 42 U.S.C. § 902(b)(4) (Deputy Commissioner of Social Security); *see* Appendix D (collecting these examples).

There are approximately 1,200 Senate-confirmed offices. *See* Maeve P. Carey, Cong. Research Serv., R41872, *Presidential Appointments, the Senate's Confirmation Process, and Changes Made in the 112th Congress* 7 & n.21 (Oct. 9, 2012). Not surprisingly, Congress has not adopted individual statutes to govern succession for each one. Instead, in 1868, Congress enacted a general vacancies provision. Act of July 23, 1868, ch. 227, 15 Stat. 168. That statute provided that the officer's "first assistant" would serve in the acting role, subject to the President's power to appoint another Senate-confirmed official instead. The original 1868 version limited the interim appointment to 10 days. § 3, 15 Stat. at 168. In 1966, Congress extended it to 30 days. Pub. L. No. 89-554, 80 Stat. 378, 426 (1966). In 1988, it made the period 120 days. Pub. L. No. 100-398, 102 Stat. 988 (1988). In 1998, Congress both extended it generally to 210 days and also for the first time granted the President the power to name an established, senior staff member of the agency as the acting officer. 5 U.S.C. §§ 3345(a)(2)-(3), 3346; *see* Federal Vacancies Reform Act of 1998, Pub. L. No. 105-277, div. C, tit. I, § 151, 112 Stat. 2681-611. For ease of reference, we refer to these

provisions as the "Vacancies Act." The operative version is codified at 5 U.S.C. §§ 3345-49d.  *See* Appendix E (reproducing the current and predecessor provisions).

From the beginning, Congress specified that the Attorney General Succession Act's mandatory order of succession overrides the general provisions of the Vacancies Act.  In 1873, in the course of codifying federal law at Congress's direction, the Secretary of State explicitly excluded the Office of the Attorney General from the Vacancies Act.  Rev. Stat. § 179 (1st ed. 1875); *see also* Act of June 20, 1874, ch. 333, 18 Stat. 113 (codification is regarded as authoritative); *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 449 n.4 (1993).  In 1953, when Congress reorganized federal personnel law, it specified for avoidance of doubt that the Deputy Attorney General was the "first assistant" for purposes of the Vacancies Act, but provided that the President's appointment authority under that Act did not apply to the Office of the Attorney General.  *See* 67 Stat. at 636.

The now-operative Vacancies Act (the 1998 version) explicitly exempted even more offices, not just the Attorney General.  The Vacancies Act now states that it is generally the exclusive mechanism for determining the acting successor for a Senate-confirmed position "unless . . . a statutory provision expressly . . . designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  5 U.S.C. § 3347(a)(1).  Congress considered but did not adopt the Senate version of that statute supported by the Department of Justice, which would have done the opposite and made the Vacancies Act uniformly applicable to all offices,

unless a specific statute expressly precluded its application.  S. 2176, 105th Cong. § 2 (1998).

## SUMMARY OF THE ARGUMENT

The Attorney General Succession Act unambiguously deems Deputy Attorney General Rod Rosenstein the Acting Attorney General.  There is no merit to the Government's contrary argument that Congress empowered the President to choose whether to permit automatic succession under that statute or instead to choose a successor under the Vacancies Act.  Indeed, given the absence of any exigency, the Appointments Clause only permits a Senate-confirmed official to serve as Acting Attorney General.

## ARGUMENT

### I.    The Governing Statutes Are Unambiguous.

1.  In the Attorney General Succession Act, Congress specified the succession of the Attorney General.  "In the case of a vacancy in the office of the Attorney General . . . the Deputy Attorney General may exercise all the duties of that office . . . ."  28 U.S.C. § 508(a).  If the Deputy Attorney General is unavailable, the Associate Attorney General and then (in the order specified by the Attorney General) other Senate-confirmed Department of Justice officials automatically succeed to the role of Acting Attorney General.  *Id*. § 508(b).  The Attorney General Succession Act—in contrast to the Vacancies Act, with which it has co-existed for 150 years—grants the President no authority to override that congressional directive to appoint some other hand-

8

picked successor who has not been subject to the oversight of Senate confirmation within that agency.

The Vacancies Act generally provides "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of" any Senate-confirmed officer in every executive agency (other than the Government Accountability Office).  5 U.S.C. § 3347(a).  But that is not so when another "statutory provision expressly . . . designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." *Id*. § 3347(a)(1)(B).  To designate is "[t]o choose (someone or something) for a particular job or purpose." *Black's Law Dictionary* 541 (10th ed. 2014).  The Attorney General Succession Act does just that— it chooses the Deputy Attorney General to serve as the acting official.

The Vacancies Act is thus unambiguous.  The statutory text accordingly provides that the Vacancies Act is the only statute under which the President may select an acting official unless another statute chooses (designates) the successor.  That language does not leave room for the President nonetheless to still make an appointment in the face of that designation. Nonetheless, the Government's position inevitably is that the Attorney General Succession Act does not "designate" – *i.e.*, choose – the Acting Attorney General. Instead, the President can "designate" some other officer under the Vacancies Act.  That reading cannot be reconciled with the straightforward text.

2.  The reasons that Congress made the Attorney General Succession Act exclusive are obvious and illustrated by recent events.  The Attorney General exercises

9

vast authority over, for example, criminal and national security matters.  28 U.S.C. §§ 511-19.  The role calls for the highest levels of integrity and personal judgment, prerequisites safeguarded by the Constitution's command that principal officers be subject to the oversight and check provided by Senate confirmation, *see NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017), as a means "to curb Executive abuses of the appointment power" and "'to promote a judicious choice of [persons] for filling the offices of the union,'" *Edmond v. United States*, 520 U.S. 651, 659 (1997) (quoting *The Federalist No. 76*, at 386-87) (Alexander Hamilton) (M. Beloff ed., 1987) (alteration in original).

Indeed, the Attorney General plays a particularly vital role with respect to the separation of powers.  Except in cases of recusal, the Attorney General has the power to control an investigation of the President himself.  28 C.F.R. pt. 600.  Absent the Attorney General Succession Act, the President could fire the Attorney General (or demand his resignation), then appoint a hand-picked junior Senate-confirmed officer from an entirely different agency, or a carefully selected senior employee who he was confident would terminate or otherwise severely limit the investigation.  Indeed, the President could appoint and then remove a series of hand-picked individuals as Acting Attorney General until one finally acceded to the President's demands, with the Senate left powerless to intercede.  The Attorney General Succession Act makes that impossible; without it, the possibility seems far from theoretical.

The Attorney General Succession Act also ensures that the President cannot allow an appointment to lapse, thereby leaving the vital position of Attorney General

empty.  The President would have to remove at least a half-dozen Senate-confirmed senior Department of Justice officials before the line of automatic succession was exhausted.  By contrast, under the general provisions of the Vacancies Act, the President may force a vacancy by either terminating any interim appointee or allowing the time limit on the appointment to expire.  5 U.S.C. § 3348(b).

3.  Congress added the "exclusivity" provision to the 1998 Vacancies Act to address a distinct problem not presented by this case, not to make that statute an available means for making a presidential appointment in every case. The Department of Justice had taken the position that the President could fill vacancies through a mechanism other than *either* the Vacancies Act (which imposed time limitations) or a specific succession statute—*viz.*, by "delegating" the officer's responsibilities to some other staff member. This was a significant controversy at the precise time that Congress was considering the 1998 statute.  *See* Morton Rosenberg, Congressional Research Service, *Validity of Designation of Bill Lann Lee As Acting Assistant Attorney General For Civil Rights* 34 (Jan. 14, 1998) (describing the controversy and proposing "Amending the Vacancies Act" to resolve it). Congress therefore provided that the Vacancies Act's exclusivity provision was not applicable if a specific statute "designated" the acting official, but that a statute merely granting authority "to delegate duties statutorily vested in that agency head" would not qualify.   5 U.S.C. § 3347(a)(1)(B), (b).

## II.     The Government's Contrary Argument Is Unpersuasive.

The Government argues that the Vacancies Act is a "non-exclusive" means to determine the Acting Attorney General. On its view, the fact that the Vacancies Act's exclusivity provision is inoperative does not negate the statute's applicability. Instead, it renders the Vacancies Act's procedures optional, at the President's discretion. That argument lacks merit.

The text of the Vacancies Act provides no real support for the Government's reading.  The Government accepts that the statute's exclusivity provision does not apply here, because the Attorney General Succession Act "designates" the Deputy Attorney General as the relevant acting official.  The Government then can point to nothing in the statutory text specifying that the Vacancies Act's general provisions would apply specifically in the case of the resignation of the Attorney General.

The Government seemingly reads the Vacancies Act as if it affirmatively stated that the statute provides a "non-exclusive means of selecting" acting officials. But it does not say that. Rather, the Vacancies Act has an exclusivity provision that is inapplicable here, in its entirety.[2]

---

[2]     There is one potential factual scenario—not presented by this case—in which the Vacancies Act and the Attorney General Succession Act could work together.  The Attorney General Succession Act specifies that certain Senate-confirmed Department of Justice officials succeed to the role of Acting Attorney General.  But the Attorney General Succession Act does not address who assumes that acting role if the list it provides is exhausted because no Senate-confirmed official is in any of the enumerated roles.  28 U.S.C. § 508(b).  This scenario will sometimes occur during transitions between presidential administrations, when all of the incumbent officials resign or are removed.  In that limited circumstance, the Vacancies Act could provide a mechanism to select the Acting Attorney General, because such a selection would not conflict with the requirements of the Attorney General Succession Act.

The President has issued an Executive Order doing just that.  Executive Order 13,762 identifies the order of succession for the Attorney General.  It first expressly follows the mandatory order of succession under Section 508.  It then provides that if the officials specified by that statute are

It moreover would take very clear statutory language for the Vacancies Act to function as the Government contends. Every ordinary canon of construction supports the conclusion that the mandatory provisions of the Attorney General Succession Act are instead controlling.

*First*, when two statutes conflict, the more specific presumptively controls. *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645-46 (2012).  The conflict here is plain and unavoidable.  The succession of the Attorney General *cannot* simultaneously be governed by both the Attorney General Succession Act and the Vacancies Act.  The Attorney General Succession Act categorically deems the Deputy Attorney General the Acting Attorney General, to be succeeded by other Senate-confirmed Department of Justice officials, none of which are subject to any time limit.  In stark contrast, if the Vacancies Act were to apply, it would deem the Deputy Attorney General the Acting Attorney General only by default and subject to a presidential override at his discretion, subject to a strict time limit, and with no possibility of automatic succession by other Department of Justice officials.

This case is the perfect illustration.  Under the Attorney General Succession Act, Rod Rosenstein is the Acting Attorney General.  But under the Vacancies Act, Matthew Whitaker is the Acting Attorney General.  Only one of those can be true.  Those officials cannot both serve and not serve at the same time – Schrödinger's Acting Attorneys General.

---

unavailable, "the President retains discretion, to the extent permitted by law, to depart from this order in designating an acting Attorney General."  Exec. Order No. 13,762 (Jan. 13, 2017).

The Attorney General Succession Act is the more specific provision.  It is directed to one particular office, whereas the Vacancies Act applies to more than 1,000 positions.  The Attorney General Succession Act also identifies precisely the Senate-confirmed officials who will serve in an acting role.  By contrast, the Vacancies Act permits the President to appoint any established agency employee who is at least a GS-15, as well as Senate-confirmed officers from other agencies whose functions have nothing at all to do with those of the Attorney General, and who were not confirmed with the slightest thought by the Senate that the President might pluck them from that position to serve as the Nation's chief law enforcement official.

The Government's contrary reading unavoidably rests on an understanding that, if two statutes conflict, the President can choose the one he prefers. But that is not how America works.  The Constitution tasks the President with faithfully administering the laws that Congress passes, not picking the ones he likes best.  U.S. Const. art. II, § 3.  Distinct, reticulated statutory schemes carefully superintended by Congress over 150 years that play a direct role in the Constitution's checks and balances are not like neckties and breakfast cereals.  You do not just pick whichever suits in the moment.

*Second*, this Court will not stretch statutory language when it is obvious that Congress knew how to accomplish the same result much more directly.  *See, e.g.*, *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014); *Whitfield v. United States*, 543 U.S. 209, 216 (2005).  Here, closely related provisions include three

mechanisms for giving the President the option to make an appointment that over-rides the successor specified by Congress:

(i) Multiple statutes identify a default acting official, subject to the President's authority to name someone else. *See* Appendix D, *infra*.

(ii) Other statutes expressly state that the succession of a particular office is governed by the general provisions of the Vacancies Act. *See, e.g.*, 7 U.S.C. §§ 2210-11 (Secretary of Agriculture).

(iii) Section 3345(a) of the Vacancies Act itself identifies a default successor (the "first assistant") in paragraph 1, then provides "notwithstanding paragraph (1)" that the President may name any Senate-confirmed official or established senior agency staff member. *See* 5 U.S.C. § 3345(a).

If Congress had intended to permit the President to choose someone other than the Deputy Attorney General as the Acting Attorney General, it would logically have chosen one of those mechanisms.  It would have amended the Attorney General Succession Act to authorize a Presidential appointment. Or it would have specified in Section 3345(a) that the President's appointment authority applies "notwithstanding 28 U.S.C. § 508" or (more broadly) "notwithstanding any provision that designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  But it did none of those.

*Third*, there is a strong presumption against concluding that statutes have been effectively repealed by implication. *See, e.g.*, *Branch v. Smith*, 538 U.S. 254, 273 (2003). But deeming the Vacancies Act controlling here would render the Attorney

General Succession Act and the congressional judgments it embodies a nullity as a practical matter.  The very point of the Attorney General Succession Act is to ensure that the Nation's highest law enforcement official is a Senate-confirmed officer within the chain of command of the Department of Justice—one whom the Senate has already considered with the possibility s/he might be called on to perform the Attorney General's functions—and to forbid the President from appointing a hand-picked employee to that role.  Put another way, the Attorney General Succession Act represents a congressional judgment to *reject* the President's discretion to make *ad hoc* appointments in favor of a specified line of succession that the Senate has vetted in advance.

Again, this case is a perfect illustration.  It is impossible to know whether a majority of Senators would, after scrutiny, have voted to confirm Mr. Whitaker if the Senate had been asked for its advice and given the opportunity to consent. It is enough to recognize the objective fact that confirmation could not be assumed – including because his credentials for the position are, historically speaking, distinctive for the role.  Any President may, in any given moment, have particular reasons for wanting a specific individual to exercise the powers of the Attorney General. The Attorney General Succession Act exists to stop that from happening.

To be sure, the Government's reading does leave a small role for the Attorney General Succession Act's designation of the Deputy Attorney General. If the President elects to allow that statute to operate, the acting official is not subject to the time limitations of the Vacancies Act and will automatically be succeeded by other Senate-confirmed officials. But the question remains: Why would Congress give the

President that option? What was Congress trying to accomplish? There is no apparent answer.

Just as important, it would invite great uncertainty because it could be impossible to tell what constraints apply to the Acting Attorney General because it would not be known which statutory scheme was being used. Take the following straightforward hypothetical: the Attorney General resigns and is succeeded by the Deputy Attorney General. On the Government's reading, is that appointment subject to time limitations? If the Deputy Attorney General then resigns, does the Associate Attorney General become Acting Attorney General or is the office vacant? The answers depend on whether the Deputy Attorney General automatically assumed the acting role under Section 508(a) or instead Section 3345(a)(1), which equally makes the Deputy Attorney General (as the "first assistant") the first successor. But because the President has not "selected" anyone in that scenario of automatic succession, there is no way to know. Congress could not have intended to create such an indeterminate situation.

*Fourth*, "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001). Here, the elephant is huge, for the implications of the Government's position are breathtaking. As discussed, the very purpose of the Attorney General Succession Act was to ensure that the weighty responsibilities of that office would be performed by specific Senate-confirmed officials. Congress is not likely to have attributed that

17

capacity to all of the 6,916 employees of the Department of Justice who serve in the GS-15 pay grade, almost all of whom could be named Acting Attorney General under the Government's view of the statutory scheme. *See* FedScope Federal Human Resources Data, Employment Cubes (Mar. 2018), https://www.fedscope.opm.gov/employment.asp (Department of Justice March 2018 pay scale).

Moreover, the Government's position is not limited to the office of the Attorney General. As noted, indistinguishable statutory schemes have long governed the succession of other positions vital to the national interest—offices that Congress could not have imagined would be helmed by staff members or officers of completely unrelated agencies. On the Government's view, when the Senate approves each of the more than 1,200 officials subject to confirmation by that body, it has in mind that the President might under Section 3345 install that person as the Attorney General, Secretary of Defense, Director of National Intelligence, or Director of the CIA. *See supra* at 11. It would be the singular public servant who could effectively satisfy all of those roles. But it seems unlikely that the Senate has such lofty expectations in confirming, for example, the Architect of the Capitol, the Librarian of Congress, the Assistant Secretary-Employee Benefits Security Administration, or the President of Ginnie Mae (the Government National Mortgage Association) – much less all of them. *See* 2 U.S.C. §§ 136-1, 1801; 12 U.S.C. § 1723(a); 29 U.S.C. § 553.

*Sixth*, statutes are not read to produce a result that would have been compelled by draft legislation that Congress considered but did not enact. *See, e.g.*, *Tanner v. United States*, 483 U.S. 107, 125 (1987). Here, the Senate version of the 1998

Vacancies Act included language—apparently inserted at the urging of the Department of Justice—that would have allowed the President to make the appointment now at issue. The Senate bill provided that the Vacancies Act was controlling unless "another statutory provision expressly provides that the [sic] such provision supersedes sections 3345 and 3346." S. 2176, 105th Cong. § 2. It further generally provided that "[w]ith respect to the office of the Attorney General of the United States, the provisions of section 508 of title 28 shall *be applicable*" (emphasis added), not that they were controlling. *Id.*

The Government argues (*see Memorandum for Emmet T. Flood, Counsel to the President, Re: Designating an Acting Attorney General*, __ Op. O.L.C. ___ (Nov. 14, 2018), https://assets.documentcloud.org/documents/5113265/OLC-Acting-AG-memo.pdf) that its position is supported by a sentence in the Senate Report on the 1998 Vacancies Act stating, "even with respect to the specific provisions in which temporary officers may serve under the specific statutes this bill retains, the Vacancies Act would continue to provide an alternative procedure for temporarily occupying the office." S. Rep. No. 105-250, at 17 (1998). That argument is disappointingly incomplete. It omits the vital point that the Senate bill included language to that effect, but it was not adopted.[3]

---

[3]    The Government's position is not supported by the fact that Congress replaced the predecessor Vacancy Act's specific exemption for the Attorney General with the 1998 Act's broader exemption that includes not only the Attorney General Succession Act but also other statutes that "designate" specific successors. The change merely eliminates any negative inference that the Vacancies Act preserved only the specific succession regime for the Attorney General and overrode similar provisions in other statutes that govern succession for offices such as the Secretary of Defense.

*Seventh*, this Court will read statutory enactments in a manner consistent with long-settled practice, absent some clear indication that Congress intended to change the law. *See, e.g.*, *Rehberg v. Paulk*, 566 U.S. 356, 361-62 (2012).  From the time that Congress created the Department of Justice in 1870 until it enacted the provision of the 1998 Vacancies Act in question, the Acting Attorney General uniformly was the Senate-confirmed official specified by the Attorney General Succession Act.  *See Acting Attorneys General,* 8 Op. O.L.C. 39 (Mar. 30, 1984). The significant expansion in the Attorney General's weighty responsibilities over that time only reinforces that Congress would naturally be deeply concerned with the personal qualifications and integrity of the person holding that office.  Congress also would have had in mind President Nixon's order – issued to a succession of Senate-confirmed officials specified by Section 508 – to fire special prosecutor Archibald Cox. Congress would not have responded to the Saturday Night Massacre by granting the President even broader authority to install his own silent assassin.

Similarly, so far as Movant has determined, the Executive Branch uniformly adhered to the designations under statutes that govern other similar provisions (such as the Secretary of Defense, Chairman of the Joint Chiefs of Staff, and Director of the CIA) unless no Senate-confirmed deputy existed at the time. The striking fact about the Government's interpretation of the Vacancies Act is that there is no indication that Congress intended to abandon that settled practice and instead create the possibility of extraordinary and anomalous appointments of different acting officials.

20

*Eighth*, "it is a cardinal principle" of statutory interpretation that when an interpretation of a statute raises "a serious doubt" as to its constitutionality, "this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided," and adopt that interpretation instead. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). In the next Section, we detail why—absent some exigency—the Appointments Clause permits only a Senate-confirmed Department of Justice official to serve as Acting Attorney General. It is enough to say here that the Attorney General is indisputably a "principal officer," such that the Government's interpretation should be avoided because it would raise a "serious" constitutional question. *I.N.S. v. St. Cyr*, 533 U.S. 289, 300 (2001). This Court will in such a circumstance adopt a construction that is, like Movant's here, "plausible" or "fairly possible." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 239 (2010) (quotation marks omitted).

## III. The Appointments Clause Requires That The Acting Attorney General Be Senate-Confirmed, Absent Exigencies Not Present Here.

The Appointments Clause in Article II of the Constitution distinguishes between two classes of executive branch "officers"—principal officers and inferior officers—and specifies how each may be appointed. *See United States v. Germaine*, 99 U.S. 508, 509, 511 (1879). There is no dispute that the Attorney General is a principal officer, which means that except during a Senate recess, he or she must be nominated by the President and appointed "with the Advice and Consent of the Senate." U.S. Const. art. II, § 2, cl. 2.

When the Office of Attorney General is vacant due to death, resignation, or similar exigency, others may temporarily assume the position. But to be clear, as the Office of Legal Counsel itself acknowledges, anyone who assumes the role for anything but a "transient" or "incidental" period is him- or herself an "Officer of the United States" for purposes of the Appointments Clause. *See Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 77 (2007); *see also NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 946 (2017) (Thomas, J., concurring) (designation as "*acting*" officer, when there is "nothing 'special or temporary' about the appointment," is "trivial distinction" that does not avoid "structural protections of the Appointments Clause" (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)). Thus, the range of officials who may "contin[ue]" as an acting officer for more than a transient period, *i.e.* one that is not "special or temporary," is limited to individuals who meet the baseline Appointments Clause requirements. *See Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018); *Eaton*, 169 U.S. at 343. Those requirements can be met in one of two ways.

*First*, an individual may temporarily act as the Attorney General if he or she has been confirmed, with the advice and consent of the Senate, to an office in which such possible performance of the Attorney General's functions was, in effect, foreseeable. *Cf. Weiss v. United States*, 510 U.S. 163, 173-75 (1994) (Appointments Clause not violated when officer assumes duties "germane" to those of office already confirmed to with advice and consent).

Deputy Attorney General Rosenstein and others explicitly designated in the line of succession in the Attorney General Succession Act meet that requirement because when the Senate confirmed them, it understood that they might have to fill a vacancy in the Office of Attorney General.  Thus, the Senate has already advised and consented that these officers are qualified to perform the functions of the principal office, so they can temporarily exercise the authority of that post without having to be re-appointed and re-confirmed.

The Senate certainly has not made that evaluation with respect to Mr. Whitaker, who holds his chief-of-staff position without any input from the Senate at all. Indeed, Whitaker's appointment marks the first time since the Department of Justice was established in 1870 that a President has attempted to designate an Acting Attorney General who was not then serving in *any* office to which he or she was appointed by and with the advice and consent of the Senate. *See* Marty Lederman, *A Quick Primer on the Legality of Appointing Matthew Whitaker as "Acting" Attorney General, and Whitaker's Power to Influence the Russia Investigation*, Just Security (Nov. 8, 2018), bit.ly/2z5b47z.  Indeed, it would be the first time since the Department of Justice was established that an Acting Attorney General is anyone other than a sitting Senate-confirmed officer in the Department of Justice. *Id.*

*Second*, the Supreme Court held in *United States v. Eaton*, 169 U.S. 331 (1898), that a temporary appointment to perform the functions of a principal office, by an individual who has not been Senate-confirmed, is permissible in cases of true "exigency" for "a *limited time*, . . . under *special* and *temporary conditions*." *Id*. at 343

23

(emphasis added).  A contrary holding, the Court explained, "would render void any and every delegation of power to an inferior to perform under any circumstances or exigency the duties of a superior officer, and the discharge of administrative duties would be seriously hindered." *Id.*

Under *Eaton*, the assignment must be temporary, and it must be tailored to deal with the particular exigency that necessitated deviating from the ordinary Appointments Clause requirements.  The facts of *Eaton* illustrate the holding:  a temporary replacement was permissible when, in 1898 (well before air travel or instant communications), the American consul in what is now Thailand fell gravely ill, with no Senate-confirmed vice consul nearby.  169 U.S. at 340.  *Eaton* merely affirmed the historical practice of sometimes, during periods of exigency when no Senate-confirmed officer is available, assigning an individual to perform a principal officer's duties "for a limited time and under special and temporary conditions," lest the discharge of those duties "be seriously hindered."

There is no such "emergency" in this case—not even close.  Instead, the President himself is responsible for the "vacancy":  he asked then-Attorney General Sessions to resign (and no doubt would have fired him, had Sessions refused).  That fact alone defeats reliance on *Eaton*'s narrow exception to the general rule because the President could have announced Sessions' successor before (constructively) firing him—which is what past Presidents have done.  Walter Dellinger & Marty Lederman, *Initial Reactions to OLC's Opinion on the Whitaker Designation as "Acting" Attorney General* (Nov. 15, 2018), http://bit.ly/2zX6wzz.

In any event, Sessions leaving office did not give rise to an emergency that required the President to appoint somebody who did not meet the requirements of the Appointments Clause—because Senate-confirmed officers (*e.g.*, Rosenstein) were and are available to succeed Sessions.  Indeed, before now, no President has *ever* attempted to bypass 28 U.S.C. § 508 when Senate-confirmed officers occupy posts in the line of succession.  Thus, there is no emergency here that justifies such a stark deviation from the method that both political branches have settled upon for two centuries.

*Eaton*'s characterization of the acting official in that case as "inferior" and not subject to prior Senate confirmation does not validate Whitaker's appointment for other reasons, too.  Importantly, *Eaton* concerned consular officers who would exercise foreign policy authority completely external to the United States, a realm in which the President is uniquely empowered by the Constitution.  *See United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936); *see also Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2090 (2015).  The powers exercised by the Attorney General, on the other hand, are far broader, and have a far closer nexus to Congress's own authority because the Attorney General enforces myriad federal statutes.  The Senate thus has a much greater constitutional interest in confirming the Attorney General—even on a temporary basis—than it does a consular officer on the other side of the world.  *See Zivotofsky*, 135 S. Ct. at 2090 ("[I]t is still the Legislative Branch, not the Executive Branch, that makes the law.").  *Eaton* does not permit the President to bypass Article II and appoint someone as the most powerful law enforcement officer

in the Nation who is not Senate-confirmed to *any* office, when others who meet the Appointments Clause requirements are available.

Because Whitaker's appointment does not satisfy the Appointments Clause, it is unlawful, and he cannot serve as Acting Attorney General.

## CONCLUSION

For the foregoing reasons, petitioner's motion for substitution in this matter should be granted.

Respectfully submitted,

| | |
|---|---|
| Michael E. Zapin | Thomas C. Goldstein |
| *Counsel of Record* | Tejinder Singh |
| 20283 State Rd. 7 | Charles H. Davis |
| Suite 400 | Daniel H. Woofter |
| Boca Raton, FL 33498 | Erica Oleszczuk Evans |
| (561) 367-1444 | GOLDSTEIN & RUSSELL, P.C. |
| *michaelezapin@gmail.com* | 7475 Wisconsin Ave. |
| | Suite 850 |
| | Bethesda, MD 20814 |
| | (202) 362-0636 |
| | *tg@goldsteinrussell.com* |

November 16, 2018

26