**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

STATE OF MARYLAND,

        *Plaintiff*,

v.

                                  Case No. 1:18-cv-02849 (ELH)

UNITED STATES OF AMERICA, *et al.*,

        *Defendants*.

**MEMORANDUM OF CONSTITUTIONAL SCHOLARS AS
AMICI CURIAE IN SUPPORT OF THE STATE OF MARYLAND**

**TABLE OF CONTENTS**

Interest of Amici Curiae ............................................................................................1

Preliminary Statement ...............................................................................................1

Argument ...................................................................................................................3

I.      Matthew Whitaker's Purported Appointment as Acting Attorney General Is
        Unconstitutional, or, at Minimum, Poses Grave Constitutional Issues. .................3

        A.      Because the acting Attorney General is a principal officer,  Whitaker's
                purported appointment violates the Constitution.......................................4

                1.      The acting Attorney General is an officer of the United States,
                        whose appointment must comport with the Appointments Clause. 5

                2.      The acting Attorney General is a principal officer who must be
                        confirmed by the Senate. ................................................................6

        B.      Even if the acting Attorney General is an inferior officer, Whitaker's
                purported appointment violates the Constitution.......................................7

                1.      *Eaton* creates an exigency exception, but there are no exigent
                        circumstances to justify Whitaker's purported appointment. .........8

                2.      The office of Attorney General is substantively different, and the
                        stakes far higher, than the circumstances of *Eaton* .......................10

II.     These Constitutional Problems Are Avoided by Interpreting the Vacancies
        Reform Act to Be Inapplicable to the Attorney General in Light of the Attorney
        General Succession Act. .....................................................................................11

        A.      The statutory scheme governing the appointment of acting Attorneys
                General is, at minimum, ambiguous. .......................................................12

        B.      The State of Maryland's statutory interpretation avoids constitutional
                problems and should be adopted...............................................................14

Conclusion ...............................................................................................................15

# TABLE OF AUTHORITIES

**CASES**          **Page(s)**

*Buckley v. Valeo*,
    424 U.S. 1 (1976)........................................................................................5, 7

*Clark v. Martinez*,
    543 U.S. 371 (2005)...................................................................................11, 15

*Edmond v. United States*,
    520 U.S. 651 (1997)............................................................................3, 6, 7, 9, 10

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building &*
    *Constr. Trades Council*,
    485 U.S. 568 (1988)...........................................................................................11

*Lucia v. S.E.C.*,
    138 S. Ct. 2044 (2018)......................................................................................4, 5

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)...........................................................................................13

*N.L.R.B. v. Catholic Bishop of Chicago*,
    440 U.S. 490 (1979)...........................................................................................11

*N.L.R.B. v. SW General, Inc.*,
    137 S. Ct. 929 (2017) (Thomas, J., concurring) ...............................................3

*The Pocket Veto Case*,
    279 U.S. 655 (1929)............................................................................................7

*United States v. Eaton*,
    169 U.S. 331 (1898).....................................................................................8, 9, 10

*United States v. Germaine*,
    99 U.S. 508 (1879)...........................................................................................5, 6

*Weiss* v. *United States*,
    510 U.S. 163 (1994)...........................................................................................14

**STATUTES**

5 U.S.C. § 3345...................................................................................................12

5 U.S.C. § 3347...................................................................................................12

28 U.S.C. § 504...................................................................................................14

28 U.S.C. § 504a ......................................................................................................... 14

28 U.S.C. § 505 ........................................................................................................... 14

28 U.S.C. § 506 ........................................................................................................... 14

28 U.S.C. § 508 ........................................................................................ 2, 6, 9, 12, 13

28 U.S.C. § 509 ........................................................................................................... 10

41 Cong. Ch. 150, 16 Stat. 162 (June 22, 1870) ........................................................... 2

## OTHER AUTHORITIES

Federalist No. 76 (Alexander Hamilton) ...................................................................... 10

*Designating an Acting Attorney General: Memorandum for Emmet T.
   Flood, Counsel to the President*, Op. O.L.C., 2018 WL 6131923 (Nov.
   14, 2018) .................................................................................................. 2, 5, 12, 13

*Contingency Plans: Death or Disability of the President*, Office of White
   House Counsel (1993) .............................................................................................. 6

H.R. REP. NO. 89-203 (1966) ........................................................................................ 6

S. REP. NO. 105-250 (1998) ........................................................................................ 12

Steyn, Joshua, *Vacant Reform: Why the Federal Vacancies Reform Act of
   1988 is Unconstitutional*, 50 Duke L.J. 1511 (2001) ................................................ 12

U.S. Const. art. II, § 2 ................................................................................................ 4, 6

U.S. Const. amend. XXV .............................................................................................. 6

## INTEREST OF AMICI CURIAE[1]

Amici are constitutional scholars who have spent decades studying and writing about the fundamental legal principles at stake in this motion.[2]  Amici submit this brief to provide the Court their perspective on what the Appointments Clause requires and why the constitutional implications of the appointment of acting Attorney General Matthew Whitaker are so troubling.

## PRELIMINARY STATEMENT

A few weeks ago, on the day after the midterm elections, Jeff Sessions submitted an undated, open letter resigning as the U.S. Attorney General expressly at the President's request. *See* Letter from Jefferson B. Sessions III to President Donald J. Trump (Nov. 7, 2018).  Almost immediately thereafter, President Trump tweeted that Matthew Whitaker—Jeff Sessions's Chief of Staff—would "become our new Acting Attorney General of the United States."  Donald J. Trump (@realDonaldTrump), Twitter (Nov. 7, 2018, 11:44 AM).

In doing so, the President baldly bypassed the advice and consent of the Senate to unilaterally install a government employee, whose name had never been sent to the Senate, let alone approved by it, to a principal constitutional office.  There is no compelling or exigent circumstance that justifies such an extraordinary action, as demonstrated by the simple fact that there are several constitutional officers already confirmed by the U.S. Senate who can fill in now as acting Attorney General, including the Deputy Attorney General, the Solicitor General, and the numerous Assistant Attorneys General, all of whom appear or may be designated to appear in the order of succession to act as Attorney General under 28 U.S.C. § 508.  If Whitaker's

---

[1] No party's counsel authored this brief in whole or in part; and no person other than the amici and their counsel—including any party or party's counsel—contributed money that was intended to fund the preparation or submission of this brief.

[2] A full list of the amici and their qualifications is appended to this brief.

elevation is constitutionally permissible in subversion of that order of succession and in the absence of Senate confirmation, then the Appointments Clause is a dead letter.

Ever since the Attorney General first became the head of the Department of Justice in 1870, the order of succession to act as Attorney General in the event of a vacancy has been specifically provided by statute; and the statute directs the Deputy Attorney General—who has been confirmed by the Senate in part as a constitutional understudy—to fill the office.[3]  We are not aware of even a single previous instance when any president has appointed an acting Attorney General to lead the Department of Justice from a role that did not require Senate confirmation.  In fact, the Office of Legal Counsel's lone example, a six-day appointment in 1866, occurred before the Attorney General became a "Department Head," a principal officer specifically identified by Article II.[4]

Yet here, the Court need not decide any of the serious constitutional questions posed by the President's attempt to avoid the proper order of succession.  The Court may rely instead on the interpretive canon of constitutional avoidance to decide the matter on statutory grounds:  The State of Maryland and the United States have advanced two incompatible interpretations of the statutory scheme governing the order of succession to act as Attorney General.  Of the two, only

---

[3] The "Act to establish the Department of Justice" originally designated the Solicitor General to act as Attorney General in the event of a vacancy.  41 Cong. Ch. 150, 16 Stat. 162 (June 22, 1870).  A statute passed in 1953, now codified at 28 U.S.C. § 508, substituted the Deputy Attorney General for that purpose, and contains a more detailed order of succession.

[4] This lone example of an unconfirmed acting Attorney General cited in the Office of Legal Counsel memorandum supporting the Whitaker appointment was an appointee who served for only six days in 1866, before the DOJ had been created in 1870, and under President Andrew Johnson, infamous for his disregard of Congress and the rule of law, for which he was impeached.  *Designating an Acting Attorney General: Memorandum for Emmet T. Flood, Counsel to the President*, Op. O.L.C., 2018 WL 6131923, at *11 (Nov. 14, 2018).  The Attorney General was described as "quasi-judicial" in that era, which may explain the different historical practice of presidents appointing almost no unconfirmed Acting Attorneys General, relative to the OLC's findings as to other officers.  *See* Caleb Cushing, Office and Duties of the Attorney General, 6 Op. Att'y Gen. 326, 334 (1854).

the United States' interpretation raises constitutional problems.  The Court should presume that Congress did not intend to create a succession plan that enables the President to avoid the bedrock constitutional requirement of advice and consent for appointments to an office as important as that of the Attorney General, especially in the absence of exigent circumstances, and should adopt the State of Maryland's interpretation of the relevant statutory framework.

ARGUMENT

I.   **Matthew Whitaker's Purported Appointment as Acting Attorney General Is Unconstitutional, or, at Minimum, Poses Grave Constitutional Issues.**

The elevation of a Department of Justice employee who is not a constitutional officer to the role of acting Attorney General—in the absence of any exigency requiring such elevation and notwithstanding the availability of Senate-confirmed constitutional officers in the statutory line of succession to fill that role—poses "grave constitutional concerns because the Appointments Clause forbids the President to appoint principal officers without the advice and consent of the Senate." *N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 946 (2017) (Thomas, J., concurring).  The constitutional mandate of advice and consent "is more than a matter of etiquette or protocol; it is among the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997) (internal quotation marks omitted).  The sheer volume of public commentary and legal challenges that immediately arose in response to Matthew Whitaker's elevation attest, at minimum, to the presence of contentious and pressing constitutional issues that counsel great circumspection and, as discussed below, constitutional avoidance.[5]

---

[5] *See, e.g.*, *Michaels v. Whitaker*, Mot. to Substitute, No. 18-496 (U.S. Nov. 16, 2018) (arguing that Whitaker's purported appointment is unconstitutional); *Blumenthal v. Whitaker*, Compl., 18-cv-2664 (D.D.C. Nov. 19, 2018) (same); Neal Katyal & George T. Conway III, *Trump's Appointment of the Acting Attorney General is Unconstitutional*, N.Y. TIMES (Nov. 8, 2018), https://www.nytimes.com/2018/ 11/08/opinion/trump-attorney-general-sessions-unconstitutional.html (same); Laurence H. Tribe, *Yes Whitaker's Appointment Is Unconstitutional. Here's How to Challenge It*, HUFFINGTON POST (Nov. 11, 2018),

The Constitution's "Appointments Clause provides the exclusive process for appointing 'Officers of the United States.'"  *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2056 (2018) (Thomas, J., concurring) (quoting U.S. Const. art. II, § 2, cl. 2).  The plain requirement of this constitutional provision is that the President appoint such officers "by and with the Advice and Consent of the Senate," except that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone," or in "the Courts of Law" or "the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.[6]  The elevation of Matthew Whitaker thus poses the urgent constitutional questions of whether this provision applies to the acting Attorney General (it does) and whether Whitaker's purported appointment complies with its mandate (it does not).

### A.  Because the acting Attorney General is a principal officer, Whitaker's purported appointment violates the Constitution.

Determining whether Whitaker's elevation to the role of acting Attorney General without Senate confirmation is constitutionally permissible requires examining (1) whether the acting Attorney General is a constitutional officer; and, if so, (2) whether the acting Attorney General is a principal or inferior officer.

---

https://www.huffingtonpost.com/entry/opinion-matthew-whitaker-attorney-general_us_5be891e4e4b0dbe871ac6599 (same); Jed Shugerman, *Attorneys General Are Department Heads under Article II, and Should Be Senate-Confirmed*, SHUGERBLOG (Nov. 21, 2018), https://shugerblog.com/2018/11/21/attorneys-general-are-department-heads-under-article-ii-and-should-be-senate-confirmed/; Walter Dellinger & Marty Lederman, *Initial Reactions to OLC's Opinion on the Whitaker Designation as "Acting" Attorney General*, JUST SECURITY (Nov. 15, 2018), https://www.justsecurity.org/61483/initial-reactions-olc-opinion-whitaker-designation-acting-attorney-general/ (arguing that Whitaker's purported appointment raises difficult questions that counsel use of constitutional avoidance canon); Jed Shugerman, *The OLC's Whitaker problems, big and small: Article II, selective textualism, Department Heads, and historical cherry-picking*, SHUGERBLOG (Nov. 20, 2018), https://shugerblog.com/2018/11/20/the-olcs-whitaker-problems-big-and-small-article-ii-selective-textualism-department-heads-and-historical-cherry-picking/ (criticizing constitutional analysis performed by the Office of Legal Counsel in support of Whitaker's purported appointment).

[6] The Recess Appointment power, U.S. Const. art. II, § 2, cl. 3, is inapplicable here.

### 1.   The acting Attorney General is an officer of the United States, whose appointment must comport with the Appointments Clause.

The Office of Legal Counsel's memorandum supporting Matthew Whitaker's appointment as acting Attorney General implies that there may be a basis to argue that the acting Attorney General is not a constitutional officer.  *See Designating an Acting Attorney General: Memorandum for Emmet T. Flood, Counsel to the President*, Op. O.L.C., 2018 WL 6131923, at *5 (Nov. 14, 2018) ("OLC Memo") ("[I]t does not matter whether an acting official temporarily filing a vacant principal office is an inferior officer or not an 'officer' at all within the meaning of the Constitution . . . .").  The implication is bizarre.  Whitaker heads the Department of Justice with the full authority of the Attorney General and is obviously an officer.

If there could be any doubt, the Supreme Court recently clarified in *Lucia*, 138 S. Ct. at 2051, that the "basic framework for distinguishing between officers and employees" is set out in two decisions—*United States v. Germaine*, 99 U.S. 508 (1879), and *Buckley v. Valeo*, 424 U.S. 1 (1976)—and *Buckley* is dispositive here.  The inquiry in *Buckley* focused "on the extent of power an individual wields in carrying out his assigned functions."  *Lucia*, 138 S. Ct. at 2051.  The Court held that "any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by" the Appointments Clause.  *Buckley*, 424 U.S. at 126.  The acting Attorney General has the power to exercise not merely "significant" but extraordinary authority and is, until replaced, the chief enforcer of the laws of the United States.  Such power cannot be wielded by a mere employee, and the acting Attorney General is therefore clearly a constitutional officer.[7]

---

[7] It is not necessary to apply *Germaine*, but it provides additional support.  The Court in *Germaine* held that "civil surgeons" were not officers (let alone principal officers like the Attorney General), because their duties were not "continuing and permanent" but rather

### 2.   The acting Attorney General is a principal officer who must be confirmed by the Senate.

There is no dispute that the Attorney General is a principal officer.  Indeed, the Attorney General is not only a principal officer but the head of a department, which is a category of principal officer to which the Constitution ascribes special duties and powers.[8]  An acting Attorney General is in no way disempowered by virtue of "acting" status, *see* 28 U.S.C. § 508, and therefore must be a principal officer, too.

"Generally speaking, the term 'inferior officer' connotes a relationship with some higher ranking officer or officers below the President: Whether one is an 'inferior' officer depends on whether he has a superior."  *Edmond v. United States*, 520 U.S. 651, 662 (1997).  The Attorney

---

"occasional and intermittent."  99 U.S. at 511–12.  The tenure of an "acting" Attorney General may be understood to (probably) be shorter than that of an Attorney General, but that tenure is not "occasional and intermittent" like the civil surgeons of *Germaine* who performed official duties only when called upon, were paid only in those instances, could be so called upon "fifty [times] in a year, or none," and were not required to keep a regular office.  *Id.* at 512.  If the civil surgeon presented a close case, the acting Attorney General does not.

[8] *See* U.S. Const. art. II, § 2, cl. 1 ("The President . . . may require the Opinion, in writing, of the principal Officer in each of the executive Departments . . . ."); *id.* cl. 2 ("[T]he Congress may by Law vest the Appointment of such inferior Officers, as they think proper . . . in the Heads of Departments."); *id.* amend. XXV, § 4 ("Whenever the Vice President and *a majority of either the principal officers of the executive departments* or of such other body as Congress may by law provide, transmit to the President pro tempore of the Senate and the Speaker of the House of Representatives their written declaration that the President is unable to discharge the powers and duties of his office, the Vice President shall immediately assume the powers and duties of the office as Acting President.") (emphasis added).

   Indeed, the House Judiciary Committee Report considering the 25th Amendment clarified that "[i]n the case of the death, resignation, absence, or sickness of the head of any executive department, the acting head of the department would be authorized to participate in a presidential inability determination."  H.R. Rep. No. 89-203, at 3 (1966).  Similarly, the White House Counsel's office has suggested that acting heads should participate in any decision under the 25th Amendment.  *Contingency Plans: Death or Disability of the President*, Office of White House Counsel (1993), https://ir.lawnet.fordham.edu/twentyfifth_amendment _executive_materials/10 (explaining that, while the text of the Amendment is ambiguous "as to whether or not 'acting' heads of Cabinet department should participate" in the decision to remove the President under Section 4 of the 25th Amendment, "[m]ost of the legislative history and a leading commentator [ ] suggest that 'acting' heads should participate.").

General has no superior below the President, and is a principal officer.  The acting Attorney

General stands in the same shoes, and there is no constitutionally significant reason why the

same conclusion should not obtain.  If, as Justice Scalia wrote for the Court in *Edmond*,

"'inferior officers' are officers whose work is directed and supervised at some level by others

who were appointed by Presidential nomination with the advice and consent of the Senate," *id.* at

663, then the acting Attorney General cannot be an inferior officer, because he or she is not

supervised by anyone—on the contrary, *the acting Attorney General supervises others who were*

*appointed with the advice and consent of the Senate*.

Insofar as the status of principal officer is determined by the exercise of "significant

authority" (under *Buckley*) and the degree of supervision (under *Edmond*), an acting Attorney

General and an Attorney General are indistinguishable and share the same constitutional status.

The only argument that could theoretically excuse appointment of an acting Attorney General

without senate confirmation would be an argument from exigency: emergencies arise, and with

them unexpected vacancies, and it therefore may become necessary for inferior officers to

temporarily exercise the powers of principal officers.  Even so, because no exigency justifies

Matthew Whitaker's elevation without Senate confirmation, his purported elevation is

unconstitutional.

**B.      Even if the acting Attorney General is an inferior officer, Whitaker's**
**purported appointment violates the Constitution.**

The Constitution does not by its terms create any "exigency exception" to the

Appointments Clause, so under a strict textualist reading, that would be the end of the analysis.[9]

---

[9] The Whitaker appointment does not arise in any context, exigent or otherwise, that might
support a nontextual "practical construction" of the Appointments Clause "given to it by the
Presidents through a long course of years, in which Congress has acquiesced."  The Pocket Veto
Case, 279 U.S. 655, 688–89 (1929).

Nevertheless, well over a century ago the Supreme Court did state that inferior officers can be charged with performing the duties of a superior officer without the advice and consent of the Senate "for a limited time, and under special and temporary conditions." *United States v. Eaton*, 169 U.S. 331, 343 (1898). But the factual circumstances of *Eaton* are starkly different from those in the present case.[10]

**1.    *Eaton* creates an exigency exception, but there are no exigent circumstances to justify Whitaker's purported appointment.**

*Eaton* presents an exceptional circumstance:  In 1892, the "Minister Resident and Consul General of the United States to Siam" (a Senate-confirmed principal officer) fell seriously ill and left his post in Bangkok, believing that he would shortly die. *Id.* at 331. Before leaving, he appointed a Vice Consul General (pursuant to a regulation that provided for emergency appointments), who had not been confirmed by the Senate, to undertake whatever duties were necessary to continue the work of the Consulate until a permanent replacement arrived. *Id.* at 332–33. In the absence of another Senate-confirmed principal officer in Bangkok, it is not clear what alternative there could have been other than to leave the position vacant and its work not done.

The Supreme Court acknowledged this emergency exception, holding that the inferior officer remained an inferior officer, "charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions," and was "not thereby transformed

---

[10] Significantly, the ultimate question before the Court in *Eaton* was whether the inferior officer was due payment for the performance of his superior's duties, not the legitimacy of the performance itself. 169 U.S. 334–35. While the Court addressed the constitutional concerns regarding Eaton's appointment in order to determine the appropriate payment, it did not consider the consequences of a determination that Eaton's official acts as acting Consul General to Siam were illegitimate. *Id.* at 343–44. Here the primary concern is that Whitaker's appointment was invalid and that he therefore cannot officially act as Attorney General, a substantially more grave question than that presented in *Eaton*.

8

into the superior and permanent official" who must be confirmed by the Senate in order to assume office. *Id.* at 343. To rule otherwise, the Court reasoned, "would render void any and every delegation of power to an inferior to perform under any circumstances or exigency the duties of a superior officer, and the discharge of administrative duties would be seriously hindered." *Id.* Significantly, the Court's primary concern was not the assumption of policy control of an entire Executive Department, but rather merely "the discharge of administrative duties." The *Eaton* discussion was thus expressly conditioned upon the practical need of inferior officers sometimes to perform when no principal officer is available to do so.

The "special and temporary conditions" of *Eaton* do not merely represent a time restriction; rather, they represent exigent circumstances, and no such exigency could justify charging Matthew Whitaker "with the performance of the duty of" the Attorney General, even for a limited time. The Attorney General did not fall ill and unexpectedly resign from his post in a faraway land where no Senate-confirmed replacement can quickly step into his place: the Deputy Attorney General, who is authorized by 28 U.S.C. § 508 to act as Attorney General and was confirmed by the Senate in light of that possibility, is available to fill the role immediately. Nor was the vacancy an unexpected emergency: the President caused the Attorney General's resignation and created an elective vacancy. If, for good reasons or bad, the President did not wish to elevate the Deputy Attorney General, he just as easily could have elected not to create the vacancy, or to delay doing so until Whitaker or some other nominee could replace the Attorney General by means of the required constitutional procedure. If the President can manufacture "special and temporary conditions" this way, then he can contrive an end-run around one of "the significant structural safeguards of the constitutional scheme" at any time he chooses. *Edmond,* 520 U.S. at 659.

### 2. The office of Attorney General is substantively different, and the stakes far higher, than the circumstances of *Eaton*.

Moreover, the office of the Attorney General is perhaps a uniquely inappropriate one for indulging such claims of constitutional flexibility. The power and responsibilities of the Attorney General, in whom all the authority of the Department of Justice is vested, *see* 28 U.S.C. § 509, is far indeed from that of a 19th-century diplomat to a distant nation. The office of the Attorney General exercises virtually complete authority over the federal administration of justice in the United States, including authority over vast areas of law, the entire enforcement apparatus of the federal criminal law, and critical national security matters. The Attorney General is precisely the type of officer that animated the Framers' preoccupation with "curb[ing] Executive abuses of the appointment power and '. . . promot[ing] a judicious choice of [persons] for filling the offices of the union.'" *Edmond*, 520 U.S. at 659 (quoting Federalist No. 76).

As Alexander Hamilton wrote in Federalist No. 76, a President "who [has] himself the sole disposition of" such an office as Attorney General "would be governed much more by his private inclinations and interests, than when he [is] bound to submit the propriety of his choice to the discussion and determination of a different and independent body." A President who can so dispose of advice and consent may be tempted to appoint "unfit characters" who have "no other merit than . . . being in some way or other personally allied to him, or of possessing the necessary insignificance and pliancy to render them the obsequious instruments of his pleasure." *Id.* The Framers could not countenance such a risk in the appointment of principal officers. That is precisely why the Constitution has an Appointments Clause.

*     *     *

In sum, the plain text of the Constitution, the precedents of the Supreme Court, the specific facts of this case as compared to the exigencies of *Eaton*, and the animating concerns of

the Appointments Clause, all lead to the same conclusion: Matthew Whitaker's purported

appointment as acting Attorney General is constitutionally invalid.

**II.      These Constitutional Problems Are Avoided by Interpreting the Vacancies Reform Act to Be Inapplicable to the Attorney General in Light of the Attorney General Succession Act.**

As explained above, Matthew Whitaker's purported elevation poses grave constitutional

problems.  The State of Maryland advances an interpretation of the succession statutes that

avoids these concerns entirely.  The interpretive canon of constitutional avoidance therefore

requires the adoption of Maryland's approach.

Constitutional avoidance is a tool of statutory interpretation that "allows courts to avoid

the decision of constitutional questions."  *Clark v. Martinez*, 543 U.S. 371, 381 (2005).  Where a

statutory scheme could bear multiple interpretations, and one or more of those raises

constitutional concerns, the interpretation that does not raise those concerns should prevail.  *Id.*

at 380–82.  This canon guides statutory interpretation by reliance on a presumption that "an Act

of Congress ought not be construed to violate the Constitution if any other possible construction

remains available."  *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979).  "This

cardinal principle has its roots in Chief Justice Marshall's opinion for the Court in *Murray v.

Schooner Charming Betsy*, 2 Cranch 64, 118 (1804), and has for so long been applied by [the

Supreme] Court that it is beyond debate."  *Edward J. DeBartolo Corp. v. Florida Gulf Coast

Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

Here, the United States and the State of Maryland offer competing and conflicting

interpretations of the statutory framework that governs the order of succession to act as Attorney

General in the event of a vacancy.  It is clear that, at a minimum, the statutes are amenable to

Maryland's interpretation.  Thus, to the extent the competing view is not rejected outright, the

statutory scheme is amenable to multiple interpretations and constitutional avoidance should compel the result.

> **A.      The statutory scheme governing the appointment of acting Attorneys General is, at minimum, ambiguous.**

The Vacancies Reform Act, which generally governs the appointment of acting officers of executive agencies in the event of a vacancy, *see* 5 U.S.C. § 3345, is the purported statutory basis for Matthew Whitaker's assumption of the role of acting Attorney General.  The OLC Memo argues that Whitaker is authorized to serve as acting Attorney General pursuant to that Act because he worked in the Department of Justice for at least 90 days and was compensated at a GS-15 level or higher.  OLC Memo at *3 (citing 5 U.S.C. § 3345(a)(3)).  It is true that those minimal requirements satisfy the terms of that statute, although, as described above, the Constitution demands a more exacting procedure.  But the Vacancies Reform Act by its own terms disclaims application in this case:  The Act provides that it is the "exclusive means for temporarily authorizing an acting official . . . ***unless*** a statutory provision expressly authorizes . . . [or] designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  5 U.S.C. § 3347 (emphasis added).  Such a statutory provision exists: 28 U.S.C. § 508 (the "Attorney General Succession Act").[11]

Separate and apart from the generally applicable Vacancies Reform Act, the Attorney General Succession Act is a specialized statute that provides an order of succession in the event of a vacancy in the office of the Attorney General.  The statute provides that "[i]n case of a

---

[11] The OLC did not investigate the purposes of the Vacancies Reform Act, which were apparently to limit presidential power over appointments and to promote the value of Senate confirmation, in the midst of congressional Republicans curtailing President Bill Clinton in fall 1998 and a looming impeachment. *See* Joshua Steyn, *Vacant Reform: Why the Federal Vacancies Reform Act of 1998 is Unconstitutional*, 50 Duke L.J. 1511 (2001); S. REP. NO. 105-250 (1998).

vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office. . . ." 28 U.S.C. § 508(a).  It continues that when "neither the Attorney General nor the Deputy Attorney General is available to exercise the duties of the office of the Attorney General, the Associate Attorney General shall act as Attorney General," and that "[t]he Attorney General may designate the Solicitor General and the Assistant Attorneys General, in further order of succession, to act as Attorney General." *Id.* § 508(b).

"[I]t is a commonplace of statutory construction that the specific governs the general," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992), so absent a compelling argument to the contrary, the more specific Attorney General Succession Act should apply to vacancies in the office of the Attorney General, whatever the effect of the more general statute in other cases.  At minimum, though, it is ambiguous whether the Vacancies Reform Act provides an alternative to the Attorney General Succession Act, or if the latter is exclusive of the former.[12] The State of Maryland has ably demonstrated this ambiguity.  *See* Memo. of Law in Supp. of Pl.'s Mot. for Prelim. Inj. or Mot. to Substitute, 8–22 (Plaintiff's Memo.) (ECF No. 6-1). Maryland is correct that the Vacancies Reform Act is not the exclusive means for temporarily appointing acting officers to Senate-confirmed positions, *id.* at 10 (citing 5 U.S.C. § 3347), and that, in this instance, the Vacancies Reform Act, as apparently interpreted by the President, conflicts with the Attorney General Succession Act, *id.* at 10–11.  The only question, then, is whether Maryland's interpretation avoids the constitutional infirmities inescapably presented by the government's view.  The following section shows that it clearly does.

---

[12] The OLC Memo makes the strained argument that the Vacancies Reform Act exception for office-specific statutes does not preclude the applicability of the Vacancies Reform Act as an option, but rather is intended to make clear that it is not the exclusive option. *See* OLC Memo at *3.  Even assuming this construction is plausible, the alternative construction advanced by the State of Maryland is sufficiently plausible to create the ambiguity that triggers the constitutional avoidance doctrine.

**B.      The State of Maryland's statutory interpretation avoids constitutional problems and should be adopted.**

As described above, the Attorney General Succession Act provides that in the event of vacancy, the powers of the Attorney General may be exercised by the Deputy Attorney General, the Associate Attorney General, the Solicitor General, or one of the Assistant Attorneys General. All of these officers are appointed with the advice and consent of the Senate.  28 U.S.C. §§ 504, 504a, 505, 506.  This clear succession plan presents none of the constitutional infirmities discussed above: The powers of the Attorney General are to be temporarily exercised by an officer confirmed by the Senate, and, moreover, by one whose confirmation occurred with the backdrop of this statutory scheme that partly defines the roles of respective officers in anticipation of just such a potentiality.  In other words, when the Senate confirms a Deputy Attorney General, it confirms him or her as a Deputy *and* as a principal understudy to the superior office, and so on down the line of potential successors.  This process satisfies the Appointments Clause.  *See Weiss* v. *United States*, 510 U.S. 163, 173–76 (1994) (applying this reasoning to hold that a commissioned officer can act as a military judge consistently with the Appointments Clause without an additional appointment).

The conflict between these two statutes means that, depending on which interpretation prevails, either Deputy Attorney General Rod Rosenstein is the acting Attorney General by the automatic effect of the Attorney General Succession Act, or Matthew Whitaker is the acting Attorney General by the President's directive pursuant to the Vacancies Reform Act.  Plaintiff's Memo. at 11.  These two potential conclusions, however, are not on equal constitutional footing. Under the Attorney General Succession Act, the Senate's confirmation of the Deputy Attorney General implicitly reflects the Senate's consent to that person acting as the Attorney General when the office is vacant.  Maryland's interpretation therefore is constitutionally sound.  The

President's purported appointment of Whitaker, by contrast, poses grave constitutional problems. The interpretation that permits such constitutional issues must be avoided, *Clark*, 543 U.S. at 380–82, and it can be so avoided by holding that the Attorney General Succession Act is the exclusive means of temporarily filling vacancies in the office of the Attorney General.

## CONCLUSION

Because the State of Maryland's interpretation of the relevant statutes avoids serious constitutional issues that otherwise must be decided, the Court should grant Maryland's motion.


Respectfully submitted,

_/s/  Stephen A. Weisbrod_
Stephen A. Weisbrod (Bar No. 14795)
WEISBROD MATTEIS & COPLEY PLLC
1200 New Hampshire Avenue NW Suite 600
Washington, DC 20036
(202) 499-7909
(202) 478-1795 (fax)
sweisbrod@wmclaw.com


November 26, 2018

15

## APPENDIX: THE AMICI AND THEIR QUALIFICATIONS

**Erwin Chemerinsky** – Dean and Jesse H. Choper Distinguished Professor of Law, The University of California, Berkeley, School of Law

**Jon D. Michaels** – Professor of Law, UCLA School of Law

**Alan B. Morrison** – Lerner Family Associate Dean for Public Interest and Public Service Law, The George Washington University Law School

**Victoria Nourse** – Professor of Law, Georgetown University Law Center

**Peter M. Shane** – Jacob E. Davis and Jacob E. Davis II Chair in Law, Ohio State University Moritz College of Law

**Jed Handelsman Shugerman** – Professor of Law, Fordham University School of Law

**Laurence H. Tribe** – Carl M. Loeb University Professor and Professor of Constitutional Law, Harvard Law School

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2018, I caused a true and correct copy of the

foregoing to be served on all counsel of record through the Court's CM/ECF system.


_____*/s/  Stephen A. Weisbrod*_____
Stephen A. Weisbrod