IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STATE OF MARYLAND | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No.:  1:18-cv-02849-ELH |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

**BRIEF OF MORTON ROSENBERG AS AMICUS CURIAE IN SUPPORT OF
PLAINTIFF'S MOTION TO SUBSTITUTE**

Jon D. Pels, MD Bar # 11883
Alvaro A. Llosa, MD Bar # 19334
THE PELS LAW FIRM
4845 Rugby Avenue,
Third Floor
Bethesda, MD 20814
(301) 986-5570 (phone)
(301) 986-5571 (fax)
jpels@pelslaw.com
allosa@pelslaw.com

J. Carl Cecere
CECERE PC
6035 McCommas Blvd
Dallas, TX 75206-5721
Phone: (469) 600-9455
ccecere@cecerepc.com

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Table of Contents ........................................................................................................................... i

Table of Authorities ...................................................................................................................... ii

INTEREST OF AMICUS CURIAE ............................................................................................... 1

Introduction and Summary of the Argument ................................................................................ 2

Argument ...................................................................................................................................... 4

Congress has provided only one mechanism for designating an Acting Attorney
General: Section 508 of the Attorney General Succession Act. ................................................... 4

      A.      Enactment of the Federal Vacancies Reform Act did not provide the
President any alternative means for designating the Acting Attorney
General. .................................................................................................................... 4

      B.      The Government's contrary position lacks support in text, history, or
precedent. ................................................................................................................. 9

Conclusion .................................................................................................................................. 13

Certificate of Service .................................................................................................................... 1

# TABLE OF AUTHORITIES

**Cases:**

*N.L.R.B.* v. *SW General, Inc.*,
    137 S. Ct. 929 (2017) ........................................................................................... 1, 5

*Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*,
    609 F.3d 338 (4th Cir. 2010) .................................................................................. 11

**Statutes and Legislative Materials:**

Vacancies Reform Act of 1998, Pub. L. No. 105-277, div. C, tit. I, 112 Stat. 2681-
    611 ....................................................................................................................... 3

    § 151(b), 112 Stat. 2681, 2681-611 ....................................................................... 7

5 U.S.C. §

    3345 ................................................................................................................. 4, 9

    3345(a) ................................................................................................................ 3

    3345(a)(2) or (a)(3) .............................................................................................. 4

    3345(a)(3) ............................................................................................................ 3

    3346 .................................................................................................................. 12

    3347(a)(1)(A) & (B) ............................................................................................. 7

    3348(b) .............................................................................................................. 12

28 U.S.C. §

    508 ............................................................................................................. passim

    508(a) ............................................................................................................... 11

    508 (b) ............................................................................................................. 11

S. Rep. 105-250 (1998) .......................................................................................... passim

S.2176, 105th Cong. (1998) ........................................................................................ 9

144 Cong. Rec. S11022-S11023 (Sept. 28, 1998) ........................................................ 7

144 Cong. Rec. S12823 (Oct. 21, 1998). ..................................................................... 9

## Other Authorities

*Oversight of the Implementation of the Vacancies Act, Hearings Before the Senate Committee on Governmental Affairs*, Mar. 18, 1998 (Statement of Morton Rosenberg, Specialist in American Public Law, Congressional Research Service), *available at* 1998 WL 8993467 ............................................................................................. 1

*Democrat Wants New Hearing for Embattled Nominee*, AP, Nov. 8, 1997, available in 1997 WL 4891645 ...................................................................................................... 6

Naftali Bendavid, *Democrats Delay Panel's Vote on Civil Rights Nominee*, Chi. Trib., Nov. 7, 1997, § 1, at 3 ......................................................................................... 6

Comptroller General's Decision B-220522, June 9, 1986, 65 Comp. Gen. 626 (1986)      6

Brannon P. Denning, *Article II, the Vacancies Act and the Appointment of "Acting" Executive Branch Officials*, 76 Wash. U. L.Q. 1039 (1998) ....................................... 5

*Acting Attorneys General*, 8 Op. O.L.C. 39 (Mar. 30, 1984) ......................................... 2

*Memorandum for Emmet T. Flood, Counsel to the President, Re: Designating an Acting Attorney General*, -- Op. O.L.C. -- (Nov. 14, 2018) ........................................... 2, 11, 12

Stewart M. Powell, *Lee Wins Civil Rights Job Despite GOP Block: President Dodges Senate Opposition and Names L.A. Lawyer to Post on an Acting Basis*, S.F. Examiner, Dec. 15, 1997, at A1 ........................................................................... 6

Morton Rosenberg, Cong. Research Serv., *Validity of Designation of Bill Lann Lee as Acting Assistant Attorney General for Civil Rights* (Jan. 1998).................................... passim

Morton Rosenberg, Congressional Research Service Report for Congress, *The New Vacancies Act: Congress Acts to Protect the Senate's Confirmation Prerogative* (Nov. 1998) ........................................................................................................................ 1, 5

## INTEREST OF AMICUS CURIAE[1]

Before his retirement in 2008, amicus Morton Rosenberg served as an analyst in the American Law Division of the Congressional Research Service for over three decades. In that capacity, he advised Congress on numerous issues of constitutional law, administrative law, and congressional practice and procedure, with a special emphasis on Executive appointments. He is considered a leading authority on the Federal Vacancies Reform Act, having been intimately involved with its enactment. He wrote a report for Congress detailing the problems with prior legislation that lead directly to the Vacancy Reform Act's legislative overhaul. Morton Rosenberg, Cong. Research Serv., *Validity of Designation of Bill Lann Lee as Acting Assistant Attorney General for Civil Rights* (Jan. 1998) (*Rosenberg Memo I*). He testified before Congress during debate over the resulting legislation. *Oversight of the Implementation of the Vacancies Act, Hearings Before the Senate Committee on Governmental Affairs*, Mar. 18, 1998 (Statement of Morton Rosenberg, Specialist in American Public Law, Congressional Research Service), *available at* 1998 WL 8993467. And after the Act's passage, he wrote another report for Congress that explored the Act's implementation. Morton Rosenberg, Cong. Research Serv., Report for Congress, *The New Vacancies Act: Congress Acts to Protect the Senate's Confirmation Prerogative* (Nov. 1998) (*Rosenberg Memo II*). Both of his CRS reports were cited by the Supreme Court in *N.L.R.B.* v. *Southwest General, Inc.*, 137 S. Ct. 929, 935 (2017).

Mr. Rosenberg writes to provide the Court with his considered expertise on the Vacancies Reform Act, its impact on the rules for designating officials to serve in the office of Acting Attorney General, and the reasons why the President's appointment of Matthew Whitaker to serve in that position violates these rules.

---

[1] No counsel for any party authored this brief in whole or in part, and no person or entity other than the amicus, its members, or its counsel made a monetary contribution intended to fund the brief's preparation or submission.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The position that the Government offers to justify Whitaker's appointment as Acting Attorney General rests on extraordinary claims about the President's power to designate temporary holders of that office. That position is set forth in an opinion issued by the Office of Legal Counsel. *Memorandum for Emmet T. Flood, Counsel to the President, Re: Designating an Acting Attorney General*, -- Op. O.L.C. -- (Nov. 14, 2018) (*Flood Memo*). There, the Government acknowledges that Congress has enacted a careful scheme in the Attorney General Succession Act, 28 U.S.C. § 508, which provides an automatic "chain of succession" to fill vacancies in the office of the Attorney General. *Flood Memo* 4. The Government nowhere contests the vital importance of that scheme, which limits the list of potential temporary occupants to those the Senate has previously vetted for senior positions within the Justice Department, thus ensuring that only those familiar with the Department's operations and loyal to its proper mission will wield the office's extraordinary powers, as chief law-enforcement officer and chief legal counsel to the nation, and boss to the Department's 110,000 employees. The Government has likewise acknowledged that for as long as the Department of Justice has existed, and until enactment of the Vacancies Reform Act at issue in this case, the Attorney General Succession Act's scheme provided the exclusive method for determining the person who would be entitled to temporarily lead it. *Acting Attorneys General*, 8 Op. O.L.C. 39 (Mar. 30, 1984); see also *Rosenberg Memo I* at 14-17. Finally, the Government acknowledges that if that scheme was followed in this case, it would unambiguously yield a single answer to the question of who the rightful holder of that office is: the Deputy Attorney General, Rod Rosenstein. *Flood Memo* 4 n.2.

The Government nonetheless contends that Congress overturned its previous 150 years of practice in designating Acting Attorneys General with the enactment of the Vacancies Reform Act of 1998, Pub. L. No. 105-277, div. C, tit. I, 112 Stat. 2681-611. It claims this law gave the President

the "option" to side-step the exclusive, congressionally mandated succession scheme specific to the office of the Attorney General in 28 U.S.C. § 508, and instead use the Vacancies Act's default statutory scheme pertaining to temporary appointments generally in 5 U.S.C. § 3345(a). *Flood Memo* 4. And under this alternative scheme, the Government claims the President may nominate any of thousands of senior employees within the Department to lead the DOJ—even someone who had never been Senate-confirmed to *any* position within the federal government. *Id*. § 3345(a)(3)

But the circumstances surrounding the Vacancies Reform Act's enactment readily show the Government's options-creating position to be antithetical to the Act's whole reason for being. The Vacancies Reform Act was enacted during another period in which the Office of Legal Counsel sought to create "options" allowing for temporary appointments of lower-level DOJ employees (and others) outside of a congressionally mandated scheme, through creative readings of agencies' enabling legislation. That last OLC effort resulted in administrative chaos and routine disregard of congressionally mandated restrictions. The Vacancies Reform Act was a response to that chaos, meant to close down those outside options and limit the Executive's appointment discretion. It makes no sense to believe that Congress would find such intervention necessary to take away the President's "option" to appoint lower-level DOJ employees, and yet invite many times the chaos by creating a new "option" for the President to do so for the Attorney General, the most important and powerful Senate-confirmed employee in the Department. Indeed, that illogical premise finds no support in the statute, its legislative history, or prior case law. Instead, each of these sources confirms that the Vacancies Reform Act did nothing to break Congress's 150-year practice regarding the succession of the Attorney General.

Rod Rosenstein is the Acting Attorney General.

## ARGUMENT

**CONGRESS HAS PROVIDED ONLY ONE MECHANISM FOR DESIGNATING AN ACTING ATTORNEY GENERAL: SECTION 508 OF THE ATTORNEY GENERAL SUCCESSION ACT.**

The Government's position boils down to the contention that the Vacancies Reform Act gave the President a ready means to evade a scheme Congress mandated for designating an Acting Attorney General in 28 U.S.C. § 508 that had prevailed for over 150 years—one specifying that only certain Senate-confirmed officers within the Department could temporarily occupy the office of Attorney General. In its stead, the Government contends, Congress gave the President two potential paths to designate an Acting Attorney General. The President could allow the designee specified in section 508 to take office. Or the President could choose a successor himself, so long as the replacement met the qualifications of 5 U.S.C. § 3345(a)(2) or (a)(3)—the latter of which would leave him free to appoint a non-Senate-confirmed officer.

But nothing in the Vacancy Reform Act's text or the circumstances of its drafting suggests it was meant to provide the President with this sea-changing, dual-option appointment process with respect to the Attorney General. Rather, the Vacancies Reform Act requires that vacancy appointments follow a path that puts the options in *Congress's* hands. Either Congress provides a statute setting forth a method by which a particular vacancy is to be filled, or Congress allows the President to fill the office through the default provisions in 5 U.S.C. § 3345. And because 28 U.S.C. § 508 is of the former variety, designating a particular officer to fill the role the Acting Attorney General, it, not the Vacancies Act's default provisions, is controlling.

**A.     Enactment of the Federal Vacancies Reform Act did not provide the President any alternative means for designating the Acting Attorney General.**

1. The Federal Vacancies Reform Act of 1998 emerged out of fires from the Watergate scandal that had smoldered for decades. The conflicts between President Nixon and the Justice Department that led to the Saturday Night Massacre decimated the Department's ranks and brought

renewed attention to the need for principal officers within the federal government to be accountable to the people, not just the President. Brannon P. Denning, *Article II, the Vacancies Act and the Appointment of "Acting" Executive Branch Officials*, 76 Wash. U. L.Q. 1039, 1061 (1998). That made the "vetting process for potential officeholders * * * more complex, difficult and protracted" (*Rosenberg Memo II* at 8), and left the federal government with far more Senate-confirmable offices than acceptable candidates to fill them. To prevent these offices from becoming inoperative for lack of an agency head, the Office of Legal Counsel in 1973 began seeking ways to stretch temporary acting appointments past the Vacancies Act's strict time limits. It claimed to found a solution in the enabling statutes governing many agencies, like the Justice Department's, which was located in 28 U.S.C. §§ 509-10. *Rosenberg Memo II* at 1. The DOJ argued that these provisions, which empowered agency heads to delegate functions to subordinates, gave "the head of an executive agency *** independent authority apart from the Vacancies Act" to fill vacant offices. *N.L.R.B.* v. *SW General, Inc.*, 137 S. Ct. 929, 935 (2017).

The result was a scandal. Providing presidents with "options" outside of the Vacancies Act's mandatory scheme for temporary appointments routinized the evasion of specific conditions Congress had set on those appointments. And the situation only worsened over time. By 1998, 20% of the 320 positions requiring Senate-confirmed appointees (and 25% of such positions within the Justice Department) were staffed by temporary appointees, most of whom had served beyond the then-120-day limitation period set in the Vacancies Act. *Rosenberg Memo II* at 1. The situation also created interbranch conflict between the Justice Department and the Comptroller General, who objected that that agency enabling statutes lacked the requisite specificity to allow appointments beyond the Vacancies Act's temporal limits. Comptroller General's Decision B-220522, June 9, 1986, 65 Comp. Gen. 626 (1986); See also *Rosenberg Memo I* at 4-5, 19.

2. Things came to a head in 1997, when the Senate Judiciary Committee refused to refer

Bill Lann Lee, President Clinton's nominee to head the Office of Civil Rights, to a floor vote.[2] The President decided instead to appoint Mr. Lee as "Acting" Assistant Attorney General for Civil Rights by delegating those responsibilities to him, with plans that he would serve beyond the Vacancies Act's time limits, producing public outcry and calls to have the Vacancies Act amended to prohibit such presidential end-arounds. Stewart M. Powell, *Lee Wins Civil Rights Job Despite GOP Block: President Dodges Senate Opposition and Names L.A. Lawyer to Post on an Acting Basis*, S.F. Examiner, Dec. 15, 1997, at A1. Congress requested that CRS provide a report on the issue, and the Service recommended legislation to make clear that the Vacancies Act "is meant to be the exclusive vehicle for temporarily filling advice and consent positions in all departments and agencies in the government" (*Rosenberg Memo I* at 33), and "cannot be overcome by the general authority of an agency head to assign functions * * * within an agency" (*id*. at 34-35). Instead, the Vacancies Act should control unless Congress provided in "express[] and specific statutory language" (*id*. at 3) that another statute would control the temporary appointment process for a particular office (*id*. at 27).

3. Congress responded to these calls with the Vacancies Reform Act. Adopting CRS's recommendation, the Vacancies Reform Act specifies that it is to provide "the exclusive means for temporarily authorizing an acting official to perform the functions and duties" of any Senate-confirmable office in any "Executive agency" unless some other "statutory provision" empowers the President to make the appointment himself or "designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a)(1)(A) & (B). Indeed, the word "exclusive" is taken directly from the CRS Report. *Rosenberg Memo I* at 33 (providing that the Vacancies Act "is meant to be the *exclusive* vehicle

---

[2]  See *Democrat Wants New Hearing for Embattled Nominee*, AP, Nov. 8, 1997, available in 1997 WL 4891645; Naftali Bendavid, *Democrats Delay Panel's Vote on Civil Rights Nominee*, Chi. Trib., Nov. 7, 1997, § 1, at 3.

for temporarily filling advice and consent positions") (emphasis added). The Act also specifically adopts the Comptroller General's argument (and CRS's recommendation) that agency enabling statutes should not displace the Vacancies Act's requirements on temporary appointments. *Id*. § 3347(b). As Senator Thompson, the Vacancy Reform Act's original sponsor, put it, these reforms were meant to "extend the provisions of the Vacancies Act to cover all advice and consent positions in executive Agencies *except* those that are covered by express specific statute that provide for acting officers to carry out the functions and duties of the office." 144 Cong. Rec. S11022-S11023 (Sept. 28, 1998) (emphasis added). The flip-side of that observation is that when a specific statute exists that provides for acting officers to carry out the functions of the office, the Vacancies Act cedes entirely. See also S. Rep. 105-250, at 2 (1998) (providing that the Vacancies Reform Act would "appl[y] to all vacancies in Senate-confirmed positions in executive agencies with a few express exceptions," including "statutes that themselves stipulate who shall serve in a specific office in an acting capacity") (emphasis added); id. at 15 (describing office-specific statutes  as "exceptions" to the Vacancies Reform Act).

4. These reforms did not deal with the process of appointments to the position of Acting Attorney General specifically. But Congress was nevertheless forced to deal with that process during drafting of the Vacancies Reform Act because its legislative overhaul completely replaced the prior version of the Vacancies Act. Pub. L. No. 105-277, div. C, tit. I, § 151(b), 112 Stat. 2681, 2681-611 (noting that the Vacancies Reform Act "str[uck] sections 3345 through 3349" of title 5). That wiped out a specific carve-out stating that the Vacancies Act "d[id] not apply to a vacancy in the office of Attorney General." 5 U.S.C. § 3357 (1988). This meant to capture that the process for designating Acting Attorneys General was handled outside the Vacancies Act, in the Attorney General Succession Act, and had been for as long as the Justice Department had existed. This was because the Department was created out of a chaos of its own, during a time when the Attorney

General had few real responsibilities, many U.S. attorneys were contract employees, and there was no central authority to ensure that the Government maintained coherent legal interpretations across all agencies. *Rosenberg Memo I* at 9-15. Instead, interpretive responsibilities were parsed out among individual agencies, leading to conflicting interpretations between attorneys beholden to their agencies' interests rather than the national good. *Id.* at 15. When those responsibilities were brought within the auspices of a single office, it became immediately apparent that its occupant could not be subject to the conventional process of the then-applicable Vacancies Act. *Ibid.* Instead, Congress provided a special succession scheme for the office, providing that if a vacancy in the Office of the Attorney General arose, the Senate-confirmed deputy (originally, the Solicitor General) would be automatically elevated to the position of Acting Attorney General. *Ibid.* Congress chose this specific succession method outside the Vacancies Act's default provisions because it felt Senate vetting necessary to ensure that the candidate possessed the qualifications and independent judgment to lead the office, and experience within the Department would be needed to ensure that the candidate would understand the office's sprawling responsibilities and possess undivided allegiance to the Department's mission, devoid of allegiances to other agencies and conflicts of interest. *Ibid*. Over time, this procedure became the succession scheme in 28 U.S.C. § 508.

The Senate Committee Report accompanying Senate Bill 2176 (1998), the bill that would become the Vacancies Reform Act, specifically stated Congress's intention that section 508, and its 150-year old practice for designating an Acting Attorney General, would survive the 1998 legislative overhaul, thus ensuring "that Senate confirmed Justice Department officials will be the only persons eligible to serve as Acting Attorney General." S. Rep. No. 105-250, at 13.

At first, the Senate tried to accomplish this object of preserving the Attorney General Succession Act's exclusivity by tucking a provision into 5 U.S.C. § 3345 stating that "[w]ith

respect to the office of the Attorney General of the United States, the provisions of section 508 of title 28 shall be applicable." See S.2176, 105th Cong., § 3345(c) (1998). But that attempted solution created a different problem. By creating a specific reference to section 508, Senate Bill 2176 seemed to suggest that section 508 would be the *only* office-specific statute to which the Vacancies Act would cede. That allowed the inference that the Vacancies Act would provide an option for appointments alongside office-specific statutes—a problem that was not aided by the fact that the original bill language made the Vacancies Reform Act "available" rather than "exclusive." S.2176, § 3347. That was obviously not Congress's intent, when the Senate Report accompanying the bill listed some 39 of these other statutes, alongside 508(a) & (b), and indicated that the practices in all of these statutes were to be "retain[ed]." S. Rep. No. 105-250, at 15-17.

Congress eventually fixed this problem in the version of the Vacancies Reform Act that became law. That version more clearly retained the exclusive character of office-specific statutes by hewing more closely to CRS's original proposal. 5 U.S.C. § 3345 removed the reference to section 508 that had appeared in Senate Bill 2176, and changed the word "applicable" to "exclusive" 5 U.S.C. § 3347 (as CRS had originally recommended [*Rosenberg Memo I* at 33]). That change ensured that "the Vacancies act provides the sole means by which temporary officers may be appointed unless contrary statutory language * * * creates an explicit exception." 144 Cong. Rec. S12823 (Oct. 21, 1998) (Sen. Johnson). Accordingly, the office-specific statutes that provided the exclusive path for designating an acting official *before* the Vacancies Reform Act remained exclusive thereafter. Because section 508 was just as exclusive as the other retained office-specific statutes, this more general phrasing eliminated any need for a specific reference to section 508 while still making good on Congress's explicit aim of ensuring that Congress's 150-year practice for designating an Acting Attorney General would be retained.

**B.    The Government's contrary position lacks support in text, history, or precedent.**

9

1. The Government's arguments to the contrary turn the Vacancies Reform Act on its head. The Vacancies Reform Act was enacted to *eliminate* the Justice Department's position that DOJ's enabling statutes provided alternatives to the Vacancies Act's appointment provisions. Congress rejected that argument and made the Vacancies Act exclusive where it applies. And it did so to constrain the President's temporary appointment powers for *all* appointees—including even for run-of-the mill sub-Cabinet positions and underling DOJ officers. It would be odd to read that same statute to produce the exact opposite result with respect to the Attorney General personally— the head of the federal government's most powerful and consequential agency. It would likewise be odd to assume that Congress would observe the mischief resulting when the President had options to evade Congress's mandated scheme for filling vacancies, decide to take away those options for lower positions within the Justice Department, yet turn around and provide the President with an option to evade the mandatory scheme for appointment of an Acting Attorney General, magnifying the potential for Presidential mischief in temporary appointments many times over. Odder still to assume that Congress would silently disregard a 150-year practice in temporary Attorney General appointments—a practice that provided a separate layer of protection against candidate incompetence and presidential interference. Yet the Government's argument demands that the Court indulge each of these fictions.

2. In addition to subverting Congress's manifest purpose, the Government's argument also draws impermissible inferences from the statutory text. The Government claims support from two provisions within 28 U.S.C. § 508. But while it may be true that section 508(a) provides "that the Deputy Attorney General 'may' serve as Acting Attorney General, not that he 'must,'" that does not suggest "that the Vacancies Reform Act remains an alternative means of appointment," as the Government suggests. *Flood Memo* 5. The use of the permissive "may" merely accounts for the prospect that there might not be a Senate-confirmed Deputy Attorney General available to assume

the role of Acting Attorney General. What makes section 508's succession scheme mandatory is subsection (b), which says the Acting Attorney General "shall" take up the role of Attorney General if the Deputy is not available—clearly implying that the Deputy must take up the rule if he *is* available. Indeed, if the statute *were* optional, it would be an option belonging only to the Deputy Attorney General, allowing him to decide whether to assume the office. See *Air Line Pilots Ass'n, Int'l* v. *U.S. Airways Grp., Inc.*, 609 F.3d 338, 342 (4th Cir. 2010) (defining "may" as providing authorization without obligation). If the Deputy declined, it would then fall to the Assistant Attorney General or other available officer in section 508's line of succession to take up the role. But this permissive language provides no option for the *President* to disregard the Attorney General Succession Act's provisions, and thus it does not expand his authority in appointing an Acting Attorney General.

Likewise, the fact that section 508(a) makes the Deputy Attorney General the "'first assistant to the Attorney General' 'for the purpose of Section 3345 of title 5'" does not make vacancies in the Office of the Attorney General subject to the Vacancies Act. *Flood Memo* 5. If it did, then it would make section 508(b)'s chain of succession— which automatically transfers power from the Attorney General to Deputy or to the Associate Attorney General—impossible. That chain of succession is incompatible with the requirement in 5 U.S.C. § 3348(b) that the office be filled by holders appointed under "sections 3345, 3346, and 3347" of the Vacancies Act or remain vacant. Further, if section 508 was subject to the Vacancies Act, then the Deputy Attorney General could *never* serve beyond the Vacancies Reform Act's time limits (see 5 U.S.C. § 3346), which is why even the Government does not seriously contend that this language makes the Vacancies Act controlling.

Finally, the fact that section 3349c "is used to exclude certain offices together" is meaningless. *Flood Memo* 4 n.3. Those exclusions are limited to multi-member bodies that had

"always" historically been considered separate from the Vacancies Act. S. Rep. No. 105-250. This is because, in such multi-member bodies, it is unnecessary for the President to make an interim appointment for the body to continue working. Nothing about that provision suggests that Congress intended it to exclude by implication single-member offices that are subject to specific succession statutes. Accordingly, none of the provisions that the Government invokes can minimize the force of section 508's absolute succession commands, and certainly should not be thought clear enough to break unbroken congressional practice dating back 150 years.

3. Nor for that matter, does the Government's position have any support in Vacancies Reform Act's legislative history. The Office of Legal Counsel claims support from a single sentence in S. Rep. 105-250 that stated "'the Vacancies Act will continue to provide an alternative procedure for temporarily occupying the office'" in certain circumstances. *Flood Memo* 4 (quoting S. Rep. 105-250, at 16). But this sentence was not meant to suggest that the Vacancies Act was an "alternative" to *all* office-specific statutes. Rather, this passage can only be understood in the context of the paragraph in which it appears, which deals with a different possibility altogether: that the office-specific statutes would be repealed or amended. In the Report, the Committee on Government Affairs explained that it anticipated other "authorizing committees" might choose to change certain office-specific designation procedures within their areas of authority in response to the Vacancies Reform Act. S. Rep. 105-250, at 17. It figured that some committees might opt to repeal their existing procedures entirely "in favor of the procedures contained in the Vacancies Reform Act." *Ibid*. In that event—and *only* in that event—"the Vacancies Act would continue to provide an alternative procedure for temporarily occupying the office" that the committees might utilize if they wished to tinker with the existing procedure. *Ibid.*

The sentence in question thus does not say the Vacancies Reform Act as adopted definitively "will serve" as an alternative procedure to the office-specific statute. It says instead

that that the Vacancies Act conditionally "would"—thus anticipating some *future* legislative change, not the changes provided in the Senate Bill itself. Furthermore, the Government's reading cannot be reconciled with the Report's express statement that appointments to the office of Acting Attorney General would always be pulled from Senate-confirmed positions within the Justice Department. *Id*. at 13. Congress could not make that statement if the Vacancies Act was an option. In any event, that legislative history dealt with a bill whose language did not make it into law. Accordingly, if the Senate Report's lone statement suggesting the Vacancies Act might serve as an "alternative" was really was meant to make the Act optional for *any* office, that option thus did not survive the lawmaking process.

The Government's reading of the Vacancies Reform Act thus lacks any foothold in the text and runs counter to the 150-year history of the rules of succession for the temporary occupants of the nation's top law-enforcement position. It should therefore be rejected.

## CONCLUSION

The Court should grant Plaintiff's motion to substitute.

Respectfully submitted,

THE PELS LAW FIRM

Dated: <u>November 26, 2018</u>

<u>/s/ Jon D. Pels</u>
Jon D. Pels, Esq., MD Bar #11883
jpels@pelslaw.com

<u>/s/ Alvaro A. Llosa</u>
Alvaro A. Llosa, Esq., MD Bar #19334
(signed by Jon Pels with permission)
allosa@pelslaw.com

4845Rugby Avenue,
Third Floor
Bethesda, MD 20814
(301) 986-5570 (T)
(301) 986-5571 (F)
*Counsel for Amicus Curiae Morton Rosenberg*

13

OF COUNSEL

*/s/ J. Carl Cecere*
J. Carl Cecere, Esq.
(signed by Jon Pels with permission)
CECERE PC
6035 McCommas Blvd
Dallas, TX 75206-5721
Phone: (469) 600-9455
ccecere@cecerepc.com
*Counsel for Amicus Curiae Morton*
*Rosenberg*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on <u>November 26, 2018</u>, I reviewed the Court's CM/ECF

system and it reports that an electronic copy of the foregoing Brief of Morton Rosenberg as

Amicus Curiae in Support of Plaintiff's Motion to Substitute was served electronically by the

Court's CM/ECF system on the following:

Brian E Frosh
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
*Counsel for Plaintiff*

Daniel Woofter
Goldstein & Russell, P.C.
7475 Wisconsin Avenue, Suite 850
Bethesda, MD 20814
*Counsel for Plaintiff*

Julia Doyle Bernhardt
Maryland Office of the Attorney General
200 Saint Paul Pl 20th Fl
Baltimore, MD 21202
*Counsel for Plaintiff*

Kimberly Stanton Cammarata
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
*Counsel for Plaintiff*

Sarah W Rice
Maryland Office of the Attorney General
200 St. Paul Street, 20th Floor
Baltimore, MD 21202
*Counsel for Plaintiff*

Steven M Sullivan
Maryland Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
*Counsel for Plaintiff*

Tejinder Singh
Goldstein and Russell PC
7475 Wisconsin Ave.
Suite 850
Bethesda, md 20814
*Counsel for Plaintiff*

Tamra Tyree Moore
US Department of Justice
1100 L Street NW
Washington, DC 20005
*Counsel for Defendants United States
Internal Revenue Service, Rod J. Rosenstein,
and Matthew G. Whitaker*

Stephen Adam Weisbrod
Weisbrod Matteis and Copley PLLC
1200 New Hampshire Avenue, NW
Suite 600
Washington, DC 20036
*Counsel for Amicus Curiae Erwin
Chemerinsky, Jon D. Michaels, Alan B.
Morrison, Victoria Nourse, Peter M. Shane,
Jed Handelsman Shugerman, and Laurence
H. Tribe*

*/s/ Jon D. Pels*
Jon D. Pels, Esq., MD Bar #11883