## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**STATE OF MARYLAND,**

      **Plaintiff,**

**v.**

**UNITED STATES OF AMERICA,** *et al.*,

      **Defendants.**

Civil Action No. 18-cv-2849 (ELH)

## DEFENDANTS' REPLY
## IN SUPPORT OF THEIR MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

ARGUMENT ...............................................................................................................................4

I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE
      STATE OF MARYLAND'S COMPLAINT .....................................................................4

      A.    The State Has Failed to Allege An Injury In Fact. ..........................................4

            1.    The alleged future non-enforcement of the ACA by Defendants is
                  speculative. ..........................................................................................4

            2.    The State's remaining alleged injuries are speculative and not
                  imminent. .............................................................................................8

                  a.    The State's alleged injuries to its proprietary and pecuniary
                        interests .................................................................................8

                  b.    The State's new allegation of injuries to its quasi-sovereign
                        and sovereign interests...........................................................11

            3.    Non-enforcement of the ACA is not a redressable injury. ..............14

II.   THE STATE HAS FAILED TO STATE A CLAIM .......................................................15

CONCLUSION ..........................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,*
    458 U.S. 592 (1982) ........................................................................................................... 11, 13

*Allen v. Wright,*
    468 U.S. 737 (1984) ................................................................................................................14

*Am. Freedom Law Ctr. v. Obama,*
    821 F.3d 44 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1069 (2017) ......................................10

*Ansley v. Warren,*
    861 F.3d 512 (4th Cir. 2017) ..................................................................................................14

*Armstrong v. Exceptional Child Ctr., Inc.,*
    135 S. Ct. 1378 (2015) ............................................................................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...........................................................................................................4-5, 7

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................................................5

*Benham v. City of Charlotte, N.C.,*
    635 F.3d 129 (4th Cir. 2011) ..................................................................................................13

*Center for Biological Diversity v. U.S. Dep't of the Interior,*
    563 F.3d 466 (D.C. Cir. 2009) ...............................................................................................11

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ..................................................................................................................7

*Dep't of Nat. Res. & Envtl. Control v. FERC,*
    558 F.3d 575 (D.C. Cir. 2009) ...............................................................................................12

*Doe v. Va. Dep't of State Police,*
    713 F.3d 745 (4th Cir. 2013) ....................................................................................................9

*EEOC v. AutoZone, Inc.,*
    707 F.3d 824 (7th Cir. 2013) ..................................................................................................14

*Frank Krasner Enterprises, Ltd. v. Montgomery Cty, MD,*
    401 F.3d 230 (4th Cir. 2005) ....................................................................................................9

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) ................................................................................................................15

*Gill v. Whitford,*
  138 S .Ct. 1916 (2018)................................................................................................6

*Heckler v. Chaney,*
  470 U.S. 821 (1985)................................................................................................14

*Hodges v. Abraham,*
  300 F.3d 432 (4th Cir. 2002)..................................................................................10

*Jassie v. Mariner,*
  Civ. No. 15-1682 (DKC), 2016 WL67257 (D. Md. Jan. 6, 2016)……………………………10

*Lowery v. Circuit City Stores, Inc.,*
  158 F.3d 742 (4th Cir. 1998), *cert. granted* 527 U.S. 1031 (1999)...........................................14

*Lujan v. Defs. of Wildlife,*
  504 U.S. (1992) .............................................................................................7, 13, 14

*Madsen v. Women's Health Ctr., Inc.,*
  512 U.S. 753 (1994).................................................................................................6

*Massachusetts v. EPA,*
  549 U.S. 497 (2007).....................................................................................11, 12, 13

*Massachusetts v. Mellon,*
  262 U.S. (1923) ..........................................................................................11, 12, 13

*Massachusetts v. Microsoft Corp.,*
  373 F.3d 1199 (D.C. Cir. 2004) .............................................................................15

*Meyer v. Brown & Root Const. Co.,*
  661 F. 2d 369 (5th Cir. 1981)..................................................................................14

*Michigan Corr. Org. v. Michigan Dep't of Corr.,*
  774 F.3d 895 (6th Cir. 2014)...................................................................................15

*Mylan Labs., Inc. v. Akzo, N.V.,*
  770 F.Supp. 1053 (D. Md. 1991).............................................................................10

*New Jersey v. Sargent,*
  269 U.S. 328 (1926).................................................................................................12

*New York v. United States,*
  505 U.S. 144 (1992).................................................................................................13

*NLRB v. Express Pub.,*
  312 U.S. 426 (1941).................................................................................................14

*Olekanma v. Wolfe*,
   Civ. No. 15-0984 (DKC), 2016 WL 430178 (D. Md. Feb. 4, 2016) ...................................................10

*South Carolina v. Katzenbach*,
   383 U.S. 301 (1966) ........................................................................................................................11

*Texas v. ICC*,
   258 U.S. 158 (1922) ........................................................................................................................12

*Texas v. United States*,
   No. 4:18-cv-00167 (N.D. Tex.)………………………………………………………….....3, 4, 6

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016).....................9, 10

*Thomas v. Brock*,
   810 F.2d 448 (4th Cir. 1987) ...........................................................................................................14

*United States v. Richardson*,
   418 U.S. 166 (1974) ........................................................................................................................14

*United States v. Windsor*,
   570 U.S. 744 (2013) ...........................................................................................................................6

*Virginia ex rel. Cuccinelli v. Sebelius*,
   656 F.3d 253 (4th Cir. 2011) ...........................................................................................................13

*W. Virginia ex rel. Morrisey v. HHS*,
   827 F.3d 81 (D.C. Cir. 2016) *cert. denied sub nom.*, 137 S. Ct. 1614 (2017) ........................................8-9

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) .....................................................................................................................15

## Statutes

1 U.S.C. § 7 ...........................................................................................................................................6

28 U.S.C. § 530D ...............................................................................................................................5, 6

42 U.S.C. § 300gg-22(a) .......................................................................................................................8

42 U.S.C. § 300gg-61(a) .......................................................................................................................8

## Regulation

Executive Order No, 13,765, Minimizing the Economic Burden of the Patient Protection and
Affordable Care Act Pending Repeal,
   82 Fed. Reg. 8,351 (Jan. 20, 2017) ....................................................................................................5

**Other Authorities**

Centers for Medicare and Medicaid Services, Compliance and Enforcement,
     https://www.cms.gov/cciio/programs-and-initiatives/health-insurance-market-
     reforms/compliance.html...................................................................................................8

Letter from Attorney General Eric Holder to John A. Boehner, Speaker of the House (Feb. 23,
2014),
     https://www.justice.gov/opa/pr/letter-attorney-general-congress-litigation-involving-
     defense-marriage-act ......................................................................................................5

## INTRODUCTION

The State of Maryland ("State" or "Maryland") brings this suit, seeking a declaration that the Affordable Care Act ("ACA") is constitutional and enforceable and an injunction to require Defendants to comply with that declaration. The Amended Complaint does not challenge the violation of any law by Defendants, nor does it seek to prevent any enforcement action against Maryland. Rather, the suit is a transparent attempt to vindicate Maryland's policy interests, which this Court has no power to assist.

Defendants' opening brief demonstrated that the Amended Complaint fails to allege facts demonstrating Maryland's standing to sue. Among other things, the State's alleged injury—apparently stemming from the Federal Government's litigation position about certain provisions of the ACA in a suit brought by the State of Texas and others in a federal district court in Texas—is speculative and rests on the independent decision of the Texas federal court. Moreover, Defendants also showed that the State has not identified a cause of action, and the Declaratory Judgment Act, upon which the State relies, is procedural only and does not confer substantive rights.

Recognizing those deficiencies, the State makes two desperate attempts to salvage its suit. First, the State shifted the source of its injury from the Federal Government's litigation position in the *Texas* litigation to an equally abstract concern that Defendants may cease enforcing the ACA, whether or not ordered to do so by a court. Plaintiffs' Response at 8, 17, ECF No. 27 ("Resp."). But Maryland has offered no factual basis to allow the Court to presume that injury will occur; indeed, the Federal Government has never indicated that the Department of Health and Human Services ("HHS") would unilaterally cease enforcing the ACA, whether in part or in whole.

To the contrary, the Federal Government has said that as a matter of policy it supports the protections Maryland claims to be defending. *See Texas. v. United States*, No. 4:18-cv-00167 (N.D. Tex.), Sept. 5, 2018, Hr'g Trans. 28:8-10 (Federal Government Counsel: "To be clear, the current administration supports protections for people with pre-existing health conditions, and the current administration has only supported legislation that would provide protections to people with pre-existing medical conditions."). Moreover, pursuant to an option provided by the ACA, Maryland has

elected to enforce the ACA within its jurisdiction, and as long as the ACA remains the law (which, in any event, is not subject to Defendants' control), Maryland may continue to do so. Thus, even if HHS were to stop enforcing the ACA, it is highly speculative that Maryland would nevertheless be harmed.

Of course, despite the State's protestation now that it is unconcerned with the Government's litigation position in the *Texas* litigation, the Amended Complaint has identified a possible specific cause of non-enforcement, namely, a potential injunction arising from the *Texas* litigation. But that too does not constitute an injury in fact now because an injunction may not issue in the *Texas* litigation (or any other litigation), and if it is issued, it may not extend to Maryland. And even if it does extend to Maryland, this Court would not be able to order Defendants to defy an injunction issued by a court of competent jurisdiction. Maryland's remedy instead would be to collaterally challenge that injunction in the *Texas* litigation by intervening at the appellate level.

As a related matter, if non-enforcement of the ACA is the actual cause of the State's injury and not the non-defense of the relevant ACA provisions in the *Texas* litigation, then the Department of Justice ("DOJ") and the Attorney General should be dismissed as defendants because they play no role in the enforcement of the ACA. That is, the State's attempt to interject the validity of the Acting Attorney General's designation into this case would be even more improper.

Second, the State attempts to rely on allegations not in the operative complaint but in a proposed Second Amended Complaint that the State asks the Court to accept if the Court is inclined to grant the Government's motion to dismiss. *See* Plaintiff's Mot. for Leave to File, ECF No. 29.[1]

---

[1] The State intimates that had Defendants not filed its motion to dismiss precipitously, the State would have moved to further amend the complaint. *See* Resp. at 2-3. But the deficiencies of the Amended Complaint are of the State's own making, especially given the State's opportunity to amend. Nor is the timing of Defendants' motion to dismiss improper. During the November 13 colloquy with the Court, Defendants initially proposed combining briefing on the preliminary injunction motion and the motion to dismiss, in light of the State's stated intent to amend the complaint. The Court rejected that proposal upon State counsel's representation that the amendment would be purely technical, merely adding the names of Mr. Whitaker and Mr. Rosenstein as defendants. The Court also noted that the Government likely had a draft motion to dismiss ready because of the then impending deadline for the motion. Although the Court's subsequent order noted it would determine the appropriate timing of Defendants' motion to dismiss the Amended Complaint, Order, ECF No. 7, Defendants' counsel assumed it to be either in error or applicable only if the Amended Complaint

With respect to standing, the State seeks to rely on newly asserted injuries to its quasi-sovereign and sovereign interests.  But a state cannot assert a *parens patriae* claim against the Federal Government as a matter of law.  Likewise, Maryland's attempt to turn a policy disagreement with the Federal Government into an injury to its sovereign interests is long foreclosed by Maryland joining the Union.

The State's attempt to cure the lack of a cause of action fares no better.  Recognizing that the Declaratory Judgement Act alone does not create a right of action, the State now claims that it has an equitable right of action (again, a claim found only in the proposed Second Amended Complaint).  But the State has alleged no violation of any provision in the ACA, the Constitution, or any other law from which an equitable cause of action could properly be inferred.  Nor is the State preemptively asserting a defense to a potential enforcement action against it by the Federal Government, which is the traditional situation where implied equitable claims against the Government have been recognized.  Instead, the State seeks preemptively to force Defendants to continue to enforce the ACA against insurers and others.  But the Executive's non-enforcement decisions are presumptively committed to its discretion and implicate the interests of third parties; moreover, here, the alleged non-enforcement would be in order to comply with a federal district court order in Texas.  In the absence of an express cause of action provided by Congress, this Court should not infer an equitable cause of action in these circumstances.

In sum, the State's Opposition has not managed to cure the deficiencies in the Amended Complaint.  It has, if anything, made them more glaring.  And even if the Court were to consider the allegations in the proposed Second Amended Complaint, on which the Opposition already relied, the State still has not established its standing to sue or properly pled a cause of action.  Accordingly, this Court should dismiss the Amended Complaint and deny Maryland's conditional motion to further amend the complaint with the proposed Second Amended Complaint.

---

included substantive new allegations.  Because the Amended Complaint indeed only made the referenced procedural amendment, the Government promptly filed its motion to dismiss, following the State's filing of the Amended Complaint.

## ARGUMENT

### I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE STATE OF MARYLAND'S COMPLAINT

#### A.    The State Has Failed to Allege An Injury In Fact.

##### 1.    The alleged future non-enforcement of the ACA by Defendants is speculative.

In their opening brief, Defendants demonstrated that the State has not alleged an injury in fact because Defendants' litigation position in *Texas v. United States*, No. 4:18-cv-00167 (N.D. Tex.)—on the constitutionality and enforceability of the ACA's individual mandate, "guaranteed issue" and "community rating" provisions—cannot alone cause the State any cognizable harm, let alone harm to a legally protected interest.  The State evidently has no valid response to this showing because its opposition insists that the allegation concerning the Government's position in the *Texas* litigation was merely to provide "context" to "reinforce[] the inference that Defendants will refuse to enforce the statute regardless of any court order."  Resp. at 6.  That is, the State now insists that its source of injury is actually the Government's alleged impending non-enforcement of the ACA, *see* Resp. at 1-2, 17, even though that possibility was mentioned only in a single phrase in the Amended Complaint in conjunction with the Government's position in the *Texas* litigation, *see* Am. Compl. ¶ 4, ECF No. 8. According to the State, "regardless of any court order," Defendants could cease enforcing the ACA "as a whole" or by "refusing to enforce the protections for those with pre-existing conditions"— apparently referring to the guaranteed issue and community rating provisions that Defendants in the *Texas* litigation have said are not severable from the challenged individual mandate.  Resp. at 1, 6, 17. But that is pure speculation, particularly in light of the Administration's position, stated in the *Texas* litigation and elsewhere, that this Administration supports protections for those with pre-existing conditions. *See, e.g.*, *Texas. v. United States*, No. 4:18-cv-00167 (N.D. Tex.), Sept. 5, 2018, Hr'g Trans. 28:8-10 (Federal Government Counsel: "To be clear, the current administration supports protections for people with pre-existing health conditions, and the current administration has only supported legislation that would provide protections to people with pre-existing medical conditions.").

The State's newly minted, purported source of harm fares no better. As an initial matter, if the State's alleged cause of injury is Defendants' non-enforcement of the ACA, and not DOJ's position in the *Texas* litigation, then DOJ and the Attorney General should not be parties to this lawsuit. They are not charged with enforcement of the ACA, and, if the Court grants relief as to HHS, that would be sufficient to redress the State's alleged injury. Either of these reasons alone is a sufficient basis to dismiss DOJ and the Attorney General as defendants. Dismissing those two defendants would also moot the State's attempt to interject the validity of the Acting Attorney General's designation into this case.

Maryland's asserted cause of injury in any event is pure conjecture. The State offers no factual support for its naked assertion that Defendants will unilaterally stop enforcing the ACA in whole or in part, and the law is clear that "mere conclusory statements" or "'naked assertions' devoid of 'further factual enhancement'" are insufficient to overcome a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The State asserts that the Court should accept its conclusory allegation based on executive actions that are either unrelated to the ACA, *see* Resp. at 7, or are not directly related to the ACA provisions at issue in the *Texas* litigation, the legality of which are notably not challenged in this lawsuit. *See* Resp. at 5-7; *see also* Am. Compl. ¶ 35 (discussing the President's issuance of Executive Order No. 13,765, Minimizing the Economic Burden of the Patient Protection and Affordable Care Act Pending Repeal, 82 Fed. Reg. 8,351 (Jan. 20, 2017), directing agencies to "take all actions *consistent with law* to minimize the unwarranted economic and regulatory burdens of the [ACA]" (emphasis added)). The State's inferential leap is particularly improper because, among other things, the Federal Government has never said that it would unilaterally stop enforcing the ACA. Although as a defendant in a suit brought by several states and individuals, the Administration has decided that *DOJ will not defend* the individual mandate, community rating, and guaranteed issue provisions of the ACA and former Attorney General Sessions has so notified Congress as required by 28 U.S.C. § 530D, that is not the same as *HHS not enforcing* those provisions. Indeed, those provisions remain on the books, the ACA markets

continue to operate with those provisions intact, and the State can make no claim that Defendants have stopped enforcing those provisions.

The State seeks to glean from Attorney General Sessions's § 530D letter an intent not to enforce the ACA by comparing it to former Attorney General Eric Holder's 530D letter to Congress regarding the Department's decision in 2011 not to defend Section 3 of the Defense of Marriage Act ("DOMA").  In the DOMA letter, Attorney General Holder stated that the government would continue to enforce Section 3 of DOMA "unless and until Congress repeals Section 3 or the judicial branch renders a definitive verdict against the law's constitutionality."[2]  But the absence of that explanation in Attorney General Sessions's letter does not allow an inference that HHS—the primary agency charged with enforcing the ACA—will not enforce the relevant ACA provisions.  First, the Government's explanation that it would continue to enforce section 3 of DOMA was perhaps necessary to remove any doubt that there remained a live case or controversy between the parties for purposes of federal court jurisdiction.  *United States v. Windsor*, 570 U.S. 744, 756 (2013) ("The Government's position—agreeing with Windsor's legal contention but refusing to give it effect— meant that there was a justiciable controversy between the parties, despite what the claimant would find to be an inconsistency in that stance.").  Second, Section 3 of DOMA is a definitional provision in the U.S. Code, *see* 1 U.S.C. § 7, and touches on more than 1,000 statutes.  It made sense for Attorney General Holder to explain the Executive Branch's position that those statutes would continue to be enforced; indeed, the enforcement of some of those statutes fell within the responsibility of the Attorney General.  28 U.S.C.A. § 530D(a)(1)(A)(i) (providing that the notice requirement is for matters "within the responsibility of the Attorney General").

Here, in contrast, DOJ and the Attorney General play no role in the enforcement of the ACA, and thus, there was no need to address the enforcement question in the § 530D letter, let alone for purposes of clarifying that there is a justiciable case or controversy in the *Texas* litigation, in which 16

---

[2] Letter from Attorney General Eric Holder to John A. Boehner, Speaker of the House (Feb. 23, 2014),  *available   at*  https://www.justice.gov/opa/pr/letter-attorney-general-congress-litigation-involving-defense-marriage-act.

states and the District of Columbia have intervened to defend the ACA.  Mot. to Dismiss Mem. at 3, ECF No. 11-1.  And there certainly is no basis for the State to infer from DOJ's non-defense of the individual mandate, community rating, and guaranteed issue provisions that the Federal Government would not *enforce* the entire ACA.

Despite the State's current protestation to the contrary, the State could be concerned about possible injury flowing from a possible injunction issued by the *Texas* court, in which a group of states and individual plaintiffs argue that the entire ACA is unenforceable.  But that concern does not create standing in this case.  First, moving past the conjecture that the plaintiffs will succeed in the *Texas* litigation, it is purely speculative that a federal district court in Texas will issue, and appellate courts would uphold, an injunction that extends to Maryland, which is not a party to the suit.  *See Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it."); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (recognizing the "general rule"—rooted in traditional equitable principles—that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs"); *see also Texas. v. United* States, No. 4:18-cv-00167 (N.D. Tex.), Sept. 5, 2018, Hr'g Tr. 10:19-22 (Plaintiffs' counsel: "if this Court finds only that the individual mandate, guaranteed issue, and community rating provision should fall, then the Court could limit its injunction to only the 20 Plaintiff States").

Second, as Defendants explained in their opening brief, even if an injunction does extend to Maryland, it would be through the independent decision of the Texas federal district court and not Defendants.  If the State takes issue with any injunction arising from the *Texas* litigation, the State's remedy is to seek relief by intervening in the *Texas* litigation in the U.S. Court of Appeals for the Fifth Circuit.  The State's argument that it will suffer imminent harm therefore rings hollow.  Indeed, the State itself recognizes that if the relevant provisions of the ACA are declared unenforceable in the *Texas* litigation, and assuming there is no stay of enforcement of that Texas federal court's judgment pending any appeal, the next step will be for HHS take administrative actions to implement the transition.  Resp. at 5 n.1.  If and when that occurs, the State can participate in that process, and any

harms imposed on the State as a result of that process are completely speculative at this point. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing that where the injury-in-fact is based on future harm, the plaintiff must plead "factual content that allows the court to draw the reasonable inference"); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (the threatened injury must be "certainly impending").

### 2.   The State's remaining alleged injuries are speculative and not imminent.

Even if the court were to accept the conclusory allegation that Defendants will cease to enforce all or parts of the ACA, the State's allegations of harm still depend on multiple layers of conjecture, which cannot establish injury in fact. *Lujan v. Defs. of Wildlife*, 504 U.S. at 555, 560-61 (1992).

### a.   The State's alleged injuries to its proprietary and pecuniary interests

The State layers speculation upon speculation to describe injuries to its proprietary and pecuniary interests.  First, it speculates that non-enforcement of the guaranteed issue and community rating provisions will "swell the ranks of the uninsured or underinsured persons in Maryland," increasing the costs of uncompensated hospital care.  Resp. at 9.  But, this is merely conjecture about the consequences to the State's insurance market should these provisions fall.  It is possible that the elimination of these requirements could result in plans entering the market with reduced premiums because they are no longer required to include specified minimum coverage, among other things. Decreased premiums could result in an uptick of currently uninsured residents purchasing less-restricted plans and a reduction rather than an increase of uninsured persons in Maryland.

Second, the State speculates that it might see increased expenses associated with reinstituting state protections, restructuring its insurance market, or enforcing the law itself.  Resp. at 10, 20. However, the type of modifications to the State's insurance market that might be warranted, if any, are mere conjecture until the State knows what action Defendants may or may not take regarding the ACA.  Further, the State's position in the market will not change, because the State is already the primary regulator of the Maryland insurance market and, in fact, has also elected to itself enforce the ACA within its jurisdiction, rather than opting for the federal government to do so.  *See* Resp. at 11

n.5; 42 U.S.C. §§ 300gg-22(a), 300gg-61(a).[3]  And contrary to the State's suggestion (by relying on the Federal Government's regulation of self-insured plans, which are not part of the market), *see* Resp. at 11 n.5, the State can certainly choose to step in to regulate the individual market as it sees fit and even impose more stringent insurance requirements than those in the ACA, avoiding any speculative injury that would flow from the Federal Government's alleged future reduction of enforcement of some of the ACA's requirements.   The State argues that stepping in to do its own enforcement is a "coercive" choice forced upon it by Defendants' refusal to enforce the ACA.  *Id.* at 12.  But, the federal government is currently enforcing the ACA in full, and the State has still freely made the decision to elect self-enforcement.  It is nonsensical for the State to argue that the choice was "coerced" in this circumstance.  *See, e.g.*, *W. Virginia ex rel. Morrisey v. HHS*, 827 F.3d 81, 84 (D.C. Cir. 2016), *cert. denied sub nom.* 137 S. Ct. 1614 (2017) (finding "no support for [the] extraordinary claim" that asking a State to decide if it wishes to have responsibility for enforcement of the ACA is an injury in fact).

Third, apparently recognizing the flaw of its argument, the State argues that it nevertheless would be harmed because if Maryland starts to enforce its own laws similar to the ACA when it is not enforced in other states, insurers "may well simply stop doing business in Maryland."  Resp. at 9-11.  Again, it is highly speculative to think that insurers would exit Maryland, when they would be competing with each other on the same terms within the Maryland market.  The State also makes a seemingly contradictory allegation of injury, admitting that, rather than exiting the market, insurers would stay in its market but experience an influx of high risk individuals from states with fewer state-based protections.  *Id.* at 9.  It is far too speculative for purposes of establishing standing to assume that consumers will make a significant relocation decision, with all the other personal and financial considerations associated with moving, for the purpose of purchasing more advantageous insurance in a neighboring state.

---

[3]  *See also* Centers for Medicare and Medicaid Services, Compliance and Enforcement, https://www.cms.gov/cciio/programs-and-initiatives/health-insurance-market-reforms/compliance.html (last visited Dec. 10, 2018) (noting that only four states, Texas, Oklahoma, Missouri, and Wyoming have elected to not enforce the ACA).

Ultimately, the only alleged injuries the State speculates may arise are all indirect and attenuated, because they flow from the actions of third parties, such as the federal court in the *Texas* litigation, insurers, and consumers, and not Defendants themselves. *See, e.g., Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) ("An injury sufficient to meet the causation and redressability elements of the standing inquiry must result from the actions of the respondent, not from the actions of a third party beyond the Court's control." (citation omitted)); *Frank Krasner Enterprises, Ltd. v. Montgomery Cty, MD*, 401 F.3d 230, 236 (4th Cir. 2005).

The State cites *Texas* v. *United States*, 809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016), for the proposition that even long chains of causation can implicate a state's pecuniary interests. *See* Resp. at 8-9, 20. In that case, the State of Texas was held to have established a causal link between non-enforcement of immigration laws and the state's expenditure of funds to provide undocumented residents' drivers' licenses. Whether or not that out-of-circuit decision was correctly decided, the State's efforts to analogize its circumstances to that in *Texas v. United States* fail. The State first argues that this case is similar because of the amount of federal funding that it receives from the ACA. Resp. at 9. But none of the funding cited in the State's brief is tied to the provisions of the ACA that Defendants will allegedly stop enforcing, namely the individual mandate, guaranteed issue, and community rating provisions. Moreover, in *Texas v. United States*, the chain of causation was much more direct: more resident aliens with deferred action means more aliens eligible for drivers' licenses and thus more state expenditures on those licenses. Here, in contrast, the State's allegations of a financial impact flow from a chain of events that is dependent on third parties not before this Court. *See Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 51 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1069 (2017) (finding no standing because the chain of causation linking non-ACA-compliant insurance to a pecuniary injury includes "many factors" and "it is difficult to separate out which factors actually cause any specific price adjustment."). Indeed, under the State's theory, any state would have standing to sue the Federal Government regarding a change in federal law as long as it can identify some potential downstream financial consequences of the change. That is not the law.

### b.  The State's new allegation of injuries to its quasi-sovereign and sovereign interests

Realizing the flaws in alleging only attenuated future injuries stemming from speculation that Defendants might cease to enforce the ACA, the State attempts to raise new theories of standing based on alleged injuries to its quasi-sovereign and sovereign interests, both in its Response brief and by requesting leave to amend its complaint again.  Resp. at 12-16.  As an initial matter, the State may not use the opposition brief to amend its complaint.  *See, e.g., Olekanma v. Wolfe*, Civ. No. 15-0984 (DKC), 2016 WL 430178, at *4 (D. Md. Feb. 4, 2016); *Jassie v. Mariner*, Civ. No. 15-1682 (DKC), 2016 WL67257, at *7-8 (D. Md. Jan. 6, 2016); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1068 (D. Md. 1991) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).  However, even considering these new theories of standing, they are both legally inadequate.

**i.**  Despite the State's allegations to the contrary, a state cannot assert a *parens patriae* claim on behalf of its residents against the Federal Government.  *See Hodges v. Abraham*, 300 F.3d 432, 444 (4th Cir. 2002) (holding that "if [the governor] seeks only to protect the health and well-being of the residents of [his state], his action is of the *parens patriae* variety, and it may not be pursued" against the federal government).  As the Supreme Court explained, "it is no part of [a State's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government.  In that field it is the United States, and not the State, which represents them as *parens patriae*."  *Massachusetts v. Mellon*, 262 U.S. at 447, 485–86 (1923); *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. at 592, 610 n.16 ("A State does not have standing as *parens patriae* to bring an action against the Federal Government."); *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966) (noting that the State lacked standing as *parens patriae* to invoke the Due Process Clause or the Bill of Attainder Clause against the federal government to challenge federal law).  Therefore, the State's attempt to assert a *parens patriae* claim against the federal government fail as a matter of law.

*Massachusetts v. EPA*, 549 U.S. 497, 520 (2007), upon which Maryland relies, is not to the contrary.  There, the Supreme Court held that the State of Massachusetts had standing to challenge

11

the Environmental Protection Agency's decision not to regulate greenhouse-gas emissions. But in finding standing, the Court did not invoke Massachusetts's *parens patriae* interests—i.e., its interests in protecting its citizens' well-being. Rather, the Court relied on Massachusetts's own interests in protecting its sovereign territory. 549 U.S. at 522 ("rising seas ha[d] already begun to swallow Massachusetts' coastal land"); *see also Center for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466, 476 (D.C. Cir. 2009) (observing that in *Massachusetts v. EPA*, Massachusetts was suing in its own interest as a sovereign).

Moreover, Maryland has not asserted the sort of sovereign interest that is entitled to the "special solicitude" for States referred to in *Massachusetts*. 549 U.S. at 520. In *Massachusetts*, the State of Massachusetts asserted an injury akin to the injury that would occur if a contiguous state redrew its boundaries to assert dominion over part of Massachusetts's territory: Massachusetts alleged that rising seas would "lead to the loss of [its] sovereign territory." *Id.* at 523 n.21. Such a loss of territory would mean the loss of Massachusetts's ability to regulate conduct—either because Massachusetts has no jurisdiction over adjacent water or because that loss of territory would move inland the outer boundaries of Massachusetts's jurisdiction over adjacent water (e.g., if Massachusetts's jurisdiction extends a certain distance from the coastline). The special solicitude afforded Massachusetts should not be extended to the type of injury that is asserted here—injury to citizens arising from the Federal Government's alleged non-enforcement of a federal statute, which is clearly precluded by *Mellon* and its progeny as a proper basis for *parens patriae* standing. Nor does it alter the requirement to demonstrate a concrete injury. *See Dep't of Nat. Res. & Envtl. Control v. FERC*, 558 F.3d 575, 579 n.6 (D.C. Cir. 2009) ("This special solicitude does not eliminate the state petitioner's obligation to establish a concrete injury, as Justice Stevens' opinion amply indicates."). In *Massachusetts*, there was no dispute that the State was already being injured by the erosion of its coastal land, 549 U.S. at 522, but here, Maryland's claim of injury is entirely speculative as demonstrated above.

Finally, in *Massachusetts*, the EPA had denied Massachusetts' petition for rulemaking and Congress had specifically authorized actions to challenge such denials. The Court held that Congress's "authorization is of critical importance to the standing inquiry," *id.* at 516, because rather than asserting

a right on behalf of its citizens, Massachusetts was asserting "its rights under federal law (which it has standing to do)," *id.* at 520 n.17.  In this case, however, there is no right or authorization spelled out in the ACA or any other law for the State to challenge Defendants' alleged future non-enforcement of the ACA.  Therefore, *Massachusetts v. EPA* provides no support for the State's claim of a quasi-sovereign interest.

**ii.**  The State's claim of injury to its sovereignty also fails.  The Supreme Court has consistently found that abstract injuries to a State's sovereignty are not judicially cognizable.  *See, e.g., Mellon*, 262 U.S. at 483–85 (explaining that the state had no standing to challenge constitutionality of federal statute on the theory that "Congress ha[d] usurped the reserved powers of the several states by the mere enactment of the statute"); *New Jersey v. Sargent*, 269 U.S. 328, 337 (1926) (discussing allegations that provisions of federal law "go beyond the power of Congress and impinge on that of the state . . . do not suffice as a basis for invoking an exercise of judicial power"); *Texas v. ICC*, 258 U.S. 158, 162–63 (1922) (state's claim that federal law unconstitutionally infringed on powers reserved to the States raised merely "an abstract question of legislative power" and "d[id] not present a case or controversy").

A State's claims of sovereign injuries are judicially cognizable only in narrow circumstances, such as when there are injuries to a State's interests in enforcing its laws or maintaining its borders, *see Snapp*, 458 U.S. at 601, in "preserv[ing] its sovereign territory," *Massachusetts v. EPA*, 549 U.S. at 519, and in not being commandeered by the federal government, *New York v. United States*, 505 U.S. 144 (1992).  None of these circumstances is present here.  Instead, all the State has alleged is a disagreement with Defendants' position on the constitutionality and enforceability of the individual mandate, guaranteed issue, and community rating provisions of the ACA, as articulated in the § 530D letter and in the *Texas* litigation.  *See, e.g.*, Resp. at 16 (alleging that Maryland is "be[ing] summoned to the task by executive officials attempting to undermine Congress's work or laboring under a misconception about a law's constitutionality").  But the Administration is entitled to formulate its views on the constitutionality of any law; indeed, section 530D was conceived precisely because of the possibility that the Executive may not agree with the constitutionality or enforceability of Acts of Congress.  In

13

any event, it is long settled that a state may not ask the Court "to adjudicate . . . questions of political power, of sovereignty, of government." *Mellon*, 262 U.S. at 484–85. As the Fourth Circuit has held, "[t]he Constitution does not permit a federal court to answer such questions." *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 271–72 (4th Cir. 2011) (citing *Mellon*).

### 3. Non-enforcement of the ACA is not a redressable injury.

In any event, an injury stemming from Defendants' non-enforcement of the ACA is not redressable by the State's requested relief. *See Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 134 (4th Cir. 2011) (standing requires that an alleged injury "will be redressed by a favorable decision." (quoting *Lujan*, 504 U.S. at 560-61)). The State's requested declaration that the ACA is constitutional and enforceable, and its requested injunction requiring that Defendants not act inconsistently with that declaration, would not *itself require* HHS affirmatively to enforce the ACA, let alone in the face of an injunction from the Texas district court prohibiting HHS from enforcing the ACA in part or in whole. Nor could the State have requested such extraordinary relief. The Supreme Court has repeatedly emphasized that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. . . . This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement." *Heckler v. Chaney*, 470 U.S. 821, 831–33 (1985). Here, the State has failed to identify anything in the ACA or elsewhere that purports to "circumscribe agency enforcement discretion" and "provide[] meaningful standards for defining the limits of that discretion," *id.* at 834—and certainly nothing that purports to require HHS to enforce the ACA in the face of a contrary injunction from a federal district court in Texas.[4]

---

[4] The State's requested overbroad injunction suffers from another fatal flaw: it is an impermissible "obey the law" injunction, which this Court may not issue. Specifically, the State seeks an order "enjoining [] Defendants from taking any action inconsistent with" the State's requested declaration that the ACA is "constitutional and enforceable." Am. Compl. at 34 (Prayer for Relief). That is "[a] general injunction which in essence orders a defendant to obey the law," *Meyer v. Brown & Root Const. Co.*, 661 F. 2d 369, 373 (5th Cir. 1981), is impermissible because "[a]n obey-the-law injunction departs from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation." *EEOC v. AutoZone,*

At bottom, the State's request that this Court enjoin the Federal Government's alleged future non-enforcement of the ACA—a massive law nearing 1,000 pages—is merely an attempt to invite this Court to umpire the State's disagreement with the manner in which the Federal Government is implementing the ACA. That request is precluded by the bedrock standing principle rooted in the constitutional separation of powers. *Allen v. Wright*, 468 U.S. 737, 752 (1984). As the Fourth Circuit recently held, the doctrine ensures that courts "act *as judges*, and do not engage in policymaking properly left to elected representatives." *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017) (citation omitted). This is so because "[v]indicating the *public* interest . . . is the function of the state and federal political branches." *Id.* (quoting *Lujan*, 504 U.S. at 576; *United States v. Richardson*, 418 U.S. 166, 188 (1974) (Powell, J., concurring) ("The public confidence essential to the [judiciary] and the vitality critical to the [representative branches] may well erode if we do not exercise self-restraint in the utilization of our power to negative the actions of the other branches.")). In sum, the Court should dismiss the Amended Complaint for lack of standing.

## II.    THE STATE HAS FAILED TO STATE A CLAIM

In addition to the Amended Complaint's jurisdictional failings, the State also failed to state a claim for which relief could be granted. Recognizing that the Declaratory Judgement Act alone does not create a substantive cause of action for the State's requested relief, the State now asks the Court to infer an implied equitable cause of action. *See* Resp. at 22. Again, this is a request found only in the proposed Second Amended Complaint. But, even if the Court were to consider it, this is not "a proper case" for courts to provide the "judge-made remedy." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015); *cf. Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) ("When a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an

---

*Inc.*, 707 F.3d 824, 841 (7th Cir. 2013) (citing *NLRB v. Express Pub.*, 312 U.S. 426, 433 (1941); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 767 (4th Cir. 1998), *cert. granted* 527 U.S. 1031 (1999). Accordingly, Federal Rule of Civil Procedure 65(d) expressly requires an injunction to "describe in reasonable detail—and not by referring to the complaint or other document-the act or acts restrained or required." And the Fourth Circuit has long held that "the requirements of Rule 65(d) 'are mandatory and must be observed in every instance[.]'" *Thomas v. Brock*, 810 F.2d 448, 450 (4th Cir. 1987).

implied cause of action under a federal statute, separation-of-powers principles are or should be central to the analysis."); *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1214 (D.C. Cir. 2004) (emphasizing court's "broad discretionary power to withhold equitable relief as it reasonably sees fit").

This case does not present the traditional circumstance where courts have allowed implied equitable relief: namely suits preemptively asserting a defense to an anticipated enforcement action by the government.  *See, e.g., Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 487 (2010); *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014).  Rather, this is an affirmative enforcement suit against the government seeking to compel it to enforce the ACA against third parties.

The State attempts to argue that the alleged threat of non-enforcement is the same as a threat of enforcement.  *See* Resp. at 23-24.  But there is a fundamental distinction between the two.  Inferring an equitable cause of action to preemptively assert a defense to an anticipated government enforcement action merely changes the timing and posture of litigation over a legal question that was always going to happen.  By contrast, inferring an equitable cause of action to raise affirmative claims against the government allows courts to adjudicate legal questions that Congress has not authorized to be litigated at all.  And this is a particularly inappropriate context to do so, because individual non-enforcement decisions are presumptively committed to agency discretion and also implicate the interests of third parties (here, the insurers regulated by the ACA), such that courts should not interfere absent express Congressional authorization.  And here, the State has not identified any provision of law authorizing suit against HHS to challenge any non-enforcement decisions under the ACA, let alone any non-enforcement action that might be taken pursuant to a federal court order—indeed, as discussed, the State has identified no provision of law requiring HHS to initiate enforcement actions in such circumstances.  In sum, the State's claim is not one for which relief can be granted because it does not allege a valid cause of action.  Therefore, the State's Amended Complaint should be dismissed for failure to state a claim as well.

16

## **CONCLUSION**

For the reasons set forth above and in Defendants' opening brief, the Court should dismiss

this action.

Dated: December 10, 2018                    Respectfully submitted,

                                            JOSEPH H. HUNT
                                            Assistant Attorney General
                                            Civil Division

                                            HASHIM M. MOOPPAN
                                            BRETT A. SHUMATE
                                            Deputy Assistant Attorneys General

                                            JENNIFER D. RICKETTS
                                            Branch Director

                                            JEAN LIN
                                            Acting Deputy Director

                                            /s/ Tamra T. Moore
                                            TAMRA T. MOORE
                                            REBECCA CUTRI-KOHART
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, N.W.
                                            Washington, DC 20005
                                            Tel: (202) 305-8628
                                            Email: Tamra.Moore@usdoj.gov

                                            *Counsel for Defendants*