**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STATE OF MARYLAND, | * | |
| *Plaintiff*, | * | |
| v. | * | |
| UNITED STATES OF AMERICA, *et al.*, | * | Case No.: 1:18-cv-2849-ELH |
| *Defendants*. | * | |

* * * * * * * * * * * * *

**PLAINTIFF'S SUPPLEMENTAL BRIEF**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PLAINTIFF'S SUPPLEMENTAL BRIEF ........................................................................... 1

I. THE TEXAS DECISION REINFORCES MARYLAND'S STANDING. ..................................... 3

   A. The Texas Decision Reinforces the Plausibility of Maryland's Non-Enforcement Allegations. ............................................................................... 3

   B. Defendants Cannot Contradict the Complaint with Extra-Record Evidence on a Motion to Dismiss. .............................................................................. 6

II. RECENT DEVELOPMENTS ALSO ADD SUPPORT TO MARYLAND'S REQUEST FOR A PRELIMINARY INJUNCTION AGAINST MATTHEW WHITAKER. ....................................... 9

CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

## Cases

*Am. Humanist Ass'n v. Greenville Cty. Sch. Dist.*,
   652 F. App'x 224 (4th Cir. 2016) .................................................................................. 11

*Burgess v. FDIC*,
   871 F.3d 297 (5th Cir. 2017) ......................................................................................... 11

*Duka v. SEC*,
   2015 WL 5547463 (S.D.N.Y. Sept. 17, 2015) ............................................................... 11

*EQT Prod. Co. v. Wender*,
   870 F.3d 322 (4th Cir. 2017) ........................................................................................... 8

*Florida ex rel. Bondi v. U.S. Dep't of Health & Human Servs.*,
   780 F. Supp. 2d 1307 (N.D. Fla. 2011) ........................................................................... 5

*Ironridge Glob. IV, Ltd. v. SEC*,
   146 F. Supp. 3d 1294 (N.D. Ga. 2015) .......................................................................... 11

*Landry v. FDIC*,
   204 F.3d 1125 (D.C. Cir. 2000) .................................................................................... 11

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ........................................................................................................ 8

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ...................................................................................................... 10

*Thomas v. Union Carbide Agric. Prods. Co.*,
   473 U.S. 568 (1985) ........................................................................................................ 8

*United States v. Eaton*,
   169 U.S. 331 (1898) ...................................................................................................... 12

## Constitutional Provisions

U.S. Const. art. III ................................................................................................................ 11

## Statutes

42 U.S.C. § 300gg-22(b)(2)(F)(i) ......................................................................................... 10

## PLAINTIFF'S SUPPLEMENTAL BRIEF

As the Court is aware, the District Court for the Northern District of Texas has issued an order entering partial summary judgment in favor of the plaintiffs in that case. Specifically, the Court issued a declaratory judgment that "the Individual Mandate, 26 U.S.C. § 5000A(a) [is] **UNCONSTITUTIONAL**" and that "the remaining provisions of the ACA, Pub. L. 111-148, are **INSEVERABLE** and therefore **INVALID**." Slip op. 55, ECF 35-1 (emphasis in original). The District Court in Texas has now ordered expedited briefing—to conclude on December 26—on the effect of its decision. Order to Expedite Briefing, *Texas v. United States*, No. 18-cv-167 (N.D. Tex. Dec. 18, 2018) (ECF 215).

This development substantially reinforces Maryland's standing in this case. Although the Texas court withheld injunctive relief for the time being, that appears simply to reflect the Administration's representation that it would comply with any declaratory relief.

In light of that promise, and the other evidence cited in the Complaint, Maryland has more than plausibly alleged that Defendants will continue to maintain that the ACA is unconstitutional, including in foreseeable third-party actions seeking to leverage the Texas partial judgment into injunctions, and cease enforcing critical portions (or all) of the ACA after January 1, causing multiple injuries to the State. The Texas court has further indicated its intent to move promptly to ruling on the remaining request for injunctive relief (*see* Order, *Texas v. United States*, No. 18-cv-167 (N.D. Tex. Dec. 16, 2018) (ECF 212)), a process that may be expedited if the court perceives that the Administration is not keeping its promise to abide by the declaratory judgment alone.

If doubt remains, and if the Court believes that the status of the Texas litigation is essential to Maryland's standing, the Court can and should deny the Motion to Dismiss with leave for the Defendants' to renew it at a later date. That is commonplace. The opposite course—dismissing the case—would be unsound because even if the Government represents that it intends to enforce the statute now, that could easily change in the wake of later developments in Texas, including the Texas court's response to a pending motion to clarify its order by stating that it intended the judgment to take immediate effect.* To the extent Defendants seek to contradict the Complaint's allegation of impending non-enforcement by pointing to evidence outside the Complaint (all of which is unsworn, ambiguous, and untested), it lacks the right to do so through its present motion to dismiss. Requiring Defendants to present the Administration's enforcement plans through competent evidence in a summary judgment (or other appropriate) motion has the practical benefit of allowing the Court to decide the relevance of the Texas litigation after the dust has settled.

The Texas decision also supports Maryland's standing to secure a preliminary injunction against Matthew Whitaker's assumption of the powers of the office of the Attorney General. The State faces a present redressable injury from Mr. Whitaker's involvement in the federal government's ongoing—or just concluded—decisionmaking on

---

\* *See* Mot. for Clarification at 2, *Texas v. United States*, No. 18-cv-167 (N.D. Tex. Dec. 17, 2018) (ECF 213) (requesting clarification whether court intended declaratory judgment to take effect only after completion of appeals or immediately) (Attachment 1 to this filing).

how to respond to the Texas decision, including whether the Department of Justice will collaborate in continued enforcement of the ACA pending any appeal in that case. Although Defendants have previously tried to cast doubt on the extent of Mr. Whitaker's involvement in matters relevant to this litigation, they cannot plausibly deny that he will play a material role in the formulation of the Government's response to the Texas order, with inevitable effects on this case. That is a basis for this Court to decide the lawfulness of Mr. Whitaker's appointment, wholly apart from its determination whether the State has standing to seek relief from Defendants' impending non-enforcement of the ACA. The Court should not allow the Government to avoid a ruling on the appointment by remaining coy and ambiguous about Mr. Whitaker's involvement. It should advise the Court if he is involved. If it declines or there are remaining questions, Maryland should be entitled to take limited jurisdictional discovery on the question of Mr. Whitaker's involvement. Finally, this Court can address Mr. Whitaker's appointment through the exercise of its inherent power to supervise this litigation without first having to decide whether Maryland has standing in the underlying suit.

**I.     THE TEXAS DECISION REINFORCES MARYLAND'S STANDING.**

    **A. The Texas Decision Reinforces the Plausibility of Maryland's Non-Enforcement Allegations.**

The Texas decision substantially undermines Defendants' objection that the State can only speculate about whether Defendants will continue to enforce the ACA in full after January 1, 2019. Among other things, Defendants had argued that there was no way to know how the Texas court would rule or how the Administration would respond to that

3

decision. *See* Defs.' MTD, ECF 11-1 at 10; Defs.' Reply in Support of MTD, ECF 33 at 4-7. That argument was meritless when made, *see* Pl.'s Opp. to MTD, ECF 27 at 5-8, 17-18, but has at any rate been overtaken by events. The Texas court has now issued its declaratory judgment, stating that the entirety of the ACA is unenforceable.

Although the Texas court did not immediately order the federal government to cease enforcement of the ACA, that does not undermine Maryland's standing—the court appears to have withheld injunctive relief because the Government represented that it was unnecessary, given the presumption that the Government would comply with the declaration. Slip op. 12; s*ee also* Am. Compl., ECF 8 ¶ 10 (describing Administration's representations to Texas court); Pl.'s Opp. to MTD 2. In particular, Deputy Assistant Attorney General Shumate told the Texas court:

> MR. SHUMATE: . . . . We think a declaratory judgment would be sufficient relief against the Government, and the Court wouldn't need to enter any type of judgment.
>
> THE COURT: And why is that?
>
> MR. SHUMATE: I think it's the Florida district court in the original ACA case only entered a declaratory judgment. The Court wouldn't need to enter an injunction. I think courts have said a *declaratory judgment against the government is ordinarily sufficient relief; it operates in a similar manner as an injunction*.
>
> THE COURT: Because you're presumed to comply with –
>
> MR. SHUMATE: The government is presumed to comply with the law, and the Court will then have a definitive interpretation of the statute that would advise the public about their legal obligations.
>
> THE COURT: Thank you.

4

Tr. Hearing on Mot. for Prelim. Inj. at 103-04, *Texas v. United States*, No. 18-cv-167 (N.D. Tex. Sept. 5, 2018) (emphasis added). The Defendants' reference to the Florida litigation was significant, and the Texas District Court would have recognized it as such. In that original ACA case, the court held that the declaratory judgment immediately bound the federal government to stop enforcing the statute. *See Florida ex rel. Bondi v. U.S. Dep't of Health & Human Servs.*, 780 F. Supp. 2d 1307, 1316 (N.D. Fla. 2011) ("For the defendants to suggest that they were entitled (or that in the weeks after my order was issued they thought they might be entitled) to basically ignore my declaratory judgment until 'after appellate review is exhausted' is unsupported in the law."). In limiting its order to declaratory relief, it appears the Texas court specifically relied on the Government's representation that an injunction was unnecessary in light of the precedent of that prior ACA litigation. *See* slip op. 12.

It is therefore entirely plausible—at the very least—for Maryland to allege that the Administration will keep its word to the Texas court and abide by the declaration that the statute is invalid and unenforceable. If the Administration does so, there can be no genuine question that Maryland will be injured. As the State pointed out in its opposition, and Defendants did not contest, Maryland is entitled to millions of dollars in direct payments each year under provisions of the statute the Texas court has now ruled invalid and that the United States would stop making the payments if it did not enforce the statute. *See* Am. Compl. ¶ 5; Pl.'s Opp. to MTD 9.

Even if the Administration complies with the Texas judgment only with respect to the unenforceability of the provisions regarding pre-existing conditions, those actions

5

would directly injure Maryland in multiple ways, as described in the State's opposition. Pl.'s Opp. to MTD 9-16. Defendants have responded by arguing that Maryland can avoid some of those injuries by enforcing the ACA itself, at its own expense. Defs.' Reply in Support of MTD 8-9. The State has explained why that argument fails on its own terms. Pl.'s Opp. to MTD 10-11. But the Texas decision now makes even more important Defendants' refusal to say whether the Administration would permit Maryland to continue that enforcement role if the State attempted to enforce provisions of the statute now held invalid by the Texas court, including provisions Defendants themselves have told Congress they believe to be unenforceable. *See id.* at 11 n.5; Defs.' Reply in Support of MTD 8-9 (failing to address question).

The Administration also has given no answer as to how Maryland is supposed to avoid the injuries caused by disruption in markets it does not regulate, such as those of other States and ERISA plans. That silence is particularly damning because the Administration's support for the Texas court's invalidation of central ACA protections could well embolden insurers to defy the statute's expansive protections for those with pre-existing conditions, knowing that Defendants will not defend the statute's validity or attempt their own enforcement efforts, making it more likely the State will have to expend resources attempting to enforce the ACA on its own or enacting replacement protections.

**B. Defendants Cannot Contradict the Complaint with Extra-Record Evidence on a Motion to Dismiss.**

In their briefing, and as previewed in the recent status conference with the Court, Defendants have attempted to rebut the reasonable inferences drawn from the factual

6

allegations of the Complaint by pointing to informal statements made by various administration officials outside the context of this litigation. But as Maryland noted in its opposition, if Defendants wish the Court to decide their motion on the basis of evidence outside the Complaint, they were required to submit that evidence in competent form (*i.e.*, through declarations, rather than press releases) and ask this Court to resolve the factual disputes through the proper adversarial process. *See* Pl.'s Opp. to MTD 5 n.2. Because Defendants have forgone that opportunity, and because the Complaint plausibly alleges that Defendants will cease enforcement, including in light of the decision the Texas court has since rendered, the Court should simply deny the present motion to dismiss.

This point is no mere technicality. If the Administration has decided it will continue to enforce the ACA in full, despite its representations to the Texas court, Maryland and this Court are entitled to know the details of that decision, presented through competent evidence subject to testing through the normal adversarial process. That process is important because the details matter. For example, it would be important to know whether the Administration would continue to allow States, like Maryland, to enforce provisions (like the pre-existing conditions protections) the Administration believes to be unenforceable, as the Texas court has held, and what the Administration would do if third parties challenge such enforcement using the Administration's own arguments.

Moreover, a simple statement of the Administration's present enforcement plans would be insufficient. Any such statement may be premised on the uncertain assumption that the Texas court did not intend for its declaration to take effect until appeals have been exhausted. The intervenor defendants in that litigation have requested clarification on this

7

score. If the court follows the precedent from the original ACA litigation that the Administration cited to that court, the Administration may well decide to comply with the decision starting January 1.

Applying the normal procedural rules governing a motion to dismiss thus has very real practical benefits. It would allow the Court to consider the relevance of the Texas litigation after the Texas court has ruled on the pending motion for clarification, and likely after any stay motions have been resolved (by the district court or on appeal).

In any event, the present uncertainty over the Administration's enforcement plans itself will cause Maryland harm, forcing the State to expend resources to plan, during the annual budget-setting process that is currently ongoing, and the upcoming legislative session, for the very real possibility that Defendants will refuse to enforce the statute. *See* Pl.'s Opp. to MTD 15-16; *see also, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-55 (2010) (where there was a "reasonable probability" that plaintiffs would be injured by Government's failure to regulate third parties, expense of measures taken to mitigate that potential harm created an injury-in-fact); *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581-82 (1985) (suit seeking declaration regarding arbitration scheme's constitutionality found ripe where the plaintiff "suffers the continuing uncertainty and expense of depending for compensation on a process whose authority is undermined because its constitutionality is in question"); *EQT Prod. Co. v. Wender*, 870 F.3d 322, 330-31 (4th Cir. 2017) (plaintiff had standing to seek declaration regarding whether ordinance validly applied to its storage of wastewater because if the provision applied, plaintiff would be required to alter its operations "and such a change would impose

additional costs," which was "enough to give rise to an Article III injury in fact"). Particularly given the lead time necessary to implement responsive measures, the State has a critical need for declaratory relief in the near term.

## II. RECENT DEVELOPMENTS ALSO ADD SUPPORT TO MARYLAND'S REQUEST FOR A PRELIMINARY INJUNCTION AGAINST MATTHEW WHITAKER.

The ruling of the Texas court also substantially strengthens Maryland's argument that it may seek—and the Court should issue—an Order prohibiting Matthew Whitaker from participating in the proceedings—including with respect to the determination whether the United States will enforce the ACA. Importantly, these events also make clear that Maryland's standing to raise this challenge is independent of its standing to seek relief from Defendants' impending non-enforcement of the ACA.

There is no dispute that the Government is presently required to decide how to respond to the Texas court decision, including whether to continue enforcing the ACA (and if so, what parts and in what jurisdictions), whether to appeal the decision, and what position to take with respect to any appeal undertaken by others. Those decisions will indisputably affect Maryland's interests. And there should be no dispute that Mr. Whitaker has been (or will be) involved in those decisions. It is implausible that the Acting Attorney General would not personally play a role in deciding how the United States will respond to the Texas court's ruling that the ACA in its entirety is unconstitutional—a decision that goes beyond the Department of Justice's view that substantial portions need be struck. As the Government asserted during the teleconference with the Court on December 17, 2018, "a lot of vetting" is going on and the U.S. Government has "to work through" how to

respond to the Texas court's ruling, in coordination with all relevant agencies. Going forward, Mr. Whitaker will be involved in advising the President on the obligations of the United States in the wake of the Texas court's declaratory judgment and participate in policymaking in light of the Department of Justice's own role in enforcing the statute. *See* 42 U.S.C. § 300gg-22(b)(2)(F)(i). *Contra* Defs.' Reply in Support of MTD 6 (asserting that it has no such role). That decision on how the United States will proceed will inevitably be made in consultation with the White House and, possibly, with the Departments of Health and Human Services and Labor, and the Internal Revenue Service. Such cabinet-level decisions are not delegated entirely to subordinates. Even if they are, that is itself a concrete decision by Mr. Whitaker, whereas a properly appointed Acting Attorney General easily could determine to be involved personally.

If Defendants wish to make a factual dispute over Mr. Whitaker's involvement, which goes directly to the State's standing to enjoin him, they cannot remain ambiguous or silent. They should straightforwardly advise the Court of his involvement. Of note, in proceedings on Mr. Whitaker's appointment in the District Court for the District of Columbia, Defendants last night advised the Court that Mr. Whitaker was recused in an attempt to defeat the plaintiff's claim. *See* Defs.' Status Report at 2, *Michaels v. Whitaker*, No. 18-cv-2906 (D.D.C. Dec. 17, 2018) (ECF 21). There is thus no basis for Defendants to withhold that information in this case—using it as a sword in one proceeding and a shield here. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) (when "issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues"); *e.g.*, *Am. Humanist Ass'n v. Greenville Cty. Sch. Dist.*, 652 F. App'x 224, 230

(4th Cir. 2016) ("On remand, the court should conduct jurisdictional discovery to determine whether AHA currently maintains standing to pursue this claim . . . ."). Importantly, and contrary to the Defendants' assumption, this Court's authority to address Mr. Whitaker's appointment is not dependent on an antecedent determination that the Plaintiff has Article III standing to bring its underlying claims relating to enforcement of the ACA.

First, Mr. Whitaker's involvement in the federal Government's decisionmaking regarding whether to continue to enforce the ACA after the Texas decision independently creates the kind of injury courts have found sufficient to establish standing in cases like *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000). *See, e.g.*, *Burgess v. FDIC*, 871 F.3d 297, 304 (5th Cir. 2017); *Ironridge Glob. IV, Ltd. v. SEC*, 146 F. Supp. 3d 1294, 1317 (N.D. Ga. 2015); *Duka v. SEC*, 2015 WL 5547463, at *21 (S.D.N.Y. Sept. 17, 2015). Indeed, a plaintiff need not show that an unlawful official made any particular decision at all. In *Landry*, the D.C. Circuit found that even the *recommendation* of an unconstitutional official—not a decision—was enough to "taint the ultimate judgment" of the ultimate constitutional decisionmaker, even though that recommendation was subject to de novo review by a proper officer higher up the chain. *Landry*, 204 F.3d at 1132. There was a superior (and lawful) authority that decided the issue on *de novo* review, so the unconstitutional actor functionally did not have authority over the plaintiff at all. Yet the court still found that the plaintiff had standing to bring the claim. *Id.* Here, of course, the order of authority is reversed—Mr. Whitaker *is* the ultimate decisionmaker, so Plaintiff's injury is even more direct. *Cf. id.* at 1331 ("clear causal link to a party's harm" not required

11

to establish standing for Appointments Clause challenge; rather, injury may be "radically attenuated").

Second, the Court unquestionably has the authority to act under its inherent authority over the proceedings before it. Pl.'s Reply in Support of Mot. for PI, ECF 31 at 2-3. Notably, the Government has stressed a court's inherent authority in the proceedings in the District Court for the District of Columbia. The United States' determination of its position is directly related to the proceedings in this Court—as is clear from the Defendants' attorneys' representation that they need that determination to conclude before advising the Court of their position.

Finally, Plaintiff wishes to bring the Court's attention to the arguments made in the *Michaels* litigation. The plaintiff in that case elaborated on the challenge under the Supreme Court's decision in *United States v. Eaton*, 169 U.S. 331 (1898), explaining that Mr. Whitaker is serving as a "principal officer" because he does not ever fill in for the Attorney General on a temporary basis as a subordinate. The short discussion of that issue from the briefing in that case is attached, so that the Court may consider the point. *See* Attachment 2.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss. Moreover, the Court should grant Maryland's motion for preliminary injunction against Mr. Whitaker. In the alternative, the Court should exercise its authority over these proceedings to prohibit Mr. Whitaker from any involvement in the case and to substitute Rod J. Rosenstein as defendant.

Dated: December 18, 2018                    Respectfully submitted,

                                            THE STATE OF MARYLAND

                                            By: /s/ Kevin K. Russell

BRIAN E. FROSH
Attorney General of Maryland

JULIA DOYLE BERNHARDT (BAR NO. 25300)
jbernhardt@oag.state.md.us
STEVEN M. SULLIVAN (BAR NO. 24930)
ssullivan@oag.state.md.us
SARAH W. RICE (BAR NO. 29113)
srice@oag.state.md.us
KIMBERLY S. CAMMARATA (BAR NO. 11997)
kcammarata@oag.state.md.us
Assistant Attorneys General
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6325 (phone)
(410) 576-6955 (fax)

THOMAS C. GOLDSTEIN (BAR NO. 13618)
TGoldstein@goldsteinrussell.com
KEVIN K. RUSSELL (BAR NO. 20712)
KRussell@goldsteinrussell.com
SARAH E. HARRINGTON (BAR NO. 20701)
Sharrington@golsteinrussell.com
TEJINDER SINGH (BAR NO. 17888)
TSingh@goldsteinrussell.com
DANIEL WOOFTER (BAR NO. 20474)
dhwoofter@goldsteinrussell.com
Goldstein & Russell, P.C.
7475 Wisconsin Ave.
Suite 850
Bethesda, MD 20814
(202) 362-0636 (phone)
(866) 574-2033 (fax)

*Attorneys for the State of Maryland*