## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **STATE OF MARYLAND,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES DEPARTMENT OF JUSTICE** *et al.*,<br><br>        **Defendants.** | **Civil Action No. 18-cv-2849 (ELH)** |

### DEFENDANTS' RESPONSE TO COURT'S JANUARY 2, 2019 ORDER

Defendants respectfully submit this response to the Court's Order of January 2, 2019, concerning Judge O'Connor's December 30, 2019 order staying the declaratory judgment he issued on December 14, 2018, in *Texas v. United States*, No. 4:18-cv-00167-0 (N.D. Tex.), "during the pendency of the appeal" in that case. *See Texas v. United States*, No. 4:18-cv-00167-0 (N.D. Tex.), Order Granting Stay & Partial Final J., ECF No. 220 (Dec. 30, 2018); *see also id.* Stay Order and Administrative Closure, ECF No. 223 (Dec. 31, 2018) (staying "the remainder of this case"). Specifically, this Court invited the parties "to address the impact of the stay on the question of the State's standing to bring suit in the underlying case." Order, ECF No. 45 (Jan. 2, 2019). As discussed below, the stay issued by Judge O'Connor confirms that the State of Maryland has neither standing nor a cause of action to sue on the basis that the State will be harmed by Defendants' alleged non-enforcement of the ACA. This is so because the stay, along with the parties' positions concerning the stay, confirm the implausibility and impropriety of the State's request for relief based on an allegation that Defendants will cease to enforce the ACA, unilaterally or otherwise, in the absence of a definitive ruling from the Supreme Court that the ACA is unenforceable.

Start with the State's allegation that the Department of Health and Human Services ("HHS") will *unilaterally* cease enforcing the ACA, in part or in whole. *See* Am. Compl. ¶ 42, ECF No. 8 (Nov. 14, 2018); *see also* Pls.' Opp. to Defs.' Mot. to Dismiss at 2, 5, 7-12, 15-16, 17-21, 23, ECF No. 27 (Dec. 3, 2018); Second Am. Compl. ¶¶ 42, 44, 48, ECF No. 29-3 (Dec. 3, 2018); Pls.' Suppl. Br. at 2, 3, 5-8, ECF No. 40 (Dec. 18, 2018); Pls.' Opp. to Defs.' Stay Mot. at 2-4, ECF No. 48 (Jan. 3, 2019).  As Defendants previously explained, the State has no factual basis whatsoever for that implausible allegation:  the complaint cites no example of any Defendant (or, indeed, any other member of the Administration) even advocating for unilateral cessation of enforcement of the ACA, much less actually doing so.  *See* Defs.' Reply in Supp. of MTD, ECF 33, at 4.[1]

The Federal Government's position concerning the stay of Judge O'Connor's decision starkly underscores the implausibility of the allegation in the State's complaint that HHS would unilaterally cease enforcing the ACA.  Consistent with HHS's initial public statements following Judge O'Connor's December 14 decision that it would continue to enforce the ACA until there is a final decision or other judicial order directing otherwise, *see* Defs.' Supp. Br. in Supp. of MTD, ECF No. 41, at 4, and also the argument of the Federal Government's counsel at the December 19 hearing

---

[1] Although the State invoked the Federal Government's decision to cease so-called cost-sharing reduction payments under the ACA, *see* Am. Compl. ¶ 36, that decision is entirely distinguishable for two reasons.  *First*, the State's complaint fails to mention that, at the time the Federal Government stopped making the payments, a federal district court had already enjoined the payments as lacking a congressional appropriation (although it had also stayed the injunction pending appeal).  *See generally House of Representatives v. Burwell*, 185 F. Supp. 3d 165 (D.D.C. 2016).  Accordingly, that context provides no support for the State's allegation in its complaint here that HHS would unilaterally cease to enforce the ACA *even absent a court order*.  *Second*, as noted, *House of Representatives v. Burwell* presented merely a *statutory-interpretation* question whether Congress had appropriated funds allowing HHS to make cost-sharing reduction payments under the ACA, *not a statutory-validity* question concerning the ACA. Moreover, this Administration's decision not to continue appealing the district court's decision in *House of Representatives* was not a reversal of *its own* litigation position, as the position rejected by the district court there was, unlike here, adopted and defended during the *prior* Administration. Accordingly, the *House of Representatives* litigation does not support the State's speculation as to how this Administration would respond to a court order in the *Texas* litigation.

before this Court, the Federal Government strongly supported a stay of Judge O'Connor's decision. In particular, it urged Judge O'Connor to stay his December 14 order to "reassure the public that the Court did not intend for its December 14 Order to cause substantial disruption to the healthcare markets by requiring the Federal Defendants to immediately comply with the declaratory judgment." *See Texas v. United States*, Civ. No. 4:18-00167 (N.D. Tex.), Fed. Defs.' Resp. to Intervenor-Defs.' Mot for Expedited Consideration, Clarification, or Stay, & Entry of Partial Final J. or Certification Under 28 U.S.C. § 1292(b) at 2, ECF No. 216 (Dec. 21, 2018).  It further argued that "[e]quity weighs overwhelmingly in favor of a stay because it is undeniable that the Court's ruling is of extraordinary public significance and could affect millions of Americans and impact virtually every aspect of the American healthcare system." *Id.* at 3.  And finally, it urged that "[b]efore [the December 14 Order's] full implementation, which could lead to significant changes in healthcare markets, the validity of the Order should first be confirmed on appeal." *Id.* at 3.

All of these representations to the *Texas* court that it should stay its order invalidating the ACA pending appeal are entirely irreconcilable with the State's allegation that the Federal Government wishes to immediately cease enforcing the ACA prior to the Supreme Court's definitive resolution of the question. *See Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 491 (D. Md. 2005) ("In a 12(b)(1) motion, the court may consider evidence outside of the pleadings to help determine whether it has jurisdiction over the case before it . . . without converting the proceeding to one for summary judgment."); *Fusaro v. Davitt*, 327 F. Supp. 3d 907, 916–17 (D. Md. 2018) ("Courts may take judicial notice of publicly available records without converting a motion to dismiss to one for summary judgment.") (citing *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015)).  And of course, Judge O'Connor thereafter stayed his order pending appellate review, relying in part on the Federal Government's representations that "it is in the parties' and the public's

interest that appellate review be exhausted before the Federal Defendants begin implementing the Court's judgment." *Texas* Order, ECF No. 220 (Dec. 30, 2018) at 20 (quoting Fed Defs.' Response).[2]

Judge O'Connor's stay also dooms the State's alternative theory that it will be injured because *a court will order* HHS to cease enforcing the ACA. That is so for two reasons.

*First*, the decision to enter a stay in *Texas* underscores the speculation as to whether any court will ever enter an order requiring HHS to cease enforcing the ACA. At the time the State filed its complaint, it was plainly speculative whether Judge O'Connor would enter such an order, because this Court obviously could not and should not presume how a coordinate district court would rule on a legal question. And now that Judge O'Connor has stayed his order pending appellate review, it remains speculative whether the Fifth Circuit or the Supreme Court will ultimately affirm such an order (and, if anything, it would be even more inappropriate for this Court to presume how those appellate tribunals will rule).

*Second*, the stay means that an order to cease enforcing the ACA will not be entered without the Supreme Court's imprimatur. In particular, Judge O'Connor's stay will remain in effect pending any review by the Supreme Court, *see Texas* Order, ECF No. 220 (Dec. 30, 2018) at 30, and there is a strong likelihood that the Supreme Court would grant review if the Fifth Circuit were to affirm Judge O'Connor's decision. Wholly apart from standing, this completely forecloses the State's cause of action. As Defendants previously explained, it is a patently improper invocation of both the Declaratory Judgment Act and implied equitable authority for the State to ask this Court to enter relief that would require Defendants to enforce the ACA in contravention of an extant or anticipated order

---

[2] Likewise, contrary to the State's speculation in its non-operative, proposed Second Amended Complaint that the Federal Government would refrain from appealing a decision by Judge O'Connor that declares the entire ACA unenforceable, *see* Proposed Second Am. Compl. ¶ 42, ECF No. 29-3, the Federal Defendants in the *Texas* litigation have filed a notice of appeal. *See Texas v. United States*, Civ. No. 4:18-00167 (N.D. Tex.), Fed. Defs.' Notice of Appeal, ECF No. 230 (Jan. 4, 2019).

in the *Texas* litigation that would prohibit Defendants from enforcing the ACA. *See* Defs.' Reply in Supp. of MTD at 15-16; *see also Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986) (a district court should refrain from issuing a conflicting injunction). And that of course applies *a fortiori* where the other court that would order Defendants not to enforce the ACA is *the Supreme Court*, because that by definition means the State's claim fails on the merits as well.

Nor can the State solve the foregoing problems with its standing and cause of action by alleging that it is injured by the *present uncertainty* about the ACA's future fate. *See* Pls.' Opp. to Defs.' Stay Mot. at 3-4, ECF No. 48 (Jan. 3, 2019) ("The Texas stay decision does not eliminate th[e] harmful uncertainty" that Defendants will comply with "any eventual court order declaring the ACA will be unenforceable in whole or in part"). That alleged injury is not traceable to Defendants and this Court cannot award relief redressing it. Defendants did not bring the *Texas* suit, they did not have any control over Judge O'Connor's ruling, and neither they nor this Court can control how the Fifth Circuit or the Supreme Court will rule on appeal of Judge O'Connor's ruling.

Finally, all of the above is especially true with respect to the State's claim against the Department of Justice ("DOJ") and the Attorney General, because it is HHS, not DOJ or the Attorney General, that would be the agency to cease enforcing the ACA due to the *Texas* litigation or otherwise. To be sure, the State has quibbled with the proposition that DOJ does not enforce the ACA provisions from which the State allegedly benefits by citing the civil penalty provisions of 42 U.S.C. § 300gg-22(a) and 42 U.S.C. § 300gg-61(a). But as even a cursory review of the cited provisions shows, there is a long and attenuated causal chain fraught with several independent links that connects whether *HHS* will impose a civil penalty on non-compliant health insurance issuers and whether *DOJ* will file an action to recover such penalties in case of non-payment. To begin, the majority of the States including Maryland have elected to be the primary enforcer of the ACA within their jurisdictions. *See* Defs.' Reply in Supp. of MTD at 9 n.3. In those States, the Secretary does not take enforcement action,

including imposing civil penalties (unless he finds the State is substantially failing at its enforcement obligations). Rather, any penalties enforced in those States would be a matter of State law and would never involve the Secretary or DOJ at all. Moreover, even in situations in which enforcement falls to the Secretary, the independent causal links between that authority and DOJ include the Secretary's determination that a health insurance issuer has failed to comply with the ACA's provisions, *see* 42 U.S.C. § 300gg-22(a)(2), (b)(1)-(2),(C)(iii), and the health insurance issuer's decision to challenge the imposition of the civil penalty in the administrative process, which includes the ability to appeal the administrative order to a district court, *see id.* § 300gg-22(b)(2)(D) and (E). It is only *after* the Secretary takes enforcement action where he is authorized to do so, *after* the issuer fails to pay the penalty *and* the penalty "become[s] a final and unappealable order, or after the court has entered final judgment in favor of the Secretary," that the Secretary refers the matter to the Department of Justice. *See id.* § 300gg-22(b)(2)(F)(i).

This remote and theoretical possibility is hardly a sufficient basis to ward off dismissal of the State's claim against DOJ and the Attorney General. And dismissal of that claim, at a minimum, is particularly warranted because it would moot the State's extraordinary request for preliminary injunctive relief concerning the designation of Acting Attorney General Whitaker—given that Mr. Whitaker's alleged role, if any, in merely supervising this litigation against HHS imposes no cognizable injury on the State, thus underscoring the absence of irreparable injury of sufficient magnitude to overcome the serious separation-of-powers concerns with entering an intrusive, disruptive, and unprecedented judicial order displacing the President's selection of a Cabinet department's acting head.

For the foregoing reasons, and the reasons stated in Defendants' briefing on its motion to dismiss, this Court should dismiss the case for lack of subject matter jurisdiction and for failure to state a claim.

6

Dated: January 9, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

HASHIM M. MOOPPAN
BRETT A. SHUMATE
Deputy Assistant Attorneys General

JENNIFER D. RICKETTS
Branch Director

JEAN LIN
Acting Deputy Director

/s/ *Tamra T. Moore*
TAMRA T. MOORE
REBECCA CUTRI-KOHART
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC  20005
Tel: (202) 305-8628
Email: Tamra.Moore@usdoj.gov

*Counsel for Defendants*