IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STATE OF MARYLAND, | * | |
| *Plaintiff*, | * | |
| v. | * | |
| UNITED STATES OF AMERICA, *et al.*, | * | Case No.: 1:18-cv-2849-ELH |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON EFFECT OF TEXAS STAY**

As the Court is aware, on December 30 and 31, 2018, the District Court for the Northern District of Texas issued orders staying its partial summary judgment for declaratory relief, certifying that portion of the case for appeal under Fed. R. Civ. P. 54, and staying the remainder of the case. *Texas v. United States*, No. 18-cv-167 (N.D. Tex.) (ECF 220, 223). For the reasons described below, this development does not eliminate Maryland's standing to pursue its claims regarding the continuing validity of the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, 124 Stat. 119 (2010).

**I.   THE TEXAS RULING DOES NOT ELIMINATE MARYLAND'S STANDING TO SEEK DECLARATORY RELIEF TO REMOVE THE UNCERTAINTY DEFENDANTS HAVE CREATED REGARDING THE CONTINUED ENFORCEMENT OF THE ACA.**

Neither the Texas court's stay nor any appeal from its order eliminates Maryland's existing and impending injuries, and therefore neither undermines Maryland's standing to seek relief regarding the continuing validity of the ACA.

First, the Amended Complaint (ECF 8) plausibly alleges that Maryland is suffering a present injury resulting from the uncertainty Defendants' statements and conduct have caused regarding whether the Federal Government will continue enforcement of the ACA. *See* Pl.'s Suppl. Br., ECF 40 at 8-9. The Texas court's stay of its order and Rule 54 certification do not eliminate that harmful uncertainty. Given the Texas court's order, the Administration's support for the court's constitutional ruling, Defendants' hostility to the ACA and track record of attempts to undermine it, and the Administration's past history of using stayed court orders as a justification for refusing to enforce the ACA,[1] there is at least a "reasonable probability" of non-enforcement in 2019, which any responsible State would need to address as part of its ongoing budgetary and other planning for the year.[2] That present injury is sufficient to confer standing to seek a resolution of the existing harmful uncertainty. *Compare Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-55 (2010) (cost of steps to avoid "reasonable probability" of injury is sufficient to establish standing), *with Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013) (no standing when plaintiffs had no "concrete evidence to substantiate their fears" of injurious government action).

Importantly, Maryland cannot simply wait and see how things turn out before taking protective measures. Any significant action requires appropriations and, often, changes to

---

[1] *See* Pl.'s Opp. to MTD, ECF 27 at 5-8.

[2] The Department of Legislative Services is currently drafting legislation following hearings held by the Maryland Health Insurance Coverage Protection Commission to strengthen consumer protections that would otherwise be at risk if the ACA is held unconstitutional or is not enforced.

regulations or laws. That takes time. In Maryland, the window for introducing appropriations and other legislation is extremely limited and already underway. January 18 is the final date for the Governor to introduce a budget bill; any other legislation must be introduced in early February; any budget must be passed by both Chambers by April 1; and the legislative session ends on April 8. *See* Department of Legislative Services, General Assembly of Maryland, *Dates of Interest* (Sept. 26, 2018), http://mgaleg.maryland.gov/pubs-current/current-session-dates.pdf.

Second, the Amended Complaint also plausibly alleges that Defendants will cease enforcement of some or all of the ACA even if not compelled to do so by court order, causing Maryland a variety of consequential harms. *See* Pl.'s Opp. to MTD, ECF 27 at 5-16. The Amended Complaint provides ample factual information making that claim plausible, evidence that is not dependent on the existence of an unstayed order enjoining enforcement of the ACA. *See id*. at 5-8 (describing Amended Complaint's discussion of the Administration's hostility to the Act, its voluntary suspension of enforcement of portions of the Act in the past, and its history of citing to non-binding judicial decisions as an excuse to alter government policy with which the Administration disagrees). Indeed, this case now stands in a similar posture to that described in paragraph 36 of the Amended Complaint, when the Administration suspended enforcement of the provisions of the ACA requiring cost-sharing reduction payments to help subsidize the cost of insurance for low-income families. As counsel for Defendants explained at the motion hearing (ECF 42), the validity of those payments had been challenged in other litigation, and a district court had enjoined the payments, but that order had then been stayed pending appeal. *U.S. House of*

*Representatives v. Burwell*, 185 F. Supp. 3d 165, 189 (D.D.C. 2016). The Administration nonetheless used the stayed order as an excuse to stop making the payments. *See* Memorandum from Eric Hargan, Acting Sec'y of Health & Human Servs., on Payments to Issuers for Cost-Sharing Reductions (CSRs), to Seema Verma, Adm'r, Ctrs. for Medicare & Medicaid Servs. (Oct. 11, 2017), https://www.hhs.gov/sites/default/files/csr-payment-memo.pdf. The President then praised the move for its destructive effects on the ACA as a whole, and bragged that "ObamaCare is imploding." Am. Compl. ¶ 36. It is entirely plausible for the Amended Complaint to allege that history will repeat itself here.

Defendants have tried to suggest that it will not, by pointing to evidence outside the Amended Complaint in the form of tweets and unsigned press announcements. While the Court may take judicial notice of the *fact* that such statements have been made, it may not rely on this evidence for the truth of the matter asserted, much less credit those statements over the otherwise plausible allegations in the Amended Complaint. *See, e.g.*, *Bezek v. First Mariner Bank*, 293 F. Supp. 3d 528, 535-36 (D. Md. 2018) ("A court may take judicial notice of . . . newspaper articles, analysts' reports, and press releases," but only to "establish the date of public notice rather than the truth of the matter asserted.") (internal quotation marks omitted), *appeal pending*, No. 18-1262 (4th Cir. argued Dec. 11, 2018); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (on a motion to dismiss, a court "may take judicial notice" of documents, but only "for the purpose of determining what statements the documents contain," "not to prove the truth of the documents' contents"); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (same). As Plaintiff has noted, if Defendants wish to have this Court take evidence and

4

resolve factual disputes affecting its jurisdiction, they can file an appropriate motion and submit admissible evidence (such as sworn declarations rather than press releases with unknown authors speaking on unidentified authority).

## II. THE TEXAS COURT'S RECENT RULINGS HAVE NO EFFECT ON THE COURT'S AUTHORITY TO RESOLVE THE WHITAKER MOTION.

Because this Court has jurisdiction to address the claims asserted in the Amended Complaint, the Court also has jurisdiction to enjoin Matthew Whitaker from exercising authority as Acting Attorney General, because Maryland has more than shown that it is "*likely* to succeed in establishing standing" in the underlying action, which is all that is required for a preliminary injunction. *See* Pl.'s Opp. to Mot. to Stay, ECF 48 at 3-4. But in any event, Maryland does not need standing for this Court to exercise its supervisory authority over the case either (1) to order substitution of Rod Rosenstein for Mr. Whitaker as a party defendant, or (2) to determine that Mr. Whitaker may not supervise the Department of Justice's litigation of the case as an attorney. The Texas rulings thus have no effect on the Court's authority to act on these requests for relief.

As previously set forth, both of those requests for relief fit comfortably within the Court's inherent authority to supervise and manage the proceedings before it. Pl.'s PI Reply Br., ECF 31 at 2-4. The Department of Justice itself has emphasized courts' supervisory authority in the past, when it benefited its own interests, and Defendants did not deny at the hearing on December 19, 2018, that this Court has authority to manage its own cases. For example, in another challenge to Mr. Whitaker's authority, a plaintiff filed an action in federal district court to prevent, in part, any involvement of Mr. Whitaker in

5

the plaintiff's Supreme Court case, where Mr. Whitaker had been automatically substituted as a respondent. The Department of Justice pointed to the Supreme Court's "inherent supervisory authority" to "manage ongoing litigation before it" and "to supervise the conduct of parties in its own proceedings" as a reason that relief should be denied in the district court. Def.'s Opp. to Pl.'s PI Mot. at 2, 13, *Michaels v. Whitaker*, 18-cv-2906 (D.D.C. Dec. 13, 2018) (ECF 16); Def.'s Opp. to Pl.'s Proposed Schedule at 4, *id.* (D.D.C. Dec. 12, 2018) (ECF 6). There is thus no dispute that federal courts have inherent authority to prevent Mr. Whitaker from being involved in any cases pending before them. And there should be little dispute that a litigant need not identify a concrete injury that will be redressed by the Court taking such action—to hold otherwise would be to invalidate the thousands of procedural orders entered daily pursuant to courts' inherent authority.

Moreover, this Court should draw a negative inference from Defendants' unjustified refusal to answer the Court's simple question whether Mr. Whitaker has at all been or continues to be involved in this case or decisions regarding the enforceability or defense of the ACA. *See Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 464 (D. Md. 2012) ("State of Maryland [wa]s entitled to an adverse evidentiary inference" in civil case when defendant "refused to answer all of the questions relevant" to material fact), *aff'd*, 729 F.3d 370 (4th Cir. 2013); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 58, 68 (D.D.C. 2000) (court "may draw an adverse inference from [defendant's] refusal to answer plaintiffs' questions about his jurisdictional contacts").

In the other case challenging Mr. Whitaker's designation as Acting Attorney General, mentioned above, the Department of Justice utilized a targeted disclosure that Mr.

Whitaker was *not* involved in the decisionmaking there as a sword to defeat that plaintiff's standing on one of his claims. The Department of Justice did not do so at the court's insistence. Rather, it affirmatively volunteered the information. But even when material is *privileged*—and Defendants concede that information on Mr. Whitaker's involvement here is not—selective disclosure for tactical advantage opens the door to the entire subject matter. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam) ("Selective disclosure for tactical purposes waives the [attorney-client] privilege."); *see also In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) ("When a party reveals part of a privileged communication in order to gain an advantage in litigation, it waives the privilege as to all other communications relating to the same subject matter because the privilege of secret consultation is intended only as an incidental means of defense and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.") (internal quotation marks omitted). There is no just reason for Defendants to withhold that information here, and the only logical inference is that Mr. Whitaker is indeed directly involved in this case, and more broadly, decisionmaking as to the enforceability and defense of the ACA.

The need for this Court's involvement is all the greater given that the Defendants have actively sought to evade judicial review of the lawfulness of Mr. Whitaker's designation. Their unjustifiable refusal to answer basic questions about his participation is only one example. They have broadly attempted to avoid Mr. Whitaker taking any formal act that could be attributed to him and become a basis for judicial review. *See* Sadie Gurman & Aruna Viswanatha, *Declining to Recuse, Whitaker Extends Reputation for*

*Political Instinct*, Wall St. J. (Dec. 22, 2018), https://on.wsj.com/2Vi3r7g (reporting that "Officials have tried to avoid having Mr. Whitaker personally sign major actions" in order to prevent any challenge to his authority); Devlin Barrett, *Senior Justice Dept. Officials Told Whitaker Signing Gun Regulation Might Prompt Successful Challenge to His Appointment*, Wash. Post (Dec. 21, 2018), https://wapo.st/2CEjTHE (reporting that "Senior Justice Department lawyers advised acting attorney general Matthew G. Whitaker not to sign" the bump-stock regulation that was recently entered in the Federal Register, "warning him that doing so could lead to a successful legal challenge to his appointment as the nation's top law enforcement official").

## CONCLUSION

For these reasons and those set forth in prior briefs, the Court should deny Defendants' motion to dismiss and proceed to rule on the Whitaker motion.

Dated: January 9, 2019

Respectfully submitted,

THE STATE OF MARYLAND

By:  /s/  Kevin K. Russell

BRIAN E. FROSH
Attorney General of Maryland

JULIA DOYLE BERNHARDT (BAR NO. 25300)
jbernhardt@oag.state.md.us
STEVEN M. SULLIVAN (BAR NO. 24930)
ssullivan@oag.state.md.us
SARAH W. RICE (BAR NO. 29113)
srice@oag.state.md.us
KIMBERLY S. CAMMARATA (BAR NO. 11997)
kcammarata@oag.state.md.us
Assistant Attorneys General
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6325 (phone)
(410) 576-6955 (fax)

THOMAS C. GOLDSTEIN (BAR NO. 13618)
TGoldstein@goldsteinrussell.com
KEVIN K. RUSSELL (BAR NO. 20712)
KRussell@goldsteinrussell.com
SARAH E. HARRINGTON (BAR NO. 20701)
Sharrington@golsteinrussell.com
TEJINDER SINGH (BAR NO. 17888)
TSingh@goldsteinrussell.com
DANIEL WOOFTER (BAR NO. 20474)
dhwoofter@goldsteinrussell.com
Goldstein & Russell, P.C.
7475 Wisconsin Ave.
Suite 850
Bethesda, MD 20814
(202) 362-0636 (phone)
(866) 574-2033 (fax)

*Attorneys for the State of Maryland*